**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF WEST VIRGINIA**
**AT HUNTINGTON**

**DEVAN TRULL, D.O.,**

     **Plaintiff,**

**v.**                                                                                   **CASE NO. 3:24-cv-00202**

**WEST VIRGINIA MUTUAL INSURANCE COMPANY, and**
**MAG MUTUAL INSURANCE COMPANY,**

     **Defendants.**

---

**PLAINTIFF'S OBJECTION TO MAGISTRATE JUDGE TINSLEY'S**
**MAY 16, 2025 ORDER DENYING PLAINTIFF'S MOTION TO**
**COMPEL PRODUCTION OF UNREDACTED EMAIL**

---

On April 4, 2025, Plaintiff filed her Motion to Remove the "CONFIDENTIAL" designation placed on a completely redacted email produced in discovery by Defendants, and to Compel the production of a copy of the unredacted version of that email. [ECF No. 97]. In accordance with Magistrate Judge Tinsley's Order, [ECF No. 102], Defendants filed a Response in Opposition to Plaintiff's Motion to Compel on April 21, 2025, [ECF No. 110], and Plaintiff filed her Reply in Support of her Motion to Compel on April 30, 2025. [ECF No. 116]. Thereafter, on May 16, 2025, Magistrate Judge Tinsley entered his Order denying Plaintiff's Motion to Compel the unredacted version of the at-issue email between Attorney Mark Simonton and Defendants' agent, Claims Adjuster Nora Lantz. [ECF No. 124].

In accordance with Rule 72(a) of the Federal Rules of Civil Procedure, Plaintiff hereby respectfully submits this timely Objection to Magistrate Judge Tinsley's May 16, 2025 Order,

[ECF No. 124], denying Plaintiff's Motion to Compel the unredacted version of the at-issue email. In support of this Objection, Plaintiff hereby states as follows:

<u>**RELEVANT FACTS TO THE DISCOVERY DISPUTE**</u>

During discovery of this first-party bad faith excess judgment action, Plaintiff requested the production of relevant communications between Defendants and Offutt Simmons Simonton PLLC, legal counsel retained by Defendants to defend Plaintiff, Dr. Trull, in the underlying medical malpractice litigation ("Underlying Litigation"). Specifically, Plaintiffs were to provide communications between counsel and Defendants regarding the Underlying Litigation and Defendants' decision not to pay the final, full judgment amount. As part of its response to this request, Defendants produced the completely redacted, post-verdict email, [ECF No. 101-1], at issue in Plaintiff's relevant Motion to Compel, [ECF No. 97], dated April 3, 2024.

The at-issue email, [ECF No. 101-1], was from Plaintiff Trull's defense counsel in the Underlying Litigation, Attorney Mark Simonton, to Nora Lantz, the claims adjuster assigned by Defendants to handle the Underlying Litigation. Defendants marked their entire production in this matter as "CONFIDENTIAL," including the email at issue, even though the body of the email had been entirely redacted. However, the names of the attachments to the at-issue email were not redacted; the document names indicate that the verdict form, the initial judgment order, and a copy of the *Shamblin* case itself were attached to the at-issue email. These attachments show that, on April 3, 2024, Attorney Simonton acted in the best interest of his client, Dr. Trull, by advising Defendants of Dr. Trull's rights under *Shamblin* after the excess verdict was rendered in the Underlying Litigation. [ECF No. 97; ECF No. 101-1]. As the final judgment order in the Underlying Litigation was not entered until May 17, 2024, there is no question that Attorney Simonton was acting as Dr. Trull's lawyer at the time the April 3, 2024 email was sent to Claims

2

Adjuster Lantz.  There is also no question that Attorney Simonton, as Dr. Trull's lawyer, had a duty to act in her best interest by explaining the application of the *Shamblin* case to Dr. Trull's insurers.

Plaintiff attempted to confer with defense counsel, in good faith, to resolve the instant discovery dispute.  However, Defendants refused to remove the "CONFIDENTIAL" designation on the redacted email produced in discovery, (resulting in Plaintiff's Motion to Seal [*see* ECF No. 99]), and further refused to produce the complete email correspondence, in unredacted form, invoking the "quasi" attorney-client privilege doctrine in support of their refusal.

Accordingly, on April 4, 2024 Plaintiff filed the instant Motion to Remove the confidential designation from the redacted email, and to Compel the production of an unredacted version of email at issue.  [ECF No. 97].  Ultimately, Defendants agreed that the unredacted email produced during discovery was improperly marked as "CONFIDENTIAL," but maintained that, if the unredacted email was ordered to be produced, the "CONFIDENTIAL" mark would then be appropriate.  (ECF No. 111).  As a result, Defendants timely filed their Response on April 21, 2025 opposing Plaintiff's Motion to Compel the unredacted email correspondence between Attorney Simonton and Claims Adjuster Lantz.  [ECF No. 110].  Plaintiff then timely filed her Reply in Support on April 30, 2025.  [ECF No. 115].  On May 16, 2025, Magistrate Judge Tinsley entered his Order denying Plaintiff's Motion to Compel the unredacted version of the at-issue email between Attorney Simonton and Defendants' agent Ms. Lantz.  [ECF No. 124].

