# EXHIBIT
# 4



**Hospital Umbrella Liability Insurance Policy**
**Declarations Page**

THIS POLICY CONTAINS  COVERAGE PARTS WHICH ARE SUBJECT TO SPECIFIC LIMITS OF LIABILITY AND COVERAGE TERMS AND CONDITIONS. PLEASE READ THE ENTIRE POLICY CAREFULLY.

| 1. Policy Issued To | Policy Number | Policy Period |
|---|---|---|
| Cabell Huntington Hospital, Inc.<br>1340 Hal Greer Blvd<br>Huntington, WV 25701 | HUL-09100292 | 10/01/2019 - 10/01/2020<br><small>(12:01 a.m. Standard Time at the Policyholder address)</small> |

**2. Limits of Liability**

(a)   Specific Loss Limit:        $10,000,000

(b)   Aggregate Limit:           $10,000,000

**3. Retroactive Dates**

A.   Umbrella Professional Liability:      10/01/1986

B.   Umbrella General Liability:           10/01/1986

**4. Applicable Coverage Parts**

A.   Umbrella Professional Liability:      [X]  HUL-IA 03 16

B.   Umbrella General Liability:

    (1) Occurrence based           [ ]  _____

    (2) Claims-made               [X]  HUL-IA 03 16

C.   Follow Form Excess Liability:      [X]  Refer to Schedule of Underlying

**5. Notices required to be given to the Insurer must be addressed to:**

Professional Security Insurance Company
3535 Piedmont Road, NE Building 14, Suite 1000
Atlanta, GA 30305 - 1518

**6. Premium**

$ ████████

| **7. Forms and Endorsements** | **Description** |
|---|---|
| HUL-IA 03 16 | Hospital Umbrella Liability Policy |
| HUL-CC 03 16 | Common Conditions |
| CU 21 30 01 15 | Cap on Losses From Certified Acts of Terrorism |
| HUL CHG01 03 16 | Schedule of Underlying Insurance |
| HUL CHG09 03 16 | Limits of Liabilty |
| HUL CHGGE 03 16 | Manuscript Change Endorsement |
| HUL CHGGE 03 16 | Manuscript Change Endorsement |

THESE DECLARATIONS, THE POLICY FORM, ANY ENDORSEMENTS AND THE APPLICATION CONSTITUTE THE ENTIRE AGREEMENT BETWEEN THE COMPANY AND THE INSURED RELATING TO THIS INSURANCE.

Authorized
Representative                Date 12/17/2019

**Professional Security
Insurance Company**
a **MagMutual** company

Policy Number: HUL-09100292

**HOSPITAL UMBRELLA LIABILITY POLICY**
This is a policy with claims-made and occurrence coverage parts.
Please read it carefully to determine all of *your* rights and duties.
All words in italics are defined in this policy.

**I.     Protecting *You***

A.   Umbrella Professional Liability

*We* will protect *you* from *claims* first made and reported and *incidents* first reported to *us* by *you* during the policy period and arising from *professional activities* which take place during the *protected period*, provided *you* comply with *your* duties and *notification provisions* specified in this policy. *We* will protect *you* up to *your* selected *limits of liability* in excess of the *applicable underlying limit* for the coverage identified in Item A of the Schedule of Underlying Insurance.

B.   Umbrella General Liability

This Policy provides only one of the following coverages, as indicated on the Declarations Page.

1.   Occurrence based - *We* will protect *you* from *bodily injury*, *property damage*, or *personal or advertising injury* arising from an *occurrence* that takes place during the *protected period*, provided that *you* comply with *your* duties and *notification provisions* specified in this policy. *We* will protect *you* up to *your* selected *limits of insurance* in excess of the *applicable underlying limit* for the coverage identified in Item B of the Schedule of Underlying Insurance.
2.   Claims-made - *We* will protect *you* from *claims* first made and reported to *us* during the policy period alleging *bodily injury*, *property damage*, or *personal or advertising injury* and arising from an *occurrence* during the *protected period*, provided that *you* comply with *your* duties and *notification provisions* specified in this policy. *We* will protect *you* up to *your* selected *limits of insurance* in excess of the *applicable underlying limit* for the coverage identified in Item B of the Schedule of Underlying Insurance.

C.   Follow Form Excess Liability

*We* will protect *you* from an *occurrence* that takes place during the *protected period, and claims* first reported to *us* by *you* during the policy period, in accordance with the *underlying insurance*, provided *you* comply with *your* duties and *notification provisions* specified in this policy. *We* will protect *you* up to *your* selected *limits of liability* in excess of the *applicable underlying limit* for the coverages identified in Items C and D of the Schedule of Underlying Insurance resulting from a *claim* covered by such scheduled *underlying insurance.*

The terms and conditions of such scheduled *underlying insurance* are made a part of this policy, unless 1) there is a contrary provision in this policy, or 2) a similar provision does not exist in the *underlying insurance*, in which case, the provisions of this policy will apply.  In no event will the coverage provided under this policy be broader than the coverage provided by the scheduled *underlying insurance*, nor will this policy provide coverage if the scheduled *underlying insurance* fails to provide coverage for reasons other than exhaustion of the *applicable underlying limit.*

**II.     *Your* Duties Under This Policy**

The *Organization* has special duties under this policy.

1.   Pay the premium and any *self-insured retention*.
2.   Comply with the provisions of all *underlying insurance*.
3.   Notify *us* in writing within 30 days if the risk changes.

4.  Keep accurate records of the information *we* need to calculate *your* premium. Send *us* copies of these records if *we* request them. *We* have the right to adjust premiums at any time based on rates and rating plans in effect at the time.
5.  Disclose important information and do not mislead or attempt to defraud or lie to *us* about any matter concerning this insurance.
6.  Protect any interest or right relating to this policy or coverage and do not assign or turn over any interest or right without *our* written consent.
7.  Preserve, and transfer to *us*, any right of recovery available to *you* from any third party. If *we* make a payment under this policy, that right of recovery will belong to *us*. If *we* recover more than *we* have paid, the excess, after expenses, will be paid first to any parties who have paid the excess amount, then to *us*, and then to any parties entitled to claim the remainder. *We* agree to waive *our* right of recovery when *you* are required to do so by written contract, providing that such contract must be executed prior to the *occurrence* or *incident* date.
8.  If *you* decide to sue *us* to recover under this policy, *you* must have complied with all the policy terms and conditions and do so within 12 months from the date that *your* liability to others has been determined.

## III.    *Your* Duties When a *Claim* Arises

If *you* are aware of a *claim*, or *incident* or *occurrence* which could lead to a *claim*, or if a *claim* is made against *you* or anyone for whose acts *you* are legally responsible, *you* must promptly notify *us* and*:*

1.  Tell *us* the details of what happened and provide *us* with the description of the *claim*, date of loss, the names and addresses of potential claimants and involved parties, any injured people and witnesses, and the reserved, paid and incurred amounts for each *claim* or circumstance.
2.  Immediately send *us* all documents related to a lawsuit or notice of intent to sue and keep a copy of what *you* send *us*. If *you* fail to do this, the lawsuit may go into default. *We* will not pay a default judgment against *you* or any other covered person or entity because of *your* failure to timely deliver the lawsuit documents to *us*.
3.  Provide *us* with a quarterly loss run report summarizing the above details for all *claims* and circumstances no later than 10 days after the end of each calendar quarter, and allow *us* to conduct *claims* audits of *your* files upon request.
4.  Cooperate fully with *us* and all underlying insurers in defending the *claim* and assisting *us* to secure and present evidence, prepare for and attend depositions, hearings, trials, motions or appeals or assisting *us* with any other reasonable act or undertaking for the defense of the *claim*.
5.  Not voluntarily make any payments, assume any obligations, incur any expenses, or settle any *claim* for an amount in excess of the *applicable underlying limit* without *our* written consent. If *you* do, *we* will not reimburse *you*, even if the cost would be covered by this policy.
6.  Refrain from meeting with any attorney, or giving statements or depositions, without first notifying *us*.

If *you* fail to comply with *your* duties under this section, *your* failure could seriously impair *our* ability to appropriately defend *your* *claim* and *we* may deny coverage for *your* *claim* under this policy.

## IV.    A Strong Defense

*We* promise to provide *you* with the strongest defense *we* can once the *underlying insurance* has been exhausted.

*We* will pay all defense expenses in excess of the *applicable underlying limit,* incurred in the investigation or defense of a *claim*. *We* may also, at our discretion, investigate and assume the defense and/or settlement of any *claim*, *incident*, or *occurrence* where any *other insurance* or *underlying insurance* limit has been exhausted by the payment of *claims*. When *we* defend or associate in the defense of a *claim*, the defense expenses will reduce *your limits of liability*, and *our* obligation to provide *you* with a defense ends once the applicable *limit of liability* has been exhausted by indemnity and defense expense payments.

*Our* Strong Defense includes *our* payment for:

1.  All reasonable attorneys' fees and costs. *We* have the right to select or approve the selection of an attorney to defend *you*. *You* may separately choose a personal attorney to advise *you*, but *we* will not pay for the fees for *your* separate personal counsel.
2.  Post judgment interest accruing by law on that part of the judgment that does not exceed the *limits of liability* and before *we* have deposited *our* portion of the judgment into the court.

3.   The cost of an appeal plus any incidental interest or a bond to release property being used to secure a legal obligation which arises out of a covered *claim*.  *We* will pay premiums for bonds valued up to the per *claim limit of liability*.

Other than as described above, defense expenses do not include *your* salaries, remuneration, overhead, fees or benefit expenses; fines, penalties or taxes levied against *you*; or fees, costs or expenses incurred without *our* prior consent.

If *we* are prevented by law or otherwise from carrying out the above defense provisions, *we* will indemnify *you* for defense expenses that *you* incur.  *We* will have the right, but not the duty, to appeal any judgment rendered against *you* if 1) the judgment is in excess of the *applicable underlying limit*, and 2) neither *you* nor any underlying insurer elects to appeal.