<u>**STANDARD OF LAW**</u>

A magistrate judge's order on a non-dispositive matter may only be modified or set aside if "clearly erroneous or contrary to law." Fed. R. Civ. P. 72(a); *Blankenship v. Fox News Network, LLC*, No. 2:19-CV-00236, 2021 WL 3706683, at *4 (S.D.W. Va. Aug. 20, 2021).  "The 'clearly

erroneous' standard applies to factual findings, while legal conclusions will be rejected if they are 'contrary to law.'" *Id.* (citing *Sky Angel U.S., LLC v. Discovery Commc'ns, LLC*, 28 F. Supp. 3d 465, 479 (D. Md. 2014)).

In *Easley*, the United States Supreme Court explained the "clear error" standard: "In applying this standard, we, like any reviewing court, will not reverse a lower court's finding of fact simply because we 'would have decided the case differently.'" *Easley v. Cromartie*, 532 U.S. 234, 242 (2001) (citing *Anderson v. Bessemer City*, 470 U.S. 564, 573 (1985)). "Rather, a reviewing court must ask whether, 'on the entire evidence,' it is 'left with the definite and firm conviction that a mistake has been committed.'" *Easley*, 532 U.S. at 242 (citing *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948)).

The "contrary to law" aspect of Rule 72(a) "requires a different level of review." *HSBC Bank USA, Nat. Ass'n v. Resh, No.* 3:12-CV-00668, 2014 WL 317820, at *7 (S.D.W. Va. Jan. 28, 2014). "When . . . review of a non-dispositive motion by a district judge turns on a pure question of law, that review is plenary under the 'contrary to law' branch of the Rule 72(a) standard." *Id.* (citing *Powershare, Inc. v. Syntel, Inc.*, 597 F.3d 10, 15 (1st Cir. 2010)). "This means that, for questions of law, there is no practical difference between review under Rule 72(a)'s 'contrary to law' standard and [a] de novo standard." *Resh,* 2014 WL 317820, at *7 (citing *Powershare, Inc.*, 597 F.3d at 15); *see also Robinson v. Quicken Loans Inc.*, No. 3:12–cv–0981, 2013 WL 1704839, at *3 (S.D.W. Va. Apr. 19, 2013). As a result, reviewing courts consider the factual portions of the Magistrate order under the "clearly erroneous" standard and review "the Magistrate's legal conclusions to determine if they are contrary to law—that is, the court will conduct a de novo review of those conclusions." *Resh,* 2014 WL 317820, at *7.

<u>**OBJECTIONS TO JUDGE MAGISTRATE TINSELY'S MAY 16, 2025 ORDER**</u>

    1.   **Magistrate Judge Tinsley's Decision to Apply the *Brison* Rule to a First-Party Bad Faith Excess Judgment Action was Contrary to Law.**

The West Virginia Supreme Court of Appeals has addressed the applicability of the attorney-client privilege in bad faith insurance claims on three separate occasions. In *State ex rel. Allstate Ins. Co. v. Gaughan*, 508 S.E.2d 75 (W. Va. 1998), the applicability of the attorney-client privilege was determined in the context of ***a third-party bad faith*** cause of action. And, in *State ex rel. Brison v. Kaufman*, 584 S.E.2d 480 (W. Va. 2003) and *State of W. Virginia ex rel. Allstate Ins. Co. v. Madden*, 601 S.E.2d 25, 28–30 (W. Va. 2004), the issue of attorney-client privilege was discussed in the context of a ***first-party bad faith loss claim*** cause of action.

There are two types of first-party bad faith actions. A ***first-party bad faith loss claim*** action is initiated by the insured against his or her insurance company relating to the company's decision to deny a claim of loss made pursuant to the applicable insurance policy. A ***first party bad faith excess judgment claim***, like the instant case, involves allegations of bad faith relating to the insurance company's actions during their handling of a third-party claim of injury made against their insured.