**V.    General Rules**

A.   Settlement
*We* will not settle any *claim* without the written consent of *your* authorized representative unless consent to settle is prohibited under *your* state's law.  *Your* authorized representative's failure to provide timely consent may prevent *us* from resolving *your claim* within *your* policy limits and could result in damages in excess of *your* policy limits.  Consent is not required for settlements which are entered into after a verdict or judgment has been rendered.

B.   Other Insurance
If any *other insurance* is available to *you* regarding a matter covered by this policy, and such insurance is afforded under a policy or Extended Reporting Period issued by *us*, then the maximum *limits of liability* under all policies will not exceed the highest remaining applicable *limit of liability* under any one policy.

If any *other insurance* is available to *you* regarding a matter covered by this policy, and such insurance is not afforded under a policy or Extended Reporting Period issued by *us*, then this insurance will be excess over such insurance even if such *other insurance* is stated to be primary, excess, contingent, or otherwise.  *We* will pay only *our* share of loss and defense expenses, if any, that exceeds the sum of: a) the *Applicable Underlying Limit*; b) the total amount that all such *other insurance* would pay in the absence of this policy; and c) the total of all deductible and self-insured amounts under all such *other insurance*. This condition will not apply if such *other insurance* is specifically written to be excess of this policy.

C.   Mergers, Acquisitions, or Newly Created Entities
If during the policy period, 1) *you* acquire any assets or assume liabilities by merger and, at the time of such transaction, the assets, exposures or liabilities acquired exceed 15% of the *Organization's* total assets, exposures or liabilities as reflected in its  most recent consolidated financial statements or in the submission provided for insurance, or 2) any insurance identified in the Schedule of Underlying Insurance provides coverage or is amended to provide coverage as a result of *you* acquiring any assets, any *subsidiary*, or any entity by merger, then for a period of 90 days after the effective date of such event, the coverage granted by this policy will extend to any *claims* arising out of covered acts, errors, or omissions that take place after the effective date of the event and arise out of or relate to the entity, assets or liabilities acquired or assumed. After the expiration of the 90 day period, there will be no coverage for *claims* related to the transaction unless:  (1) *we* request and receive details of the transaction within the 90 day period, and (2) *we* agree by written endorsement to provide coverage subject to any terms, conditions, and limitations, including payment of additional premium *we* may require.

D.   Maintenance of Underlying Insurance
As long as this policy is in effect, the policies listed in the Schedule of Underlying Insurance must continuously: a) provide no less coverage than is listed in the Schedule of Underlying Insurance at the time of inception of this policy; and b) provide no lower limits of insurance than those listed in the Schedule of Underlying Insurance, except to the extent such limits are reduced or exhausted due to the payment of covered *claims*.

If the *underlying insurance* or any renewals or replacements thereof: a) are not kept in full force and effect; b) contain provisions with substantive changes from the provisions originally applicable to the policies listed in the Schedule of Underlying Insurance; c) have limits of insurance of a lesser amount than those listed in the Schedule of Underlying Insurance; d) are unavailable or uncollectible due to *your* or any insurer's bankruptcy, insolvency, or liquidation; or e) are unavailable or uncollectible due to *your* failure to comply with provisions of such policies; then this policy will still apply in the same manner as if the *underlying insurance* or *other insurance* contained the original, less restrictive provisions, was still in full force and effect, and was fully collectible.

E.   Policyholder Dividends
This is a participating policy with respect to the declaration of policyholder dividends, to the extent and in the manner such policyholder dividends are declared by *our* Board of Directors.

F.   Extended Reporting Periods
*Your* coverage may end because *you* or *we* choose to cancel or not renew it.  If this happens, *we* will make an Extended Reporting Period available for any claims-made coverages that extends the time for reporting *claims* if a) the claims-made coverage is cancelled or non-renewed for any reason other than fraud or nonpayment of premium, or b) *we* renew or replace the claims-made coverage with insurance that has a Retroactive Date later than the date shown on the Declarations Page or does not apply on a claims-made basis.

To be covered under the Extended Reporting Period, a *claim* must arise out of a *professional activity* or *occurrence* that took place on or after the Retroactive Date but before the end of the policy period.  Any such *claim* first made during an Extended Reporting Period will be deemed to have been made on the last day of the policy period.  The Extended Reporting Period does not extend the policy period, change the scope of coverage provided under any claims-made insuring agreement, or reinstate or increase the *limits of liability* available under this policy.  The offer of renewal terms, conditions, *limits of liability*, retentions or premium different from those in effect prior to renewal shall not constitute cancellation or *our* refusal to renew.

If *you* wish to purchase an Extended Reporting Period, *you* must a) obtain all available Extended Reporting Periods for all applicable *underlying insurance*; b) provide *us* with written notice of *your* election to purchase an Extended Reporting Period within 30 days of the end of the policy period or the date of the termination of the claims-made coverage, whichever comes first; and c) pay *us* within 30 days all such premiums as may be required. If *you* fail to comply with any of the three provisions stated above, *you* will not be entitled to purchase an Extended Reporting Period at a later date.

Once an Extended Reporting Period is effective, it cannot be cancelled and the premium is fully earned. However, *we* will return all premiums paid for any Extended Reporting Period that has not become effective because all available Extended Reporting Periods for all applicable *underlying insurance* were not obtained by *you*.

The coverage provided under an Extended Reporting Period will be excess over any *other insurance*, whether primary, excess, contingent or on any other basis, whenever such other valid and collectible insurance is in effect subsequent to the effective date of any such Extended Reporting Period.

## VI.   Defined Terms

A.   *Administration* – With regard to the *employee benefit program*: (1) Providing advice or counsel to *employees* and their beneficiaries, concerning their rights or interest; (2) determining *employees'* eligibility to participate; (3) interpreting the provisions; (4) handling records; or (5) effecting, continuing or terminating any *employee's* participation.  *Administration* does not include handling payroll deductions.

All damages arising from the same or related acts, errors or omissions in *your administration* of *your employee benefit program* are considered to arise out of a single act, error or omission.  Such act, error or omission will be deemed to have taken place at the time the first *claim* seeking such damages is first made and reported.

B.   *Advertisement* – A notice that is broadcast or published to the general public about *your* products or services for the purpose of attracting *patients* and includes material placed on the internet or on similar electronic means of communication. Regarding websites, only that part of the website that is about *your* products or services for purposes of attracting *patients* is considered an *advertisement*.

C.   *Applicable Underlying Limit* – The total of all available limits from *underlying insurance* plus any *other insurance*, less the amount by which any aggregate limit has been reduced by the payment of covered losses. The limits for any *underlying insurance* or *other insurance* will apply even if the insurer providing the *underlying insurance* or *other insurance* contends *you* failed to comply with any condition of such policies, or that insurer becomes insolvent.

Any aggregate limit or *self-insured retention* aggregate amount within the *applicable underlying limit* will be considered eroded or exhausted only by actual payments in connection with *claims* that would be insured by the provisions of this policy.

D. *Auto* – A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment, or any other land vehicle subject to a financial responsibility or motor vehicle law where it is licensed or principally garaged. *Auto* does not include mobile equipment with the following exceptions: 1) equipment designed primarily for snow removal, road maintenance other than construction or resurfacing, or street cleaning; 2) cherry pickers and similar devices mounted on automobile chassis; and 3) air compressors, pumps, and generators including spraying, welding, building cleaning, lighting and well servicing equipment.

E. *Bodily Injury and Property Damage - We* will pay those sums in excess of the *applicable underlying limit* that *you* become legally obligated to pay as damages because of *bodily injury* or *property damage* to which this policy applies.

   1. *Bodily Injury* – Physical injury, sickness, or disease sustained by a person other than a *patient*, including mental anguish, emotional distress or death resulting from any of these at any time.

   2. *Property Damage* – Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use will be deemed to occur at the time of the physical injury that caused it. Also includes loss of use of tangible property that is not physically injured. All such loss of use will be deemed to occur at the time of the *occurrence* that caused it.

      *We* will not cover *property damage* to:  a) property *you* own, rent or occupy, including any costs or expenses incurred by *you* or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property, b) premises *you* sell, give away or abandon, if the *property damage* arises out of any part of those premises, c) property loaned to *you*, d) personal property in *your*  care, custody or control, and e) that particular part of real property on which *you* or any contractors or subcontractors working directly or indirectly on *your* behalf are performing operations, if the *property damage* arises out of those operations.

   3. *Bodily Injury and Property Damage - We* will not cover *bodily injury* or *property damage*: a) expected or intended from *your* standpoint, except when resulting from the use of reasonable force to protect persons or property, b) for which *you are* obligated to pay damages by reason of the assumption of liability in a contract or agreement unless *you* would have liability for damages in the absence of the contract or agreement, or liability for damages was assumed in a contract or agreement that is an *insured contract*, provided damage or injury occurs subsequent to the execution of the contract, c) arising out of the transportation of *mobile equipment* by an *auto* owned, operated by, rented or loaned to *you*, d) arising out of the loss of, loss of use of, damage to, corruption of, inability to access or manipulate *electronic data*, e) arising out of fungi, and including mold or mildew, mycotoxins, toxins, allergens, spores, scents, vapors, gases or by-products released by fungi, and f) arising out of the ownership, maintenance, use or entrustment to others of any aircraft, helipad or heliport, *auto* or watercraft owned or operated by or rented or loaned to *you* including operation and *loading or unloading*.  However, with respect to (f), *we* will cover such liability when a policy is identified in Item 4 of the Schedule of Underlying Insurance, in which case coverage applies as set forth in I. C. Excess Follow Form Liability. This *auto* or watercraft exclusion does not apply to a non-owned watercraft that is less than 26 feet long and not used to carry persons or property for a charge.