Importantly, the West Virginia Supreme Court of Appeals has not yet had the opportunity to hear and decide a case regarding the applicability of the attorney-client privilege in a ***first-party bad faith excess judgment claim***. [*See* ECF No. 124 at 9, 13 (noting repeatedly that the Supreme Court of Appeals of West Virginia has not yet had the opportunity to decide a case regarding the applicability of the attorney-client privilege in first-party bad faith excess judgment claims)]. All three cases, *Gaughan, Brison,* and *Madden*, dealt with facts related to either a third-party bad faith case or a first-party bad faith loss claim action. In these cases, the attorney-client privilege was found to be appropriate, in certain circumstances, to protect communications between the

defendant insurance company and an attorney. *At no time* has the Supreme Court of Appeals of West Virginia determined that the attorney-client privilege is applicable in *first-party bad faith excess judgment* actions to protect communications between an insurance company and the attorney retained to defend their insured against an injured third-party. *Gaughan*, 508 S.E.2d at 75; *Brison*, 584 S.E.2d at 480; *Madden*, 601 S.E.2d at 25. Accordingly, Judge Magistrate Tinsley's decision to apply the rule identified in the *Brison* Majority Opinion to the instant discovery dispute was contrary to law.

In the *Brison* Concurring Opinion, Justice Davis gave a detailed discussion regarding the applicability of the rule set forth by the Majority Opinion in *Brison* and explained why it was *only applicable to first-party bad faith loss claim cases*. *Brison*, 584 S.E.2d at 490-92. Indeed, when considering the application of the attorney-client privilege, there is an important distinction between first-party bad faith loss claim cases and first-party bad faith excess judgment actions. From the beginning of a first-party bad faith loss claim litigation, where the insured directly sues his insurer, the relationship between the insured and his insurer is immediately antagonistic. (*Id.* at 490-91). The exact opposite is true in first-party bad faith excess judgment actions. Indeed, from the beginning of a first-party bad faith excess judgment case, where the insurer is providing a paid legal defense to their insured in an underlying litigation, the insured and insurer are allies working in favor of the insurer's best interests in the underlying litigation. (*Id.* at 491-92).

This distinction was explained, in detail, by Justice Davis in the *Brison* Concurring Opinion. Because Justice Davis recognized that the Supreme Court of Appeals had not yet set forth a rule regarding the applicability of the attorney-client privilege in first-party bad faith excess judgment cases, Justice Davis specifically wrote the Concurrence to identify that there are two types of first-party bad faith actions—loss claim cases and excess judgment cases—*and that the*

***majority opinion in Brison was applicable only to first-party bad faith loss claim actions***, ***as noted in the Majority Opinion***. *Id.* at 490 ("I have chosen to write separately to address a distinction that courts have made involving first-party bad faith cases against insurers, and the implications of that distinction to the majority's holding in this case.")). Indeed, after identifying the "critical distinction" between first-party bad faith loss claim and first-party bad faith excess judgment causes of action, Justice Davis explicitly stated:

> ***The majority opinion appropriately noted that this case "was a first-party bad faith . . . action wherein the interest of the [insured] and the [insurer] were in conflict." In other words, the first-party bad faith action in this case came under the "loss claim" category of first-party bad faith actions, not the "excess judgment" category. The majority's decision to extend the attorney-client privilege and work product rule to the facts of this case was consistent with the rule followed by most courts.***
>
> The majority decision did not discuss the "excess judgment" category of first-party bad faith actions. Because of the critical distinction between first-party bad faith "loss claim" actions and a first-party bad faith "excess judgment" actions, ***I do not believe the majority opinion should be interpreted as applicable to an "excess judgment" action.***

*Id.* at 491 (emphasis added).

It is understood that the *Brison* Concurrence is the only instance where a Justice or Justices of the Supreme Court of Appeals of West Virginia have addressed the issue at bar: whether the attorney-client privilege can be utilized by an insurer to protect communication between the insurer and the insured's defense attorney in a first-party bad faith excess judgment action. [*See* ECF No. 124 at 9, 13 (noting repeatedly that the Supreme Court of Appeals of West Virginia has not yet had the opportunity to examine and decide a case regarding the applicability of the attorney-client privilege in first-party bad faith excess judgment claims)]. As a result, Justice Davis's Concurrence regarding the exact legal issue presented in Plaintiff's instant Motion to Compel is persuasive authority that should have been instructive to Magistrate Judge Tinsley.

7

Indeed, Justice Davis's Concurrence in the *Brison* matter was directly on point and highly instructive; the *Brison* Concurrence set forth a clear legal analysis of the exact issue at bar and proficiently explains why the attorney-client privilege ***would not be applicable*** to the insurer in a first-party bad faith excess judgment action:

> When an insured is sued for injury or harm by a third-party, and an insurance company provides the insured with legal representation, courts have held that the "the insurer initially employs the attorney to represent the interests of both the insured and the insurer." *Jessen v. O'Daniel*, 210 F. Supp. 317, 331–32 (D.Mont.1962). *See Longo v. American Policyholders' Ins. Co.*, 181 N.J. Super. 87, 436 A.2d 577, 580 (Law Div.1981) ("The attorney represented both the insurer and the insured. Counsel owed the insured the same unqualified loyalty as he would had he been personally retained."). In this situation "an insured and his or her insurer share a common interest, that is, to limit liability in a tort action to within the policy limits." *Flores v. Barretto*, 99 Hawai'I 270, 54 P.3d 441, 451 (2002) (Moon, C.J., dissenting). However, it has been observed that "[f]irst-party bad faith cases involving dual representation often arise after a third-party claimant obtains a judgment in excess of policy limits and the insured later sues the insurance company for failure to settle within policy limits." *Palmer v. Farmers Ins. Exch.*, 261 Mont. 91, 861 P.2d 895, 905 (1993).
>
> In first-party bad faith litigation arising out of a judgment against an insured in excess of policy limits, ***most courts do not permit the attorney-client privilege or work product rule to be used to prevent an insured from having access to his/her claim file and the litigation file in the underlying action***. *See Fortune Ins. Co. v. Greene*, 775 So.2d 338 (Fla.Dist.Ct.App.2000) (attorney-client privilege and work product immunity do not apply)); *Henke v. Iowa Home Mut. Cas. Co.*, 249 Iowa 614, 87 N.W.2d 920 (Iowa 1958) (attorney-client privilege and work product rule do not apply); *Hodges v. Southern Farm Bureau Cas. Ins. Co.*, 433 So.2d 125 (La.1983) (work product rule does not apply); *Dumas v. State Farm Mut. Auto. Ins. Co.*, 111 N.H. 43, 274 A.2d 781 (1971) (attorney-client privilege does not apply); *Longo v. American Policyholders' Ins. Co.*, 181 N.J. Super. 87, 436 A.2d 577 (Law Div.1981) (attorney-client privilege does not apply); *Colbert v. Home Indem. Co.*, 45 Misc.2d 1093, 259 N.Y.S.2d 36 (1965) (work product immunity does not apply); *Schoffstall v. Nationwide Ins. Co.*, 38 Pa. D. & C. 4th 457, 1998 WL 1108681 (Ct.Com.Pl.1998) (attorney-client privilege and work product rule do not apply). *See also Silva v. Fire Ins. Exch.*, 112 F.R.D. 699 (D.Mont.1986) (attorney-client privilege and work product immunity do not apply); *LaRocca v. State Farm Mut. Auto. Ins. Co.*, 47 F.R.D. 278 (W.D.Pa.1969) (attorney-client privilege does not apply); *Chitty v. State Farm Mut. Auto. Ins. Co.*, 36 F.R.D. 37 (E.D.S.C.1964) (attorney-client privilege and work product rule do not apply).

> ***The common Interest doctrine Is usually cited as the reason for not allowing the attorney-client privilege and work product rule to apply in first-party bad faith litigation arising from a prior mutual interest litigation***. "[U]nder the common interest doctrine, when an attorney acts for two different parties who each have a common interest, communications by either party to the attorney are not necessarily privileged in a subsequent controversy between the two parties." *Waste Mgmt., Inc. v. International Surplus Lines Ins. Co.*, 144 Ill.2d 178, 161 Ill. Dec. 774, 579 N.E.2d 322, 328 (1991). See *Henke v. Iowa Home Mut. Cas. Co.*, 249 Iowa 614, 87 N.W.2d 920, 923 (1958) ("[W]hen two or more parties consult an attorney for their mutual benefit, the testimony as to the communications between the parties or the attorney as to that transaction is not privileged in a later action between such parties or their representatives."). "The common interest doctrine has been recognized in the insured/insurer context when counsel has been retained or paid for by the insurer, and allows either party to obtain attorney-client communications related to the underlying facts giving rise to the claim, because the interests of the insured and insurer in defeating the third-party claim against the insured are so close that 'no reasonable expectations of confidentiality' is said to exist." *North River Ins. Co. v. Philadelphia Reinsurance Corp.*, 797 F. Supp. 363, 366 (D.N.J.1992) (citation omitted).

*Brison*, 584 S.E.2d 480, 491–92.

Despite this legally supported, clear legal analysis on the direct issue in front of him, Magistrate Judge Tinsley simply refused to apply Justice Davis's legal discussion and opinion to the case at bar—namely that the rule set forth in the *Brison* Majority Opinion ***was not applicable*** to first-party bad faith excess judgment claims. Instead, Magistrate Judge Tinsley stated that, since the information and discussion of the law provided in Justice Davis's Concurrence was not "joined" by any of the other Justices (or, in other terms, written into the *Brison* Majority Opinion), he would apply the rule identified in the *Brison* Majority Opinion to the case at bar. [ECF No. 124 at 12]. Magistrate Judge Tinsley's decision to apply this rule was ***in direct contradiction*** of Justice Davis's Concurring Opinion in *Brison*., and, as Justice Davis noted, the Majority Opinion in *Brison*. (*See Brison*, 584 S.E.2d at 491 (finding that the Majority Opinion specifically noted that the case at bar was a first-party bad faith loss claim action and based its legal analysis on that premise). Magistrate Judge Tinsley gave no reason for his decision not to be instructed by Justice

9

Davis's Concurring Opinion on the issue at bar, ***despite having no legal authority to apply the rule set forth in the* Brison *Majority Opinion***.