F. *Claim* – Civil lawsuit, notice of a civil lawsuit, or notice of an intention to hold *you* responsible for damages for an *incident, bodily injury and property damage* or *personal and advertising injury,* covered by this policy. The lawsuit or threatened action against *you* must be filed, or intended to be filed, in the United States of America, its territories or possessions, or Canada. *We* will not cover any *claim* asserted by or on behalf of an insured against another insured, unless such *claim* is based on, arising out of, or in any way involving peer review or credentialing.

G. *Electronic Data* - Information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

H. *Employee* – Any natural person actively or formerly employed by *you*, including part-time or leased *employees*, and those on leave of absence. *Employee* does not include a temporary worker or independent contractor.

I. *Employee Benefit Program* -  A program providing some or all of the following benefits to *employees*: group life insurance, group accident or health insurance, dental, vision and hearing plans, flexible spending accounts, profit sharing plans, *employee* savings plans, *employee* stock ownership plans, pension plans and stock subscription plans,

unemployment insurance, social security benefits, workers' compensation and disability benefits, vacation plans, leave of absence programs, tuition assistance plans, transportation and health club subsidies, and any other similar plan administered by *you*.

*We* will not cover liability arising out of *administration* of *your employee benefit program*. However, *we* will cover such liability when a policy is identified in Item C of the Schedule of Underlying Insurance, in which case coverage applies as set forth in **I. Protecting You**, C. Follow Form Excess Liability.

J.   *Good Samaritan Acts – Professional activity* provided at the scene of an accident or emergency without expectation of remuneration.

K.   *Hostile Fire* – A fire which becomes uncontrollable or breaks out from where it was intended to be. *We* will cover *bodily injury* or *property damage* arising out of heat, smoke or fumes from a hostile fire.

L.   *Incident* –

1.  An actual or alleged act, error or omission in *your* rendering of or failure to render a *professional activity*, including *your* vicarious liability with regard to such *professional activity*;
2.  An actual or alleged act, error or omission in connection with *your* activities as a member of *your* duly authorized board or committee, or as a member of any committee of *your* medical or professional staff when engaged in *quality improvement*, which includes peer review and utilization review;
3.  An actual or alleged act, error or omission in connection with *your* activities as a member of an accreditation, standards review or similar board or committee;
4.  Any actual or alleged act, error or omission in connection with *your* performance of *quality improvement* activities; or
5.  Any actual or alleged act, error or omission in connection with *Good Samaritan Acts*.

All damages arising from the same or related acts, errors, omissions, or offenses are considered to arise out of a single act or *incident*. Such acts or *incidents* will be deemed to have taken place at the time the first *claim* seeking such damages is first made and reported.

M.   *Insured Contract* – A contract for a lease of premises, but not including that portion that indemnifies any person or organization for damage by fire to premises while rented to *you* or temporarily occupied by *you* with permission of the owner. *Insured contract* also means a sidetrack agreement, any easement or license agreement, an obligation, as required by ordinance to indemnify a municipality, an elevator maintenance agreement, or that part of any other contract or agreement pertaining to *your* business under which *you* assume the tort liability of another party to pay for *bodily injury, property damage* or an *incident* to a third person or organization, including a *patient. Insured contract* does not include that part of any contract or agreement that indemnifies an architect, engineer or surveyor for injury or damage arising out of the rendering or failure to render professional services including supervisory, inspection, architectural or engineering activities.

N.   *Limits of Liability* – These limits are shown on the Declarations Page and are the most *we* will pay regardless of the number of persons or entities included within the definition of *you, claims* made, claimants, or policies implicated. The deductible will be included in, and will not be in addition to, the applicable *limit of liability*. The limits of the underlying policies must be paid before triggering the obligations of this policy.

1.  The Specific Loss Limit is the most *we* will pay for loss or defense expenses because of any one *occurrence* or *incident*. If an *occurrence* or *incident* results in a *claim* to which multiple policies apply, *our* total liability for such *occurrence* or *incident* will not exceed the Specific Loss Limit. The Aggregate Limit is the most *we* will pay for all loss or defense expenses because of all *occurrences* and *incidents* covered under this policy. By loss, *we* mean any monetary amount paid on account of an award, judgment, or settlement, which *you* are legally obligated to pay as a result of a *claim* or *related claims*. Loss does not include punitive, exemplary or multiplied damages, except where insurable by applicable law.

2.  If any *limit of liability* provided by *underlying insurance* is reduced or exhausted due to the payment of *claims* that would have been covered by this policy, then this policy's *limits of liability* will apply in excess of the reduced *limit of liability* or in place of the exhausted *limit of liability* provided by *underlying insurance*.

3.  Any *limit of liability* provided under a *self-insured retention* listed in the Schedule of Underlying Insurance will apply separately to each and every *claim*. Any aggregate *limit of liability* for such *self-insured retention* will be

eroded or exhausted only by actual payment of *claims* otherwise covered by this policy.  Any defense expenses incurred by *you* will be part of the *limit of liability* under such *self-insured retention* and will erode or exhaust the aggregate *limit of liability* of the *self-insured retention*.

4.  Any amount paid for loss or defense expenses arising out of an *occurrence* or *incident* will reduce the Aggregate Limit.  If the Aggregate Limit has been reduced by payment of loss or defense expenses to an amount less than the Specific Loss Limit, then the remaining Aggregate Limit is the most that will be available to pay loss and defense expenses arising out of any other *occurrences* or *incidents*.

O.  *Loading or Unloading* – Handling of property after it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or *auto*, while it is in or on an aircraft, watercraft or *auto*, or while it is being moved from an aircraft, watercraft or *auto* to the place where it is finally delivered. But it does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or *auto*. *Loading or unloading* does not include the movement of *patients*.

P.  *Managed Care Activities* – Advertising, marketing, selling or enrollment for healthcare or workers' compensation plans; administering claims for health benefits; establishing healthcare provider networks; design and/or implementation of financial incentive plans; and services or activities performed in the administration or management of healthcare or workers' compensation plans. *Managed care activities* also include *quality improvement*, if performed for any person or entity other than an insured or for a fee.

Q.  *Mobile Equipment* – Land vehicles designed for use principally off public roads, vehicles maintained for use solely on or next to premises *you* own or rent, vehicles that travel on crawler treads, vehicles maintained primarily to provide mobility to permanently mounted/attached equipment, and vehicles not described herein that are primarily for purposes other than the transportation of persons or cargo.

R.  *Notification Provision* – *You* must provide *us* with prompt notice of: 1) any settlement offer that *you* intend to make or any settlement demand made by any claimant; and, with respect to any *underlying insurance, 2*) payment of any *claim; 3*) cancellation or non-renewal; 4) modification by endorsement or otherwise; or 5) any additional or returned premiums charged. Furthermore, with respect to the *underlying insurance, you* must provide *us* with prompt notice of any *claim* or circumstance that involves any of the following:

1.  unexpected deaths;
2.  unanticipated neurological, sensory and/or systemic deficits; brain damage; permanent paralysis, including, but not limited to, paraplegia and quadriplegia; partial or complete loss of sight of hearing; kidney failure; or sepsis;
3.  birth related injuries, including, but not limited to, maternal or fetal death; anesthesia related injuries; infant resuscitation; shoulder dystocia; or cerebral palsy;
4.  severe burns, including, but not limited to, thermal, chemical, radiological or electrical burns;
5.  severe internal injuries, including, but not limited to, lacerations of organs; infectious process; foreign body retention; sensory organ injury; or reproductive organ injury;
6.  failure to diagnose cancer;
7.  any sentinel event;
8.  class action suits; or
9.  any matter reserved in excess of 25% of the each loss, per accident, per *claim* or per *occurrence limit of liability* of the *applicable underlying insurance.*

Notice to any underlying insurer will not be deemed sufficient to establish reporting or written notice to *us*. Inspection or audits conducted by *us*, or reports made by *you* to *us* as part of engineering, risk management, or loss control services, will not be considered notice of an *incident*, *occurrence* or *claim*.

S.  *Occurrence* – An accident or offense, including continuous or repeated exposure to substantially the same general harmful conditions. *Occurrence* does not include an accident or offense arising directly or indirectly from (a) *your* providing of or failure to provide medical professional services to a *patient*; (b)  any obligation under a workers' compensation, disability benefits or unemployment compensation law or any similar law; (c) war, including undeclared or civil war, warlike action by a military force, or insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in  hindering or defending against any of these; (d) any intentional, dishonest, fraudulent, criminal or malicious act, error or omission, committed by or at *your* direction, including the willful or reckless violation of any statute; (e)  refusal to employ, termination of employment,  or other employment-related practices, policies,

acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution; and (f) violations or alleged violations of the Telephone Consumer Protection Act (TCPA), the CAN-SPAM Act of 2003, the Fair Credit Reporting Act (FCRA), the Fair and Accurate Credit Transactions Act (FACTA), or any federal, state or local statute, ordinance or regulation, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

All damages arising from the same or related accidents, acts, or offenses are considered to arise out of a single *occurrence*. Such *occurrence* will be deemed to have taken place at the time the first such accident or act occurs.

T.    *Organization* - the entity listed in the Policy Issued To section of the Declarations Page.

U.    *Other Insurance* – An insurance policy providing the same coverage as this policy. *Other insurance* includes any type of self-insurance or other mechanism by which *you* arrange for funding of legal liability. *Other insurance* does not include *underlying insurance* or an insurance policy specifically purchased to be excess of this policy.

V.    *Patients* – Any persons or human bodies admitted, registered, or scheduled to receive medical professional services from *you*, whether on an inpatient, outpatient, or emergency basis.