While courts are split on whether an opinion, written outside that of the majority opinion of a court by any one or more Judges or Justices, is binding on lower courts,[1] the majority of both state and federal courts agree that a concurring opinion ***should, at the very least, be considered instructive, persuasive authority if it is relevant to the issue at bar***.  *See, e.g.*, *State v. Heston*, 71 S.E.2d 481, 494 (W. Va. 1952) (citing a concurring opinion in support of the Court's legal conclusions); *Fam. Med. Imaging, LLC v. W. Virginia Health Care Auth.*, 624 S.E.2d 493, 498 (W. Va. 2005) (same); *Sayre v. Roop*, 517 S.E.2d 290, 293 (W. Va. 1999) (same); *P. Leg. Found. V. Goyan*, 664 F.2d 1221, 1227 (4th Cir. 1981) (finding a concurring opinion set forth by Chief Judge Kaufman of the United States Court of Appeals for the Second Circuit to be instructive and persuasive in the court's analysis of the issue at bar); *Herndon by Herndon v. Chapel Hill-Carrboro City Bd. of Educ.*, 89 F.3d 174, 179 (4th Cir. 1996) (utilizing a concurring opinion by Supreme Court Justice Souter as persuasive authority); *United States v. Richardson*, 658 F.3d 333, 340 (3d Cir. 2011) (viewing as "persuasive authority" the shared view of a four-Justice dissent and a single-Justice concurrence); *Martinez-Aguero v. Gonzalez*, No. EP-03-CA-411(KC), 2005 WL 388589, at *5 (W.D. Tex. Feb. 2, 2005), *aff'd and remanded*, 459 F.3d 618 (5th Cir. 2006) (identifying that

---

[1] *See United States v. Duvall*, 740 F.3d 604, 611 (D.C. Cir. 2013) (Kavanaugh, J., Concurring in the denial of rehearing *en banc* ("The binding opinion from a splintered decision is as authoritative for lower courts as a nine-Justice opinion. ... This is true even if only one Justice issues the binding opinion.")); *see also J.L. Spoons, Inc. v. Dragani*, 538 F.3d 379, 386 n.2 (6th Cir. 2008) ("In short, the narrowest concurring opinion does not merely state the Court's holding; it 'is the Court's opinion' in that case, entitled to as much authority and respect as any other opinion of the Supreme Court; *but see Frasier v. Evans,* 992 F.3d 1003, 1017 (10th Cir. 2021) ("We note that 'a concurring opinion is not binding on us'—even one from a Supreme Court Justice—and, therefore, such an opinion is relevant only insofar as its analysis is "persuasive."); *United States v. Thompson*, 866 F.3d 1149, 1159 (10th Cir. 2017) (declining to follow a concurrence in a Supreme Court case because it was "not the opinion of the Court").

10

concurring opinions are persuasive, rather than binding authority); *Lett v. Great E. Resort Mgt., Inc.*, 435 F. Supp. 3d 700, 708 (W.D. Va. 2020) (citing a concurring opinion in support of the Court's legal conclusions); People v. Barba, 155 Cal. Rptr. 3d 707 (Cal. App. 2d Dist. 2013) (finding that even if a concurring opinion did not rise to the level of binding precedent, at a minimum it was considered persuasive authority); *Garcia v. Foot Locker Retail, Inc.*, 293 A.3d 262, 270 (Pa. Super. 2023), *reargument denied* (May 22, 2023), *appeal granted sub nom. Garcia v. Am. Eagle Outfitters, Inc.*, 306 A.3d 1289 (Pa. 2023), *and aff'd sub nom. Garcia v. Am. Eagle Outfitters, Inc.*, 331 A.3d 541 (Pa. 2025) (determining that a concurring opinion written by a former Chief Justice of the Superior Court of Pennsylvania was persuasive authority); *Perreault v. Town of New Hampton*, 193 A.3d 266, 270 (N.H. 2018) (finding concurring opinions to be persuasive authority that may be used for guidance); *University of Texas Med. Branch v. York*, 871 S.W.2d 175, 176-77 (Tex. 1994) (addressing precedential effect of state supreme court's plurality decision and noting that "the judgment itself has very limited precedential value and would control the result only in identical cases," while the plurality opinion is not binding authority, although the case may be used "for guidance").