W.    *Personal and Advertising Injury - We* will pay those sums that *you* become legally obligated to pay as damages because of *personal and advertising injury* to which this policy applies. *Personal and advertising injury* means injury, including consequential *bodily injury,* committed in the course of *your* business and arising out of one or more of the following offenses:

1.  false arrest, detention, or imprisonment,
2.  malicious prosecution,
3.  wrongful eviction from, wrongful entry into or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor,
4.  oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services,
5.  oral or written publication, in any manner, of material that violates a person's right of privacy,
6.  the use of another's advertising idea in *your advertisement* and
7.  infringing upon another's copyright, trade dress or slogan in *your advertisement.*

*We* will not cover *personal and advertising injury*: a) caused by or at *your* direction with the knowledge that the act would violate the rights of another, b) arising out of oral or written publication, in any manner, of material if done by or at *your* direction with knowledge of its falsity, c) arising out of oral or written publication, in any manner, of material whose first publication took place before the beginning of the policy period, d) arising out of a breach of contract, except an implied contract to use another's advertising idea in *your advertisement*, g) arising out of the failure of products or services to conform with any statement of quality or performance made in *your advertisement*, h) arising out of the wrong description of the price of products or services stated in *your advertisement*, i) arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights but does not exclude infringement, in *your advertisement,* of copyright, trade dress or slogan, or j) arising out of the unauthorized use of another's name or product in *your* email address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

X.    *Pollutants* - Any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed. *We* will not cover injury or damage arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of *pollutants,* or any loss, cost or expense arising out of any direction, request, demand, order or statutory or regulatory requirement that *you* or others test for, monitor, investigate, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of *pollutants,* or *claim* by or on behalf of a governmental authority for damages because of testing for, monitoring, investigating, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of *pollutants. We* will cover *bodily injury* (a) sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, and (b) to a *patient*, visitor or invitee arising from the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of *pollutants.*

Y.  *Professional Activity* – Providing or failing to provide medical professional services to a *patient*, which includes: medical, dental, nursing, psychiatric, osteopathic, chiropractic, or other professional care or services; the handling or performance of post-mortem examinations on human bodies; and the furnishing or dispensing of medications and drugs. The following are only covered in connection with *patient* treatment or care: the furnishing of blood, or blood products, or medical or surgical supplies, equipment or appliances; the furnishing of food or beverages; the providing of counseling or social services.  *Professional Activity* does not include: *managed care activities;* any misuse or improper release of confidential, private or proprietary information, or any actual or alleged act, error or omission in violation of the Health Insurance Portability and Accountability Act of 1996 (HIPAA) or any regulations related to HIPAA, including but not limited to the Privacy Rule and the Security Rule; or, any administrative, disciplinary, licensing or regulatory claim or proceeding asserted by or on behalf of a governmental entity.

*We* will not cover *claims* for any *professional activities* arising out of the ownership, maintenance, use, operation or entrustment to others of any aircraft, *auto*, watercraft, motor vehicle or semi-trailer, or the *loading or unloading* thereof, but *we* will cover *claims* arising out of a *professional activity* in connection with the *loading or unloading* of *patients*.

Z.  *Protected Period* – The period beginning on *your* retroactive date for claims-made coverages or policy effective date for occurrence based coverages, and ending on the termination date of this policy.

AA. *Quality Improvement* – Peer review and quality assurance performed for the purpose of improving *patient* safety or the quality of healthcare, and utilization review for evaluating the appropriateness or necessity of medical *professional activities* provided or to be provided by *you*.  *Quality improvement* must be performed by *your* duly authorized formal professional review board or committee or through *your* participation as a member, witness or advisor to a formal credentialing, peer review or quality assurance board or committee.  *Quality improvement* does not include: 1) compensated services to an organization which reviews utilization, necessity and treatment issues for controlling healthcare costs, 2) services or activities performed in administering benefits or managing health care plans for others, 3) any *managed care activities* performed for any person or entity other than *you*, 4) administering claims for health benefits; establishing health care provider networks; design and/or implementation of clinical guidelines, practice parameters or protocols; consultation or other evaluation involving payment of medical services; and services or activities performed in the administration or management of health care or workers' compensation plans.

AB. *Related Claims* – All *claims* involving the same or related facts whether related causally or in any other way.  All *related claims*, whenever made, will be deemed to be a single *claim* and to have been made on the date on which notice was first given to *us* of an act, error, omission, or *occurrence* which subsequently gave rise to any of the *related claims*, regardless of the number of claimants, the number of insureds involved, the number and timing of the *related claims*, or whether the *related claims* are made in more than one policy period.

AC. *Self-Insured Retention* - the limits of liability identified in the Schedule of Underlying Insurance.

AD. *Sexual Misconduct and other Abuse* – Actual, threatened, or alleged abuse, harassment, assault, exploitation, misconduct or molestation, sexual or otherwise, including the negligent employment, investigation, supervision or retention of someone accused of such behavior or the failure to report such behavior to the proper authorities. *We* will pay loss or defense expenses for *claims* arising from *your* O*rganization's* vicarious liability for *sexual misconduct and other abuse*. *We* will provide defense coverage only for a natural person unless or until the natural person is convicted or enters a plea agreement including an admission of guilt, at which point reimbursement for defense expenses will cease.

Payments for defense expenses involving actual or alleged *sexual misconduct and other abuse* shall be subject to the *self-insured retention* for the coverages identified in the Schedule of Underlying Insurance.

AE. *Subsidiary* – Any entity in which the *organization* owns or controls, directly or indirectly, more than 50% of the outstanding securities representing the right to vote for the election of such entity's directors or members of the board of managers.

AF. *Underlying Insurance* - the insurance policies and any *self-insured-retention* identified in the Schedule of Underlying Insurance.

AG. *Volunteer* – A person who is not *your employee* or independent contractor and who donates his or her work and acts at the direction of and within the scope of duties determined by *you*, and is not paid a fee, salary or other compensation by *you* or anyone else for their work performed for *you*.

AH. *We, Us, Our, and Company* - Professional Security Insurance Company, its predecessors or affiliated companies.

AI. *You, Your, and Yours* -

1. The *Organization*;
2. Any of the *Organization*'s  *subsidiaries*, affiliated, associated, controlled, or allied corporations, or firms for which the *Organization* has responsibility for placing insurance and for which similar coverage is not otherwise more specifically provided;
3. Any of *your employees*, but only while acting within the scope of their duties as such;
4. Any duly licensed locum tenens working as a temporary substitute, for physicians covered under this policy, due to vacation, illness or other absence, but only if the contract with the locum tenens specifies that *you* will provide insurance coverage for the locum tenens;
5. Any of *your volunteers*, but only while acting within the scope of their duties as such;
6. Any members of a duly authorized board or committee of the *Organization*; or any person charged with the duty of acting as a hearing officer or agent of such committee or executing directives of any such board or committee, provided they are acting within the scope of their duties as such;
7. Any medical directors, students, administrators, department heads or chiefs of staff, who are not *employees*, while acting within the scope of their duties as such; provided they, with the sole exception of *your* medical directors, will not be insured for *claims* arising out of the rendering of or failure to render direct *patient* care;
8. Any member or partner of a joint venture or partnership for which the *Organization* is responsible for providing insurance coverage, but only with respect to the member or partner's liability arising out of the designated joint venture or partnership;
9. Any person or organization for whom *you* have agreed under contract or agreement to provide insurance (referred to as "additional insured");
10. *Your* estates, heirs, legal representatives and/or assigns in the event of death, incapacity, or bankruptcy.

_____
President

_____
Secretary

**Professional Security Insurance Company**℠
a **MagMutual** company

3535 Piedmont Road
Building 14, Suite 1000
Atlanta, Georgia 30305-1518
(404) 842-5600 (800) 242-4882

**Professional Security Insurance Company**
a **MagMutual** company

Policy Number: HUL-09100292

## COMMON POLICY CONDITIONS

All policies attached hereto are subject to the following conditions.

### A. Cancellation or Non-Renewal

1. *We* may cancel this policy by mailing written notice to the *Organization*. *We* will tell *you* when cancellation will be effective and will provide 60 days advance notice, or longer as may be required by law.  However, in the event *you* fail to pay the premium when due, *we* may cancel this policy effective upon 10 days written notice to the *Organization*, or such longer period as may be required by law.
2. The *Organization* may cancel this policy prospectively only by mailing *us* written notice stating when cancellation will be effective.  If the policy is cancelled by the *Organization*, the earned premium will be the greater of: (a) the amount computed in accordance with the customary short-rate table, or (b) 25% of the total policy premium.
3. Premium adjustment may be made at the time cancellation is effective or as soon as practicable thereafter.
4. *We* will not be required to renew this policy upon its expiration.

### B. Policy Changes

*We* may make changes in *our* standard insurance policy forms from time to time.  While *your* policy is in effect, *you* will automatically receive the benefit of any broadened coverage, if *we* can make the changes to the policy without increasing *your* premium. If *we* make changes which are more restrictive, *you* will not be affected until *your* policy is renewed. *We* will notify the *Organization* of the more restrictive changes 45 days before they become effective under *your* renewal policy. Otherwise, this policy can only be changed by a written endorsement which *we* make a part of the policy. Nothing else will change this policy, waive any of its terms or stop *us* from asserting any of *our* rights under it.

### C. State Law

This policy is issued according to laws of the state shown in the mailing address of the *Organization*. Any part of this policy that conflicts with the law in that state is automatically changed to conform to that law.

### D. Bankruptcy

*Your* bankruptcy or insolvency will not relieve *us* of *our* obligations under this policy.

### E. Multiple Policies

If a *claim* involves this policy and any other policy issued by *us*, in no event will more than one policy issued by *us* respond to the *claim*.  The policy responding to the *claim* will be the policy in force at the time the earliest *incident*, *occurrence*, or act, error or omission giving rise to such *claim* took place.  Policies specifically intended to provide excess or umbrella coverage are the sole exception to this rule.

 Copyright Insurance Services Office, Inc., 1998

Policy Number: HUL-09100292

**F.  Service of Suit**

Pursuant to any statute of any state, territory or district of the United States which makes provisions therefore, *we* designate the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the Statute, or his successors in office, as *our* true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by *you* or on *your* behalf or any beneficiary hereunder arising out of this contract of insurance, and designates the below named person as the proper recipient for said officer to mail process.

Service of process in such suit may be made upon *our* General Counsel, or his nominee, at 3535 Piedmont Road, NE, Building 14, Suite 1000, Atlanta, Georgia 30305 and that in any suit instituted against any one of them upon this policy, *we* will abide by the final decision of such Court or any Appellate Court in the event of an appeal.