Here, as discussed above, Justice Davis's Concurring Opinion In *Brison* is directly on point, not at odds with the *Brison* Majority Opinion, and was *specifically written* to fill a gap in the Supreme Court of Appeals of West Virginia's rulings on the applicability of the attorney-client privilege in first-party bad faith actions. As the Supreme Court of Appeals has not yet had the opportunity to hear and decide a case on the direct issue at bar, Justice Davis's Concurring Opinion addressing this exact issue is "persuasive authority" and should have instructed Magistrate Judge Tinsley's determination of the instant Motion to Compel. Indeed, the Supreme Court of Appeals of West Virginia has repeatedly utilized the reasoning, analysis, or legal discussion provided by

11

concurring opinions as support in the Court's majority opinions, when such opinions are relevant and directly on point. *See, e.g.*, *Heston*, 71 S.E.2d at 494 (citing a concurring opinion in support of the Court's legal conclusions); *Fam. Med. Imaging, LLC*, 624 S.E.2d at 498 (same); *Sayre v. Roop*, 517 S.E.2d at 293 (same).

Accordingly, Magistrate Judge Tinsley's decision to forgo the discussion, legal reasoning, and conclusion set forth in the *Brison* Concurrence Opinion in his May 16, 2025 Order in favor of his legally unsupported decision to apply the rule set forth in the *Brison* Majority Opinion was contrary to law. Justice Davis's Concurring Opinion in *Brison* explained why the rule set forth in the *Brison* Majority Opinion was not applicable to first-party bad faith excess judgment claims, such as the instant case. In direct contradiction to Justice Davis's Opinion, Magistrate Judge Tinsley applied the Majority Opinion in *Brison* to the instant case. As a result, Magistrate Judge Tinsley incorrectly determined that the Defendants, as Plaintiff Trull's insurers, could utilize the "traditional" attorney-client privilege to protect communications Defendants' claim adjusters had with Plaintiff Trull's defense attorney during the pendency of the Underlying Litigation. [ECF No. 124 at 13, 15–16]. Pursuant to the *Brison* Majority and Concurring Opinions, Plaintiff respectfully requests that this Court set aside Magistrate Judge Tinsley's May 16, 2025 Order as contrary to law, and enter an Order finding that the rule set forth in the *Brison* Majority Opinion is not applicable to first-party bad faith excess judgment claims and, as such, the attorney-client privilege does not protect the at-issue email.

   2. **Magistrate Judge Tinsley's Factual Finding that the At-Issue Email between Defendants and Attorney Simonton "Unquestionably Concerned an Issue Adverse Between the Insurer and the Insured, and Related Directly to Plaintiff's Coverage Under the Medical Professional Liability Policy of Insurance by Operation of *Shamblin*" Was Clearly Erroneous.**

In addition to Magistrate Judge Tinsley's decision not to be instructed by the *Brison* Concurring Opinion as to whether the attorney-client privilege should apply to first-party bad faith excess judgment claims, Magistrate Judge Tinsley also made a clearly erroneous factual determination regarding the attorney-client relationship between Attorney Simonton, his client Dr. Trull, and Dr. Trull's insurers.

It is well-settled that an insurer's hiring of legal counsel to represent and defend their insured ***does not create*** a "traditional" attorney-client relationship between the insurance company and retained legal counsel for their insured. In *State ex rel. Allstate Ins. Co. v. Gaughan*, the Supreme Court of Appeals of West Virginia concluded that a defense attorney represents only the insured, and not the insurer that is paying the defense attorney's fee. *Gaughan*, 508 S.E.2d at 89– 90; *see also Barefield v. DPIC Companies, Inc.*, 600 S.E.2d 256, 268 (W. Va. 2004). An insurer-retained defense attorney "is professionally obligated to represent only the interests of the client/insured, not the interests of the insurance company." *Id.*; *see also Gaughan*, 508 S.E.2d at 89–90 (determining that an insurer hires an attorney to represent only the insured, not to provide dual representation); *Brison*, 584 S.E.2d at 491–92 (citing *Jessen v. O'Daniel*, 210 F.Supp. 317, 331–32 (D. Mont. 1962) ("When an insured is sued for injury or harm by a third-party, and an insurance company provides the insured with legal representation, courts have held that the "the insurer initially employs the attorney to represent the interests of both the insured and the insurer."); *see also Brison*, 584 S.E.2d at 491–92 (citing *Longo v. American Policyholders' Ins. Co.*, 436 A.2d 577, 580 (Law Div. 1981) ("The attorney represented both the insurer and the insured. Counsel owed the insured the same unqualified loyalty as he would had he been personally retained.")).