**G.  Notice**

Notice to any insured will be sent to the *Organization* at the address shown on the Declarations Page.  *You* agree that the *Organization* will act on *your* behalf with respect to receiving any notices and any return premium from *us*.

Policy Number: HUL-09100292

**COMMERCIAL LIABILITY UMBRELLA**
**CU 21 30 01 15**

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

COMMERCIAL LIABILITY UMBRELLA COVERAGE PART

**A.** If aggregate insured losses attributable to terrorist acts certified under the federal Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

**1.** The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

**2.** The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

**B.** The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for injury or damage that is otherwise excluded under this Coverage Part.

 © Insurance Services Office, Inc., 2015



**This endorsement changes your policy. Please read it carefully.**

**Policy issued to:** Cabell Huntington Hospital, Inc.

**Policy number:** HUL-09100292                    **Endorsement number:** _1_
**Endorsement effective date:** 10/01/2019          **Endorsement issue date:** 12/17/2019

---

### SCHEDULE OF UNDERLYING INSURANCE

**Cabell Huntington Hospital, Inc.**

**A.    Professional Liability**

| | |
|---|---|
| Insurer: | Self Insured Retention (SIR) |
| Policy Number: | N/A |
| Policy Period: | 10/01/2019  to  10/01/2020 |

| | | |
|---|---|---|
| Limits: | $3,000,000 | Per Claim |
| | $9,000,000 | Aggregate |

Additionally, for Professional Liability *claim* files deemed to be a *related claim*, the Professional Liability SIR is amended to:

$6,000,000 Per *Related Claim*
$ NIL          Aggregate
The *related claim* limit does not erode the $9,000,000 SIR aggregate limit

The Professional Liability SIRs above apply to all insureds covered by this umbrella policy.

The Professional Liability SIR above is also excess of the West Virginia Mutual Insurance Company policy for the Employed Physicians of Cabell Huntington Hospital, for physicians scheduled on the policy with separate limits of:

$1,000,000 Each Medical Incident
$3,000,000 Aggregate

**B.    General Liability**

**D.   Other Coverages**

Commercial Automobile Liability



Employers Liability



**CHHI Family Medical Centers**

**B.   General Liability**



**D.   Other Coverages**

Employers Liability



**Cabell Huntington Hospital - Non-Hospital Operations**

**B.   General Liability**



**Vanguard Financial Services Inc.**

**B.   General Liability**

**D.   Other Coverages**

Commercial Automobile Liability



Employers Liability



**St. Mary's Medical Center, Inc.**

**D.   Other Coverages**

Employers Liability



**Other terms**
This endorsement forms a part of the policy and is subject to all of its other terms, conditions and exclusions.



**This endorsement changes your policy. Please read it carefully.**

**Policy issued to:** Cabell Huntington Hospital, Inc.

**Policy number:** HUL-09100292
**Endorsement effective date:** 10/01/2019

**Endorsement number:** _2_
**Endorsement issue date:** 12/17/2019

---

### LIMITS OF LIABILITY ENDORSEMENT

**What this endorsement does**

In consideration of the premium charged,  the following changes are made:

**Item 2. Limits of Liability**, of the Declarations Page, is deleted and replaced with the following:

#### Item 2. Limits of Liability

    (a) Specific Loss Limit                 $10,000,000

    (b) Aggregate Limit – Professional Liability    $10,000,000

    (c) Aggregate Limit – Other Coverages       $10,000,000

Paragraphs 1. and 4., Section **VI. Defined Terms,** N. *Limits of Liability,* are deleted in their entirety and replaced with the following:

1.  The Specific Loss Limit shown in Item 2(a) of the Declarations Page is the most we will pay for loss or defense expenses because of any one *occurrence* or *incident*.  If an *occurrence* or *incident* results in a *claim* to which multiple policies apply, *our* total liability for such *occurrence* or *incident* will not exceed the Specific Loss Limit.  The Aggregate Limit shown in Item 2(b) of the Declarations Page is the most we will pay for all loss or defense expenses because of any one or all *incidents* covered under this policy.  The Aggregate Limit is the most  we will pay for all loss or defense expenses because of any one or all *occurrences* covered under this policy.  By loss, *we* mean any monetary amount paid on account of an award, judgment, or settlement, which *you* are legally obligated to pay as a result of a *claim* or *related claims*.

2.  We will pay for loss or defense expenses arising out of an *incident* will reduce the Aggregate Limit shown in Item 2(b) of the Declarations Page.  If the Aggregate Limit has been reduced by payment of loss or defense expenses to an amount less than the Specific Loss Limit, then the remaining Aggregate Limit is the most that will be available to pay loss and defense expenses arising out of any other *incidents*.

3.  Any amount paid for loss or defense expenses arising out of an *occurrence* will reduce the Aggregate Limit shown in Item 2(c) of the Declarations.  If the Aggregate Limit has been reduced by payment of loss or defense expenses to an amount less than the Specific Loss Limit, then the remaining Aggregate Limit is the most that will be available to pay loss and defense expenses arising out of any other *occurrences*.

**Other terms**
This endorsement forms a part of the policy and is subject to all of its other terms, conditions and exclusions.



**This endorsement changes your policy. Please read it carefully.**

**Policy issued to:** Cabell Huntington Hospital, Inc.

| | |
|---|---|
| **Policy number:** HUL-09100292 | **Endorsement number:** _3_ |
| **Endorsement effective date:** 10/01/2019 | **Endorsement issue date:** 12/17/2019 |

---

### UMBRELLA PROFESSIONAL LIABILITY AND UMBRELLA GENERAL LIABILITY INDEMNITY ONLY COVERAGE ENDORSEMENT

**What this endorsement does**

*You* and *we* agree that with respect to *claims* applicable to Section **I. Protecting You,** A. Umbrella Professional Liability and B. Umbrella General Liability, and underlying Health Care Professional Liability and General Liability self-insured retentions, the policy is amended as follows:

Section **II. Your Duties Under This Policy,** paragraph 1., is deleted and replaced with the following:

1. Pay the premium, any *self-insured retention;* and all defense expenses

Section **III. Your Duties When A Claim Arises** is deleted and replaced with the following:

**III.   Your Duties When a Claim Arises**

If *you* are aware of a *claim*, or *incident* or *occurrence* which could lead to a *claim*, or if a claim is made against *you* or anyone for whose acts *you* are legally responsible, *you* must promptly notify *us* and:

1. Tell *us* the details of what happened and provide *us* with the description of the *claim*, date of loss, the names and addresses of potential claimants and involved parties, any injured people and witnesses, and the reserved, paid and incurred amounts for each *claim* or circumstance.

2. Immediately send *us* all documents related to a lawsuit or notice of intent to sue and keep a copy of what *you* send *us*.  If *you* fail to do this, the lawsuit may go into default. *We* will not pay a default judgment against *you* or any other covered person or entity because of *your* failure to timely deliver the lawsuit documents to *us*.

3. Provide us with a quarterly loss run report summarizing the above details for all *claims* and circumstances no later than 10 days after the end of each calendar quarter, and allow *us* to conduct *claims* audits of *your* files upon request.

4. Cooperate fully with *us* and all underlying insurers in defending the *claim* and assisting *us* to secure and present evidence, prepare for and attend depositions, hearings, trials, motions or appeals or assisting *us* with any other reasonable act or undertaking for the defense of the *claim*.

5. Not voluntarily make any payments, assume any obligations, or settle any *claim* for an amount in excess of the *applicable underlying limit* without *our* written consent. If *you* do, we will not reimburse *you*, even if the cost would be covered by this policy.

6. Refrain from meeting with any attorney, or giving statements or depositions, without first



notifying *us*.

If *you* fail to comply with *you* duties under this section, *we* may deny coverage for *your* claim under this policy.

Section **IV. A Strong Defense** is deleted in its entirety.

Section **V. General Rules**, paragraph B. Other Insurance, is deleted and replaced with the following:

B.   Other Insurance

If any other *insurance* is available to *you* regarding a matter covered by this policy, and such insurance is afforded under a policy or Extended Reporting Period issued by *us*, then the maximum *limits of liability* under all policies will not exceed the highest remaining applicable *limit of liability* under any one policy.

If any *other insurance* is available to *you* regarding a matter covered by this policy, and such insurance is not afforded under a policy or Extended Reporting Period issued by *us*, then this insurance will be excess over such insurance even if *such* other insurance is stated to be primary, excess, contingent, or otherwise. *We* will pay only *our* share of loss, if any, that exceeds the sum of: a) the Applicable *Underlying Limit*; b) the total amount that all such *other insurance* would pay in the absence of this policy; and c) the total of all deductible and self-insured amounts under all such *other insurance*. This condition will not apply if such *other insurance* is specifically written to be excess of this policy. We will not pay any defense expenses.

Section **VI.   Defined Terms,** paragraph N. Limits of Liability, is deleted and replaced with the following:

N.    *Limits of Liability* – These limits are shown on the Declarations Page and are the most *we* will pay regardless of the number of persons or entities included within the definition of *you*, *claims* made, *claimant*, or policies implicated. The limits of the underlying policies must be paid before triggering the obligations of this policy.

1.   The Specific Loss Limit is the most *we* will pay for loss because of any one *occurrence* or *incident*. If an *occurrence* or *incident* results in a *claim* to which multiple policies apply, *our* total liability for such *occurrence* or *incident* will not exceed the Specific Loss Limit. The Aggregate Limit is the most *we* will pay for all loss because of all occurrences and incidents covered under this policy. By loss, we mean any monetary amount paid on account of an award, judgment, or settlement, which *you* are legally obligated to pay as a result of a *claim* or related claims. Loss does not include punitive, exemplary or multiplied damages, except where insurable by applicable law. We will not pay defense expenses as part of either the Specific Loss Limit or the Aggregate Limit of this policy.