13

It is uncontested that Mr. Simonton's attorney-client relationship with Dr. Trull was in full effect on April 3, 2024; Mr. Simonton continued to represent Dr. Trull until the Final Judgment Order was entered in the Underlying Litigation on May 17, 2024.  In fact, Mr. Simonton had the legal and ethical duty to continue to represent the interests of Dr. Trull by informing Defendants that they were legally required to pay the full judgment amount under West Virginia state law. *See, e.g.*, *Barefield*, 600 S.E.2d at 268-70; *see also Gaughan*, 508 S.E.2d at 89–90; *Brison*, 584 S.E.2d at 491–92; Syl. Pt. 2, *Shamblin v. Nationwide Mut. Ins. Co.*, 396 S.E.2d 766, 768 (W. Va. 1990).  Not informing Defendants that they were required to pay the full verdict amount—which would effectively release Attorney Simonton's client, Dr. Trull, from personal exposure to the tune of almost half a million dollars—would have exposed Mr. Simonton to a legal malpractice claim and an ethical complaint.  *See Barefield*, 600 S.E.2d at 268-70.

Despite this well-settled law and the undisputed facts of the instant case—namely that Attorney Simonton was still representing Dr. Trull's interests as her attorney in the Underlying Litigation on April 3, 2024— Magistrate Judge Tinsley erroneously found that the discussion of the applicability of the *Shamblin* case between Claims Adjustor Lantz and Attorney Simonton was a communication that was meant to benefit or otherwise provide legal advice ***only to the Defendants***.

> In the case at hand, the April 3, 2024 email communication between Defendants and [Attorney Simonton] unquestionably concerned an issue adverse between the insurer and the insured, and related directly to Plaintiff's coverage under the medical professional liability policy of insurance by operation of *Shamblin* following the March 8, 2024 jury verdict against Dr. Trull. Accordingly, the undersigned FINDS that the attorney-client privilege applies under the circumstances, provided that Defendants can "establish the satisfaction of the privilege's requisite elements." *Madden*, 601 S.E.2d at 34.

[ECF No. 124 at 16].

14

Respectfully, it is Plaintiff's position that this is a clearly erroneous factual finding.[2] Attorney Simonton was not coverage counsel for these Defendants, nor does he specialize in coverage issues; indeed, Attorney Simonton specializes in medical malpractice and was specifically retained to provide his expertise in defending Dr. Trull in the Underlying Litigation. Moreover, the appropriate application of the *Shamblin* decision to the Underlying Litigation has *nothing to do* with whether the applicable medical professional liability insurance policy covered Plaintiff for the allegations set forth in the Underlying Litigation. Indeed, Defendants have never questioned, or otherwise alleged, that Claimant Hensley's medical malpractice allegations fell outside the scope of the applicable medical professional liability policy; that is why the Defendants provided a full defense to Dr. Trull during the Underlying Litigation. If Claims Adjustor Lantz requested information regarding the applicability of the *Shamblin* case after the excess verdict was rendered, it cannot be credibly determined that the appropriate application of the *Shamblin* would turn on a question of coverage under Dr. Trull's medical professional liability policy of insurance with these Defendants.

Moreover, Attorney Simonton, as Dr. Trull's attorney, was legally and ethically required to respond to the Defendants' inquiry regarding the application of *Shamblin* to the Underlying Litigation. *See Barefield*, 600 S.E.2d at 268-70; *see also Gaughan*, 508 S.E.2d at 89–90; *Brison*, 584 S.E.2d at 491–92. Such a request for information **would not be at odds** with the insurance company's role in the Underlying Litigation, **nor would it be at odds** with Attorney Simonton's legal representation of Dr. Trull on April 3, 2024. On the contrary, Claims Adjuster Lantz's request for information regarding Dr. Trull's rights under this State's *Shamblin* decision shows

---

[2] Plaintiff recognizes that Magistrate Judge Tinsley conducted an *in-camera* review of the unredacted version of the email correspondence at issue. Plaintiff, of course, has not had the benefit of reviewing the unredacted email.

15

nothing more than a typical, reasonable request that would be made by any prudent insurer to retained defense counsel representing their insured.  Insurance companies are legally required to put their insured's best interests above their own, including the act of paying the full and final judgment amount to prevent Dr. Trull from being held personally liable for any portion of the judgment.  *See Shamblin*, 396 S.E.2d at 768; *see also* W. Va. Code § 33-11-4(9).

Accordingly, Claims Adjuster Lantz's April 3, 2024 request for information regarding the applicability of *Shamblin* to the Underlying Litigation, and Attorney Simonton's response, must be considered as part of Attorney Simonton's legal representation of his client, Dr. Trull. Defendants are legally required to know and follow West Virginia law when dealing with their insureds in this State, including the requirements set forth in *Shamblin*.  *See generally* W. Va. Code §§ 33-11-1 *et al.*; W. Va. Code § 33-11-4(9); *Shamblin*, 396 S.E.2d at 768.  Therefore, requesting that Attorney Simonton explain the rule and application of the *Shamblin* decision to better understand their obligations to their insured after the excess verdict in the Underlying Litigation ***was not at odds with the allied relationship between all three parties***—the Insured Dr. Trull, the insurer Defendants, and defense attorney Mr. Simonton.  To find otherwise is to find that Defendants acted in bad faith.  Indeed, finding that the at-issue communication between Attorney Simonton and Claims Adjuster Lantz "unquestionably concerned an issue adverse between the insurer and the insured" confirms that Defendants not only acted in bad faith during the claims handling portion of the Underlying Litigation, but also that Defendants acted in bad faith by requesting legal advice from Dr. Trull's attorney, Mr. Simonton, on how the Defendants could get around this State's laws, not pay the final judgment amount in full, and, as a direct result, cause Dr. Trull to be held personally liable for the unpaid amount.