2.   If any *limit of liability* provided by *underlying insurance* is reduced or exhausted due to the payment of *claims* that would have been covered by this policy, then this policy's limits *of liability* will apply in excess of the reduced *limit of liability* or in place of the exhausted *limit of liability* provided by *underlying insurance*.

3.   Any *limit of liability* provided under a *self-insured retention* listed in the Schedule of Underlying Insurance will apply separately to each and every *claim*. Any aggregate *limit of liability* for such *self-insured retention* will be eroded or exhausted only by actual payment of *claims* otherwise covered by this policy. Any defense expenses incurred by *you* will be paid by *you* and will not be a part of the *limit of liability* under such *self-insured retention* and will not erode or exhaust the aggregate *limit of liability* of the *self-*



*insured retention*.

4. Any amount paid for loss arising out of an *occurrence* or *incident* will reduce the Aggregate Limit.  If the Aggregate Limit has been reduced by payment of loss to an amount less than the Specific Loss Limit, then the remaining Aggregate Limit is the most that will be available to pay loss arising out of any other *occurrences* or *incidents*.

Section **VI.  Defined Terms**, paragraph AD. Sexual Misconduct and other Abuse, is deleted and replaced with the following:

AD.  *Sexual Misconduct and other Abuse* – Actual, threatened, or alleged abuse, harassment, assault, exploitation, misconduct or molestation, sexual or otherwise, including the negligent employment, investigation, supervision or retention of someone accused of such behavior or the failure to report such behavior to the proper authorities.  *We* will pay loss for *claims* arising from *your Organization's* vicarious liability for *sexual misconduct and other abuse. We will not provide defense coverage for this coverage.*

Payments for defense expenses involving actual or alleged *sexual misconduct and other abuse* shall be paid by you and will not erode the *self-insured retention* for the coverages identified in the Schedule of Underlying Insurance.

**Other terms**
This endorsement forms a part of the policy and is subject to all of its other terms, conditions and exclusions.



**This endorsement changes your policy. Please read it carefully.**

**Policy issued to:** Cabell Huntington Hospital, Inc.

**Policy number:** HUL-09100292                     **Endorsement number:** _4_
**Endorsement effective date:** 10/01/2019          **Endorsement issue date:** 12/17/2019

---

**STOP GAP WEST VIRGINIA EXCESS EMPLOYERS LIABILITY INDEMNITY ONLY COVERAGE ENDORSEMENT**

**What this endorsement does**

In consideration of the premium charged, *you* and *we* agree that the following sections of the policy are amended, and apply only to work in the state of West Virginia:

Item 2. Retroactive Dates, on the Declarations Page, is amended to include the following:

    C.  Excess Employers Liability (Stop Gap – West Virginia):          10/01/1986

Section **I. Protecting *You*,** is amended to include the following additional subsection:

D.  Excess Employers Liability (Stop Gap – West Virginia)

*We* will protect *you* from *claims* first made and reported to *us* during the policy period or any extended reporting period alleging *bodily injury* to an *employee* and arising out of and in the course of the *employee's* employment by *you* in West Virginia during the *protected period*, provided that *you* comply with the conditions and *notification provisions* specified in this policy.  *We* will protect *you* up to your selected *limits of liability* in excess of the *organization's applicable underlying limit*, which is the Employers Liability *self-insured retention* shown in Item D of the Schedule of Underlying Insurance.

The damages we will pay, where recovery is permitted by law, includes damages:

1.  For which you are liable to a third party by reason of a *claim* or suit against *you* by that third party as a result of *bodily injury to your employee*;
2.  For care and loss of services; and
3.  For consequential *bodily injury* to a spouse, child, parent, brother or sister of the injured *employee*; provided that these damages are the direct consequence of *bodily injury* that arises out of and in the course of the injured *employee's* employment by *you*; and
4.  Because of *bodily injury* to *your employee* that arises out of an in the course of employment, claims against *you* in a capacity other than as employer

Section **II. Your Duties Under This Policy**, paragraph 1., is deleted and replaced with the following:

    1.  Pay the premium, any *self-insured retention*; and all defense expenses

Section **III. *Your* Duties When A *Claim* Arises** is deleted and replaced with the following:

    **III.     *Your* Duties When a *Claim* Arises**

**Professional Security Insurance Company**
a MagMutual company

If *you* are aware of a *claim*, or *incident* or *occurrence* which could lead to a *claim*, or if a *claim* is made against *you* or anyone for whose acts you are legally responsible, *you* must promptly *notify* us and:

1. *Tell us the details of what happened and provide us with the description of the claim*, date of loss, the names and addresses of potential claimants and involved parties, any injured people and witnesses, and the reserved, paid and incurred amounts for each *claim* or circumstance.

2. Immediately send *us* all documents related to a lawsuit or notice of intent to sue and keep a copy of what *you* send *us*. If *you* fail to do this, the lawsuit may go into default. *We* will not pay a default judgment against *you* or any other covered person or entity because of *your* failure to timely deliver the lawsuit documents to *us*.

3. Provide us with a quarterly loss run report summarizing the above details for all *claims* and circumstances no later than 10 days after the end of each calendar quarter, and allow *us* to conduct *claims* audits of *your* files upon request.

4. Cooperate fully with *us* and all underlying insurers in defending the *claim* and assisting *us* to secure and present evidence, prepare for and attend depositions, hearings, trials, motions or appeals or assisting *us* with any other reasonable act or undertaking for the defense of the *claim*.

5. Not voluntarily make any payments, assume any obligations, or settle any *claim* for an amount in excess of the *applicable underlying limit* without *our* written consent. If *you* do, *we* will not reimburse *you*, even if the cost would be covered by this policy.

6. Refrain from meeting with any attorney, or giving statements or depositions, without first notifying *us*.

If *you* fail to comply with *your* duties under this section, *we* may deny coverage for *your* claim under this policy.

Section **IV. A Strong Defense** is deleted in its entirety.

For purposes of the coverage provided by this endorsement only, Section **VI. Defined Terms**, is amended by deleting specified paragraphs in their entirety and replacing them with the following:

E. *Bodily Injury* – *We* will pay those sums in excess of the *applicable underlying limit* that *you* become legally obligated by West Virginia law to pay as damages because of *bodily injury by accident* or *bodily injury by disease* to *your* employee to which this policy applies.

1. *Bodily Injury* – Physical injury, sickness, or disease, including death, sustained by *your* employee and arising out of and in the course of the injured *employee's* employment by *you*.

a. *Bodily injury by accident* – *Bodily injury* caused by an accident that occurs during the policy period. A disease is not *bodily injury* by *accident* unless it results directly from *bodily injury* by *accident*.

b. *Bodily injury by disease* - *Bodily injury* caused by or aggravated by conditions of employment by *you*, and the injured *employee's* last day of last exposure to the conditions causing or aggravating such *bodily injury* occurs during the policy period. *Bodily injury by disease* does not include a disease that results directly from an accident.



2.  *We* will not cover

    a.  *Bodily injury* intentionally caused or aggravated by yo*u*, however this does not apply to *bodily injury* resulting from *your* deliberate intention and for which *you* are legally liable in a claim brought under West Virginia Code §23-4-2(d)(2);
    b.  Any premium, assessment, penalty, fine, benefits or other obligation imposed by any workers' compensation, disability benefits or unemployment compensation law or any similar law;
    c.  *Bodily injury* suffered or caused by any *employee* while employed in violation of law with the actual knowledge of any of *your* executive officers;
    d.  *Bodily injury* to an *employee* when *you* are deprived of any defense or otherwise subject to penalty because of *your* failure to secure *your* obligations or comply with any workers' compensation law;
    e.  Damages arising out of coercion, criticism, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination against or termination of any *employee*, or any personnel practices, policies, acts or omissions;
    f.  *Bodily injury* suffered or caused by any person knowingly employed by *you* in violation of any law as to age or under the age of 14 years, regardless of any such law;
    g.  *Bodily injury* to a master or member of the crew of any vessel or any member of the flying crew of an aircraft;
    h.  Bodily injury to any person in work subject to the Longshore and Harbor Workers' Compensation Act (33 U.S.C. Sections 901 et seq.), the Nonappropriated Fund Instrumentalities Act (5 U.S.C. Sections 8171 et seq.), the Outer Continental Shelf Lands Act (43 U.S.C. Sections 1331 et seq.), the Defense Base Act (42 U.S.C. Sections 1651–1654), the Federal Coal Mine Safety and Health Act (30 U.S.C.Sections 801 et seq. and 907-944), any other federal workers or workmen's compensation law or other federal occupational disease law, or any amendments;
    i.  Bodily injury to any person in work subject to the Federal Employers' Liability Act (45 U.S.C. Sections 51et seq.), any other federal laws obligating an employer to pay damages to an employee due to bodily injury arising out of or in the course of employment, or any amendments to those laws;
    j.  Fines or penalties imposed for violation of federal or state law; and
    k.  Damages payable under the Migrant and Seasonal Agricultural Worker Protection Act (29 U.S.C. Sections 1801 et seq.) and under any other federal law awarding damages for violation of those laws or regulations issued thereunder, and any amendments to those laws.

F.  *Claim* – Civil lawsuit, notice of a civil lawsuit or notice of an intention to hold *you* responsible for damages because of *bodily injury* covered by this endorsement.  The lawsuit or threatened action against *you* must be filed, or intended to be filed, in the United States of America, its territories or possessions, or Canada.

H.  *Employee* – Any natural person actively employed by *you*, including part-time or leased *employees*, who at the time of injury, was covered under a workers compensation policy and subject to a *workers compensation law* of West Virginia.

N.  *Limits of Liability* – These limits are shown on the Declarations Page and are the most *we* will pay regardless of the number of persons or entities included within the definition of *you*, *claims* made, claimants, or policies implicated. The limits of the underlying policies must be paid before triggering the obligations of this policy.