Simply put, it is uncontested that Attorney Simonton was still representing Dr. Trull on April 3, 2024 when he sent the at-issue redacted email to Claims Adjuster Lantz. The Final Judgment Order, effectively ending the Underlying Litigation and identifying the final judgment amount owed to Claimant Hensley, ***was not entered until May 17, 2024***. As a result, Attorney Simonton was legally required to represent Dr. Trull's best interests as it relates to the Underlying Litigation when the at-issue email was sent on April 3, 2024. *See Barefield*, 600 S.E.2d at 268-70; *Gaughan*, 508 S.E.2d at 89–90; *Brison*, 584 S.E.2d at 491–92; *Shamblin*, 396 S.E.2d at 768; *see also* W. Va. Code § 33-11-4(9). When Claims Adjuster Lantz asked about the application of the *Shamblin* case to the excess verdict rendered against Dr. Trull in the Underlying Litigation, Attorney Simonton was legally and ethically required to inform the Defendants that, under *Shamblin*, the Defendants were required to pay the full judgment amount to prevent Dr. Trull from being held personally liable to the tune of almost half a million dollars. *Shamblin*, 396 S.E.2d at 768; *Barefield*, 600 S.E.2d at 268-70.

Magistrate Judge Tinsley's determination that the communication between Attorney Simonton and Claims Adjuster Lantz on April 3, 2024, before the final judgment had been entered in the Underlying Litigation on May 17, 2024, was protected by the traditional attorney-client privilege in the instant first-party bad faith excess judgment matter was clearly erroneous. As a result, Plaintiff respectfully requests that this Court set aside Magistrate Judge Tinsley's May 16, 2025 Order, and enter an Order granting Plaintiff's Motion to Compel the unredacted version of the at-issue email.

## CONCLUSION

WHEREFORE, Plaintiff respectfully requests that this Court modify or otherwise set aside the May 16, 2025 Order to find, consistent with the applicable law of this State, that the email

17

communication at issue in Plaintiff's Motion to Compel, [ECF No. 97, ECF No. 101-1], is not protected by the attorney-client privilege, and enter an Order that a copy of the unredacted version of that email be produced to Plaintiff, marked as "CONFIDENTIAL," as requested by Plaintiff's Motion to Compel, [ECF No. 97], and in conjunction with Defendants' request set forth in their Response to Plaintiff's related Motion to Seal, [ECF No. 111].

Respectfully submitted,

**DEVAN TRULL, D.O.,**

By counsel,

*/s/ Ben Salango*

Ben Salango (WVSB #7790)
Sarah A. Hunter (WVSB #13031)
**SALANGO LAW, P.L.L.C.**
206 Capitol Street
Charleston, West Virginia 25331
Phone: (304) 342-0512
Fax: (304) 342-0513
ben@salangolaw.com
sarah@salangolaw.com

**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF WEST VIRGINIA**
**AT HUNTINGTON**

**DEVAN TRULL, D.O.,**

      **Plaintiff,**

**v.**                                                                 **CASE NO. 3:24-cv-00202**

**WEST VIRGINIA MUTUAL INSURANCE COMPANY, and**
**MAG MUTUAL INSURANCE COMPANY,**

      **Defendants.**

## <u>CERTIFICATE OF SERVICE</u>

I, Sarah A Hunter, counsel for Plaintiff, hereby certify that the foregoing "***Plaintiff's Objection to Magistrate Judge Tinsley's May 16, 2025 Order Denying Plaintiff's Motion to Compel Production of Unredacted Email***" has been served upon counsel of record via electronic filing this 30th day of May 2025, addressed to the following:

> Robert L. Massie (WV Bar # 5743)
> Shaina D. Massie (WV Bar # 13018)
> Alexander C. Frampton (WV Bar # 13398)
> NELSON MULLINS RILEY &
> SCARBOROUGH LLP
> 949 Third Ave., Suite 200
> Huntington, WV 25701
> Email: bob.massie@nelsonmullins.com
> Email: shaina.massie@nelsonmullins.com
> Email: alex.frampton@nelsonmullins.com
>     *Counsel for Defendants*

                              */s/ Sarah A. Hunter*
                              Sarah A. Hunter (WVSB #13031)

**SALANGO LAW, P.L.L.C.**
206 Capitol St., Second Floor
Charleston, West Virginia 25301