    1.  The Specific Loss Limit is the most we will pay for loss because of *bodily injury* to one or more *employees* in any one accident, or arising out of *bodily injury by disease* to one or more *employees*. If the *bodily injury* results in a *claim* to which multiple policies apply, *our* total liability will not exceed the Specific Loss Limit. The Aggregate Limit is the most *we* will pay for all loss because of *occurrences*, *incidents*, and bodily injury covered under this policy.  By loss, *we* mean any monetary amount paid on account of an award, judgment, or settlement, which *you* are legally obligated to pay as a result of a *claim* or *related claims*.  Loss does not include punitive, exemplary or multiplied damages, except when immunity was lost pursuant to West Virginia Code §23-4-2(d)(2).  We will not



pay defense expenses as part of either the Specific Loss Limit or the Aggregate Limit of this policy.

2. If any *limit of liability* provided by *applicable underlying insurance* is reduced or exhausted due to the payment of *claims* that would have been covered by this policy, then this policy's *limits of liability* will apply in excess of the reduced *limit of liability* or in place of the exhausted *limit of liability* provided by *underlying insurance*.

3. Any *limit of liability* provided under a *self-insured retention* listed in the Schedule of Underlying Insurance will apply separately to each and every *claim*. Any aggregate *limit of liability* for such *self-insured retention* will be eroded or exhausted only by actual payment of *claims* otherwise covered by this policy. Any defense expenses incurred by *you* will be paid by *you* and will not be a part of the *limit of liability* under such *self-insured retention* and will not erode or exhaust the aggregate *limit of liability* of the *self-insured retention*.

4. Any amount paid for loss arising out of an *occurrence*, *incident* or *bodily injury* will reduce the Aggregate Limit. If the Aggregate Limit has been reduced by payment of loss to an amount less than the Specific Loss Limit, then the remaining Aggregate Limit is the most that will be available to pay loss arising out of any other *claims*.

W. *You*, *Your* and *Yours* –

1. The *Organization*;
2. Any of the *Organization's subsidiaries*, affiliated, associated, controlled, or allied corporations, or firms for which the *Organization* has responsibility for placing insurance and for which similar coverage is not otherwise more specifically provided;
3. Any members of a duly authorized board or committee of the *Organization*, provided they are acting within the scope of their duties as such;
4. Any member or partner of a joint venture or partnership for which the *Organization* is responsible for providing insurance coverage, but only with respect to the member or partner's liability arising out of the designated joint venture or partnership.

X. *Workers Compensation Law – The Workers Compensation Law* and any Occupational Disease Law of West Virginia. This does not include provisions of any law providing non-occupational disability benefits.

**Other terms**

This endorsement forms a part of the policy and is subject to all of its other terms, conditions and exclusions.

**POLICY NUMBER**: 09100292                                    Professional Security Insurance Company

## PRIVACY POLICY

**Information We Collect --** In the course of our business, it is sometimes necessary to collect "nonpublic personal information" about people who seek insurance or financial services from us ("Customers"). We do not, however, collect any information unless it is required to serve our Customers and to conduct our business. We collect information from sources such as:

• Our Customers themselves;
• Consumer reporting agencies and other third parties authorized by a Customer to give us information (e.g., consumer reports, claims reports, medical reports and motor vehicle reports); and
• A Customer's transactions with us, our affiliates, agents and insurers that we represent.

This Privacy Policy describes MAG Mutual's practices for protecting the personal information of our customers.

**Use and Disclosure of Customer Information --** We do not disclose any nonpublic personal information about our Customers or former Customers to anyone outside our organization, except to effect a transaction authorized by the Customer or as required by law.  We may disclose such personal information to our affiliates:

• To complete financial transactions authorized by a Customer;
• To service, process or administer business operations such as accounting, underwriting and claims; and
• To identify other products and services that may be beneficial to a Customer.

**Sharing of Information with Service Providers --** From time to time, we may retain third parties to perform various support services for us.  Such third parties may include insurance claims adjusters, attorneys, or mail houses.  We may disclose limited amounts of Customer information to these parties so they can perform their services, but we do not disclose any more information than is necessary.

**Medical Information --** If we receive a Customer's health information, we do not share such information with third parties or affiliates except as required to service the subject Customer's policy, account, claim or contract; for legitimate insurance functions; as allowed by applicable laws governing privacy of health records; or with the Customer's authorization.

**Confidentiality and Security of Customer's Information --** We go to great lengths to maintain the privacy and security of our Customers' personal information. We maintain physical, electronic and procedural safeguards to protect all the information we collect. We are careful to ensure that our employees follow strict policies and procedures to protect the confidentiality of our Customers' personal information, and our computer systems are configured in a way to prevent inappropriate access by third parties. Our employees are allowed access to a Customer's personal information only to the extent that they need to know that information to provide products or services to the Customer or for other legitimate business purposes.

**Accuracy of Information --** It is important to us to keep a Customer's information current and accurate.  If you believe that our records are inaccurate or incomplete, please contact us at 1-800-282-4882.  We will investigate your concerns and correct any inaccuracies.

**Changes to our Policy --** We do not foresee any reason to change our Privacy Policy, but business conditions may warrant a change from time to time.  We will provide you with notice of any material or significant changes to the Policy before implementing them.  If you have any questions about how we handle privacy and confidentiality issues, please contact us.

MAG Mutual ©
MAG Mutual Insurance Company - Professional Security Insurance Company
MAG Mutual Insurance Agency, LLC

**Professional Security
Insurance Company**
a **MagMutual** company

## BUSINESS ASSOCIATE AGREEMENT

This Business Associate Agreement (the "Agreement") is effective the day Cabell Huntington Hospital Inc (the "Covered Entity") enters an insurance contract (the "Effective Date") with MAG Mutual Insurance Company and/or Professional Security Insurance Company (hereafter collectively referred to as "MagMutual"). In the contract of insurance between the Parties, otherwise known as the Business Agreement, MagMutual agrees to provides certain risk management services to the Covered Entity ("Services") in exchange for insurance premium. By agreeing to provide Services, MagMutual is deemed a Business Associate within the meaning of the "HIPAA Requirements."

The Parties enter this Agreement to comply with the privacy regulations (the "Privacy Rule") and security regulations (the "Security Rule") adopted by the U.S. Department of Health and Human Services ("HHS") at 45 C.F.R. Parts 160 and 164, as promulgated by HHS in accordance with the Administrative Simplification provisions of the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"); the Health Information Technology for Economic and Clinical Health Act of 2009 ("HITECH"); and the HHS regulations promulgated on January 25, 2013, entitled the "Modifications to the HIPAA Privacy, Security, Enforcement, and Breach Notification Rules Under the Health Information Technology for Economic and Clinical Health Act and the Genetic Information Nondiscrimination Act" (the "Final Regulation"), each of which as may be amended from time to time, and referred to in this Agreement as the Privacy Rule, Security Rule, HIPAA, HITECH, and Final Regulation, and collectively referred to as the "HIPAA Requirements".

If a term is capitalized in this Agreement it will have the definition provided in the HIPAA Requirements. However, all references to Protected Health Information ("PHI") shall be construed to include Electronic Protected Health Information, and references to PHI shall mean only the PHI that MagMutual or its Subcontractor uses, discloses, creates, receives, maintains and/or transmits for or on behalf of the Covered Entity to perform the Services.

1.  <u>Obligations of the Covered Entity</u>. The Covered Entity will: (a) provide MagMutual with a copy of its notice of privacy practices that the Covered Entity produces in accordance with 45 C.F.R. §164.520 as well as any changes to such notice; (b) promptly, in writing, notify MagMutual of any restriction to the Use or Disclosure of PHI that the Covered Entity has agreed to in accordance with 45 C.F.R §164.522 of the Privacy Rule; (c) promptly, in writing, notify MagMutual of any changes in, or revocation of, permission to an Individual to use or disclose PHI; and (d) obtain all authorizations necessary for any Use or Disclosure of any PHI. The Covered Entity shall not request MagMutual to use or disclose PHI in any manner that will not be permissible under the HIPAA Requirements if done by the Covered Entity. The Covered Entity represents that, to the extent the Covered Entity provides PHI to MagMutual, such PHI is the minimum necessary PHI for the accomplishment of MagMutual's purpose.

2.  <u>Obligations of MagMutual</u>.

    A.  <u>Compliance with Laws</u>. MagMutual will only create, receive, use, disclose, maintain, and/or transmit PHI in compliance with this Agreement and the confidentiality requirements set forth at 45 C.F.R. §164.504(e). MagMutual will agree to comply with all applicable federal and state laws.

    B.  <u>Business Associate Agreements with Subcontractors</u>. If MagMutual subcontracts any portion of the Services to any agent or subcontractor as those terms as defined in the HIPAA Requirements, prior to any subcontractor accessing, creating, using, disclosing, maintaining, transmitting or receiving any PHI, MagMutual will require such subcontractor to agree, in writing, to the same business associate agreement restrictions and conditions set forth in the HIPAA Requirements and to comply in all respects with the terms of this Agreement.

    C.  <u>Use of PHI</u>. MagMutual will only create, receive, use, disclose, maintain, and/or transmit PHI in compliance with the Business Agreement, this Agreement, and the HIPAA Requirements. Thus, MagMutual will use PHI: (i) to perform the Services, and (ii) as necessary for the proper management and administration of MagMutual; and (iii) to carry out MagMutual's legal responsibilities, provided that such uses are permitted under federal and applicable state law. Additionally, MagMutual can use and disclose PHI for Data Aggregation purposes.

    D.  <u>Disclosure of PHI</u>. MagMutual can disclose PHI as may be permitted or required by this Agreement or by Law to perform the Services, or for the proper management and administration of MagMutual (including Data Aggregation), or to fulfill the legal responsibilities of MagMutual in accordance with the HIPAA Requirements. In addition to the requirements of Section 3.B., MagMutual can disclose PHI to a third party as necessary for such

third party to assist MagMutual in performance of the Services; provided, however, that prior to any such disclosure, MagMutual: (i) obtains reasonable written assurances from the third party to whom the PHI is disclosed that the third party will hold such PHI confidentially and will use or disclose such PHI only as Required by Law or for the purpose(s) for which the PHI was disclosed; and (ii) requires the third party to agree to notify MagMutual promptly, but in no event later than thirty (30) days, following any instance of which such third party is aware that PHI has been used or disclosed for a purpose that is not permitted. Further, MagMutual agrees that any disclosures of PHI made by MagMutual to any third party shall comply with the HIPAA Requirements.

E. De-identification. MagMutual can de-identify PHI to the extent necessary to provide the Services, provided such de-identification is in compliance with 45 C.F.R. §164.502(d), and the de-identified PHI meets the standard and implementation specifications for de-identification under 45 C.F.R. §164.514.

F. Safeguards by MagMutual and Subcontractors. MagMutual represents and warrants that it has adopted, implemented, and will continue to maintain, for so long as MagMutual has access to, maintains, uses, or discloses Data, as defined below, adequate and appropriate administrative, physical and technical safeguards ("Safeguards") to: (i) protect the confidentiality and security of PHI and other Individually Identifiable Health Information obtained from, or created on behalf of, the Covered Entity (for purposes of this Section 3.F., "Data"), and (ii) prevent the Use or Disclosure of Data other than as provided for by this Agreement and all applicable laws. MagMutual's Safeguards will comply with all applicable laws. MagMutual will ensure that each Subcontractor implements the Security Standards to protect the confidentiality, integrity, and availability of the Data that it uses, discloses, creates, receives, maintains and/or transmits on behalf of MagMutual and/or the Covered Entity. Further, MagMutual will expressly agree that its subcontractors will be advised of, and will warrant in writing to comply in all respects with, the terms of this Agreement.

G. Minimum Necessary. MagMutual will limit its Uses and Disclosures of PHI to the Minimum Necessary to accomplish the intended purpose of such Use, Disclosure or request.

3. Individual Rights. MagMutual will agree as follows:

A. Access, Copy or Amend PHI. In the event MagMutual were to maintain a Designated Record Set on behalf of the Covered Entity, MagMutual will take all actions necessary for the Covered Entity to comply with 45 C.F.R. §§164.524 and 164.526. MagMutual will agree that only the Covered Entity shall respond to requests received by MagMutual (or its subcontractors) from Individuals. If an Individual requests an amendment or access directly from MagMutual or subcontractors, MagMutual will direct the Individual to contact the Covered Entity directly.

B. Accounting of Disclosures. MagMutual will agree to maintain and make available to the Covered Entity in response to a request from an Individual, information required for an accounting of Disclosures of PHI with respect to the Individual in accordance with 45 C.F.R. §164.528. Notwithstanding Section 8(C) of this Agreement, MagMutual and any subcontractors will continue to maintain the information required for complying with this Section 4(B) for a period of six (6) years after termination of this Agreement. Such accounting will be limited to Disclosures that were made in the six (6) years prior to the request (not including Disclosures prior to the compliance date of the Privacy Rule). If an Individual requests an accounting of Disclosures directly from MagMutual, MagMutual will forward the request and its Disclosure record to Covered Entity in a timely manner to enable the Covered Entity to comply with 45 C.F.R. §164.528. The Covered Entity will be responsible for preparing and delivering the accounting to the Individual.

4. Internal Practices, Policies and Procedures. MagMutual will, to the extent practicable, make available information regarding MagMutual's internal practices, policies and procedures relating to the use and disclosure of PHI under this Agreement, subject to applicable legal privileges, to HHS or its authorized agents for the purpose of determining compliance with the HIPAA Requirements.

5. Withdrawal of Authorization. If the Use or Disclosure of PHI in this Agreement is based upon an Individual's specific authorization for his or her PHI, and the Individual revokes such authorization, the effective date of such authorization has expired, or such authorization is found to be defective in any manner that renders it invalid, MagMutual will, only if it has received written notice from the Covered Entity as required under this Agreement, cease the Use and Disclosure of the Individual's PHI, except to the extent MagMutual has relied on such Use or Disclosure, or if an exception under the HIPAA Requirements expressly applies.

6. Breach Notification. MagMutual will report in writing to the Covered Entity without unreasonable delay, but in no case later than sixty (60) days thereafter, any (i) Breach that MagMutual discovers, (ii) any Security Incident of which

MagMutual becomes aware, or (iii) any Use or Disclosure not permitted by this Agreement of which MagMutual becomes aware. The Parties acknowledge the ongoing existence and occurrence of attempted but ineffective Security Incidents that are trivial in nature, such as pings and other broadcast service attacks. The Covered Entity acknowledges and agrees that no additional notification to the Covered Entity by MagMutual is required of any Security Incident that does not constitute a Breach. MagMutual's report will include, to the extent possible, the information set forth in 45 C.F.R. §164.410(c). MagMutual will reasonably cooperate, as far as practicable, with the Covered Entity in notifying Individuals and the media of Breaches as the designated Privacy Officers of the Parties' deem appropriate. MagMutual will require any agent or Subcontractor to agree in writing to report a Breach, potential Breach, Security Incident, or impermissible Use or Disclosure without unreasonable delay in order to allow MagMutual to comply with this Section 7.

7.  <u>Term and Termination</u> .

   A.  <u>Term</u> . The term of this Agreement shall be from the Effective Date until the termination of the Business Agreement or until otherwise terminated below.

   B.  <u>Termination for Breach</u>. Either Party may terminate this Agreement (the "Terminating Party") upon ten (10) days' written notice to the other Party (the "Terminated Party") if the Terminated Party has breached a material term of this Agreement. The Terminating Party will provide the Terminated Party with written notice of the breach of this Agreement and afford the Terminated Party the opportunity to cure the breach within thirty (30) days of the date of such notice. If the Terminated Party fails to timely cure the breach, the Terminated Party may terminate this Agreement.

   C.  <u>Effect of Termination</u> . Upon termination of this Agreement for any reason, MagMutual will return or destroy all PHI received from, or accessed, maintained, used, disclosed and/or transmitted for or on behalf of, the Covered Entity by MagMutual (or its Subcontractors). If MagMutual were to reasonably determine that the return or destruction of PHI is not feasible, MagMutual will inform the Covered Entity in writing of the reason thereof, and will extend the protections of this Agreement to such PHI and limit further uses and disclosures of the PHI to those purposes that make the return or destruction of the PHI not feasible for so long as MagMutual retains the PHI.

8.  <u>Mitigation</u>. MagMutual will  mitigate, to the extent practicable, any adverse effects known to MagMutual from a Use or Disclosure that is not permitted by this Agreement; provided, however, that MagMutual admits no negligence or fault as part of its mitigation efforts.

9.  <u>LIMITATION ON LIABILITY</u>. NEITHER PARTY'S AGGREGATE LIABILITY TO THE OTHER AND/OR ANY AFFILIATES OR THEIR RESPECTIVE OFFICERS, DIRECTORS, EMPLOYEES, AND AGENTS FOR ANY CLAIMS ARISING UNDER THIS AGREEMENT, REGARDLESS OF THE FORM OF ACTION (INCLUDING, BUT NOT LIMITED TO, ACTIONS FOR BREACH OF CONTRACT, NEGLIGENCE, STRICT LIABILITY, RESCISSION AND BREACH OF WARRANTY), SHALL EXCEED THE TOTAL FEES PAID AND/OR PAYABLE  UNDER THE BUSINESS AGREEMENT DURING THE TWELVE (12) MONTHS IMMEDIATELY PRECEDING THE CAUSE OF ACTION.

10.  <u>Miscellaneous</u>.

   A.  <u>Notices</u>. Any notices pertaining to this Agreement shall be deemed given when personally delivered to a Party or a Party's authorized representative at the address listed below for MagMutual or as set forth on the Business Agreement for the Covered Entity or sent by Federal Express, or by certified mail, return receipt requested, postage prepaid. A notice sent by certified mail shall be deemed given on the date of receipt, attempted delivery, or refusal of receipt. All notices to MagMutual shall be addressed as follows:

   MagMutual Insurance Company
   3535 Piedmont Road
   Building 14, Suite 1000
   Atlanta, GA 30305-1518
   Attn: Office of the General Counsel

   B.  <u>Choice of Law</u>. This Agreement and the related rights and the obligations of the Parties shall be governed by and construed under the laws of the State of Georgia without regard to applicable conflict of laws principles.

   C.  <u>Assignment of Rights and Delegation of Duties</u>. This Agreement is binding upon and inures to the benefit of the Parties and their respective successors and permitted assigns. Neither Party may assign any of its rights or

delegate any of its obligations under this Agreement without the prior written consent of the other Party, which consent shall not be unreasonably withheld or delayed. Assignments made in violation of this provision are null and void.

D.  <u>No Waiver</u>. No provision of this Agreement may be waived by either Party except by a writing signed by an authorized representative of the Party making the waiver.

E.  <u>Severability</u>. The provisions of this Agreement will be severable, and if any provision of this Agreement shall be held or declared to be illegal, invalid or unenforceable, the remainder of this Agreement shall continue in full force and effect as though such provision had not been contained in this Agreement.

F.  <u>No Third Party Beneficiaries</u>. Nothing in this Agreement shall be considered or construed as conferring any right or benefit on a person not party to this Agreement nor imposing any obligations on either Party to this Agreement to persons not a party to this Agreement

G.  <u>Entire Agreement</u>. This Agreement, together with all Exhibits, Riders and amendments, if applicable, constitutes the entire Agreement between the Parties with respect to its subject matter and supersedes all previous agreements between the Parties with respect to the its subject matter. No obligation on either Party to enter into any transaction is to be implied from the execution or delivery of this Agreement.

H.  <u>Interpretation</u>. Any ambiguity in this Agreement shall be resolved in favor of a meaning that permits the Parties to comply with the HIPAA Requirements.

I.  <u>Signatures</u>. This Agreement shall accompany the Business Agreement and shall be deemed entered upon the execution of the Business Agreement by the Parties.