IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

DEVAN TRULL, D.O.,

        Plaintiff,

v.                                         CIVIL ACTION NO. 3:24-0202

WEST VIRGINIA MUTUAL INSURANCE COMPANY and
MAG MUTUAL INSURANCE COMPANY,

        Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is a Motion by Defendants West Virginia Mutual Insurance Company and MAG Mutual Insurance Company for Summary Judgment. ECF No. 57. For the reasons that follow, this motion is **DENIED**.

Defendants have also filed a Motion to Join Cabell Huntington Hospital, Inc. ECF No. 90. For the reasons described below, this motion is **DENIED**.

**I.    Background**

Plaintiff Devan Trull, D.O., brought several claims against Defendants West Virginia Mutual Insurance Company (WVMIC) and MAG Mutual Insurance Company (MagMutual). This Court dismissed some of the claims but allowed the *Shamblin* claim to proceed.

The *Shamblin* claim derives from the handling of a medical professional liability lawsuit (the underlying litigation). The underlying litigation began when a former patient, Carlie Hensley, sued Dr. Trull, who was covered by an insurance policy issued by WVMIC (WVMIC Policy). The WVMIC Policy had liability limits of $1 million per claim and $3 million annual aggregate. It

required WVMIC to provide Dr. Trull with a legal defense and pay up to the liability limit of any relevant judgment entered against Dr. Trull.

In addition to the WVMIC Policy, Dr. Trull was possibly insured by at least two other policies. Professional Security Insurance Company, which is another MagMutual company, issued a Hospital Umbrella Liability Policy (Umbrella Policy) to CHH. *Hospital Umbrella Liability Policy*, ECF No. 137. In the Umbrella Policy, Professional Security Insurance Company agrees to provide coverage in certain scenarios when applicable underlying policy limits have been met. *Id.* at 1. The Umbrella Policy references two such underlying policies: the WVMIC Policy and Cabell Huntington Hospital's self-insurance program. *Schedule of Underlying Insurance* at 1, ECF No. 137. The Cabell Huntington Hospital Self Coverage Plan for Professional Liability, Comprehensive General Liability, and Employers' Liability (CHH Self Coverage Plan) appears to be the self-insurance program referenced in the Umbrella Policy. *CHH Self Coverage Plan*, ECF No. 136

The CHH Self Coverage Plan details the scenarios where CHH must provide coverage to an insured. *Description of Coverage*, ECF No. 136. The policy anticipates and requires CHH's involvement in the claims handling process and any related litigation. *Id.* at 1–2. The CHH Self Coverage Plan also notes that it provides coverage in excess of other valid and collectible policies. *Id.* at 7. Ms. Hensley notified CHH that she planned to file a medical professional liability action against CHH and Dr. Trull. *Notice of Claim*, ECF No. 137. However, Ms. Hensley never filed a claim against CHH. Neither Dr. Trull nor Defendants informed CHH that Ms. Hensley filed a suit against Dr. Trull. CHH did not participate in the claims handling process of the underlying litigation.

The jury in the underlying litigation returned a verdict against Dr. Trull in the amount of $1,922,395.67. A settlement between Ms. Hensley and a different physician led this Court to reduce the jury's verdict by $500,000. Defendants, pursuant to the WVMIC Policy, issued a $1,000,000 check to the claimant, leaving over $400,000 of the judgment outstanding. Neither of the other insurers provided coverage for the remaining portion of the judgment.

Ms. Hensley is seeking to collect the outstanding portion of the judgment from Dr. Trull. *Aff. of L. Dante diTrapano* ¶ 8, ECF No. 76-5; *Aff. of David H. Carriger* ¶ 8, ECF No. 76-6. As part of these efforts, Ms. Hensley sought a default judgment against Dr. Trull, which the U.S. District Court for the Western District of Tennessee granted. *Order Denying in Part and Granting in Part Plaintiff's Motion for Default Judgment*, ECF No. 76-2.

Dr. Trull contends that Defendants must pay the remaining portion of the judgment. Meanwhile, Defendants maintain that they have performed all that was required of them and that CHH, pursuant to the Umbrella Policy and the CHH Self Coverage Plan, must pay the remaining portion of the judgment. Defendants have moved for summary judgment on this issue. Additionally, Defendants have moved for joinder of CHH. The Court considers both motions below.

## II.     Legal Standard

Federal Rule of Civil Procedure 56 states a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A fact is "material" if the fact "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is "genuine" if a "reasonable jury could return a verdict for the nonmoving party." *Id.*

In a summary judgment analysis, the Court will not resolve disputed facts, weigh the evidence, or make determinations of credibility. *See Russell v. Microdyne Corp.*, 65 F.3d 1229, 1239 (4th Cir. 1995); *Sosebee v. Murphy*, 797 F.2d 179, 182 (4th Cir. 1986). Instead, the Court will interpret the facts in the light most favorable to the nonmoving party. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). Even so, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

Federal Rule of Civil Procedure 19 requires joinder of a nonjoined party that is subject to service of process and whose joinder would not destroy the Court's subject-matter jurisdiction if:

(A) in that person's absence, the court cannot accord complete relief among existing parties; or
(B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
  (i) as a practical matter impair or impede the person's ability to protect the interest; or
  (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a). Generally, the determination of whether to join a defendant under Rule 19 "is a practical one" left "to the sound discretion of the trial court." *Coastal Modular Corp. v. Laminators, Inc.*, 635 F.2d 1102, 1108 (4th Cir. 1980) (citations omitted).

### III.  Discussion

Defendants have motioned both for summary judgment and to join Cabell Huntington Hospital to this proceeding. Underlying both motions is Defendants' belief that CHH is liable for the outstanding judgment against Dr. Trull. The Court first addresses the motion for summary judgment before turning to the motion for joinder.

A. <u>Defendants' Motion for Summary Judgment</u>

In *Shamblin v. Nationwide Mutual Insurance Co.*, the Supreme Court of Appeals of West Virginia held that:

> Wherever there is a failure on the part of an insurer to settle within policy limits where there exists the opportunity to settle and where such settlement within policy limits would release the insured from any and all personal liability, the insurer has prima facie failed to act in its insured's best interest and such failure to so settle prima facie constitutes bad faith toward its insured.

Syl. Pt. 2, 396 S.E.2d 766, 768 (W. Va. 1990). This doctrine "was created to protect policyholders who purchase insurance to safeguard their hard-won personal estates and then find these estates needlessly at risk because of the intransigence of an insurance carrier." *Charles v. State Farm Mut. Auto. Ins. Co.*, 452 S.E.2d 384, 389 (W. Va. 1994). However, for an insured to recover under *Shamblin*, "the insured must be actually exposed to personal liability in excess of the policy limits at the time the excess verdict is rendered." *Strahin v. Sullivan*, 647 S.E.2d 765, 773 (W. Va. 2007).

Defendants argue Dr. Trull was not exposed to any personal liability at the time the verdict was rendered, and, therefore, her *Shamblin* claim fails. Defendants argue that CHH, pursuant to the Umbrella Policy and the CHH Self Coverage Plan, is liable for the outstanding judgment. Per Defendants, since CHH is liable instead of Dr. Trull, the *Shamblin* claim must be dismissed.

Dr. Trull disagrees. She notes that Ms. Hensley, the underlying litigant, has begun collection proceedings against her. *Aff. of L. Dante diTrapano* ¶ 8; *Aff. of David H. Carriger* ¶ 8. As part of these efforts, Ms. Hensley has obtained a default judgment against Dr. Trull, which was entered by a federal district court. *Order Denying in Part and Granting in Part Plaintiff's Motion for Default Judgment*. Further, Dr. Trull provides a letter from CHH, wherein CHH denies Dr. Trull coverage for the outstanding judgment. *Denial Letter*, ECF No. 76-1.

In Reply, Defendants maintain that Dr. Trull is covered by the CHH Self Coverage Plan. Defendants do not contest the validity of the default judgment but argue Dr. Trull is not personally liable. Defendants challenge the contents of the denial letter.

The Court agrees that the ongoing collection proceedings, default judgment, and denial letter all strongly suggest Dr. Trull is currently, and was at the rendering of the judgment, personally liable for the outstanding judgment. However, Defendants are adamant that the language of the insurance documents prove Dr. Trull was not, and is not, personally liable. Therefore, the Court will analyze the provided insurance documents.

Before the Court are three insurance policies detailing potential coverage for Dr. Trull. Those documents are the Umbrella Policy, the CHH Self Coverage Plan, and the WVMIC Policy. The parties agree that the WVMIC Policy is applicable and has been paid out, so only the Umbrella Policy and the CHH Self Coverage Plan remain relevant to the current analysis.

The Umbrella Policy is a policy issued by Professional Security Insurance Company, a MagMutual Company. *Hospital Umbrella Liability Insurance Policy Declarations Page* at 1, ECF No. 137. Professional Security Insurance Company issued the Umbrella Policy to CHH. *Id.* The policy provides for both a specific loss limit and an aggregate limit of $10 million. *Id.*

The Umbrella Policy explains the circumstances under which Professional Security Insurance Company will provide professional liability coverage. Specifically, the Umbrella Policy provides:

> We will protect you from claims first made and reported and incidents first reported to us by you during the policy period and arising from professional activities which take place during the protected period, provided you comply with your duties and notification provisions specified in this policy. We will protect you up to your selected limits of liability in excess of the applicable underlying limit for the coverage identified in Item A of the Schedule of Underlying Insurance.

*Hospital Umbrella Liability Policy* at 1 (emphasis removed). The Umbrella Policy defines the term "we" as "Professional Security Insurance Company, its predecessors or affiliated companies." *Id.* at 10. The policy includes CHH and its employees, acting within the scope of their duties, in the definition of "you." *Id.* Item A of the Schedule of Underlying Insurance lists "Self Insured Retention (SIR)," which appears to be the CHH Self Coverage Plan, and "the West Virginia Mutual Insurance Company policy," which appears to be the WVMIC Policy.

Perplexingly, Defendants base their motion on the Umbrella Policy. Defendants argue that, based off the text of the Umbrella Policy, CHH, as a self-insurer, must cover the outstanding judgment. However, the Umbrella Policy does not describe when CHH must provide coverage. Instead, the Umbrella Policy describes when Professional Security Insurance Company, a MagMutual Company, must provide coverage. The text of the Umbrella Policy does state that the underlying policy limits, which includes the CHH Self Coverage Plan, must provide applicable coverage before Professional Security Insurance Company will provide coverage. However, the Umbrella Policy does not detail when CHH, pursuant to the CHH Self Coverage Plan, must provide coverage.

Instead, the Court must look to the CHH Self Coverage Plan to determine when CHH, as self-insurer, must provide coverage. The purpose of the CHH Self Coverage Plan is to self-insure CHH against the risks of professional, general, and employers' liability. *CHH Self Coverage Plan* at 1. For purposes of professional liability for physicians, the CHH Self Coverage Plan directs to and incorporates another document titled "Description of Coverage."[1]

---

[1] The relevant text of the CHH Self Coverage Plan, which explains that the "Description of Coverage" is the relevant document for this analysis is as follows:

> The Plan will pay on behalf of any Covered Person, subject to the provisions of Sections 3.4 and 3.5(A), all sums which the Covered Person shall become legally

The Description of Coverage details under what circumstances CHH is obligated to provide medical professional liability insurance coverage. *Description of Coverage* at 1. The General Conditions section includes the following text:

> A. The Program provides medical professional liability insurance for employed physicians of Cabell Huntington Hospital, Inc., for the coverage period. The Program applies only to claim(s) that arise out of a medical incident, which occurred during the coverage period and are reported to the Program subject to the requirements specified in this Description of Coverage. . . .
>
> F. If there is a claim, suit, notice of claim or certificate of merit, the insured must do the following:
>
>> 1. notify the Program via the contact person in writing as soon as possible;
>> 2. specify the names and addresses of the injured person(s) and provide the Program via the contact person with information in regard to the time, place and nature of the event;
>> 3. immediately forward to the Program via the contact person all documents which the insured receives in connection with the claim, or suit;
>> 4. fully cooperate with the Program or its designee in the investigation of the claim or suit, the making of settlements, the conduct of suit(s) or

---

obligated to pay as damages for bodily injury to any patient or personal injury to any person caused by a medical incident during the period.

*Id.* at 5. Section 3.5(A) of the CHH Self Coverage Plan, referenced above, states:

> Effective October 1, 2006, professional liability insurance coverage for all employed physicians shall be as defined by the Cabell Huntington Hospital Employed Physicians Self-Insurance Program Description of Coverage ("Description of Coverage"), a copy of which Description of Coverage is attached to this document and incorporated by reference. The Limit(s) of Insurance described in that Description of Coverage shall be in lieu of and not in addition to any Limit(s) of Insurance provided pursuant to this Cabell Huntington Hospital Self Coverage Plan for Professional Liability, Comprehensive General Liability, and Employers' Liability.

*Id.* at 8. Therefore, the text of the Description of Coverage is the relevant text to determine whether CHH is liable for Dr. Trull's outstanding judgment.

    other proceedings, enforcing any right of contribution or indemnity against another who may be liable to the insured because of injury or damage. The insured shall attend hearings and trials, assist in securing and giving evidence, and obtaining the attendance of witnesses. Failure by the insured to fully cooperate with the Program may result in denial of coverage;

  5. refuse, except at the insured's own cost, to voluntarily make any payment, assume any obligation or incur any expense.

*Id.* at 1–2 (emphasis removed).

  The above language is dispositive of the issue before the Court. CHH is obligated to provide coverage "*only* to claim(s) that . . . are reported to the Program subject to the requirements specified in this Description of Coverage." *Id.* at 1 (emphasis added). Defendants contend that Ms. Hensley provided CHH notice. However, Dr. Trull, not Ms. Hensley, was the insured under this policy and the one required to provide notice to CHH. Further, even if the notice Defendants point to was sufficient, there is no evidence before the Court that the other requirements were sufficiently met. Therefore, Defendants' argument that CHH is liable for the outstanding judgment against Dr. Trull fails.

  The evidence before the Court overwhelmingly points to Dr. Trull being personally liable for the outstanding judgment. Defendants have failed to prove that CHH or another entity is liable for the excess payment. Further, Ms. Hensley is seeking to collect against Dr. Trull, and a federal district court entered a default judgment against Dr. Trull. Therefore, Dr. Trull appears to be personally liable for the excess judgment, and her *Shamblin* claim may proceed. Accordingly, the Court **DENIES** Defendants' Motion for Summary Judgment. ECF No. 57.

B. <u>Defendants' Motion to Join Cabell Huntington Hospital</u>

Federal Rule of Civil Procedure 19 "sets up a two-step inquiry." *McKiver v. Murphy-Brown, LLC*, 980 F.3d 937, 950 (4th Cir. 2020) (citation and internal quotation marks omitted). Courts "ask first whether the nonjoined party is necessary under Rule 19(a) and then whether the party is indispensable under Rule 19(b)." *Id.* (citation and internal quotation marks omitted). Rule 19(a) instructs when a nonjoined party is necessary, and Rule 19(b) instructs whether to proceed if an otherwise necessary party cannot be joined. Here, joinder is feasible if CHH is a necessary party, so the Court need only consider whether CHH is necessary.

To determine whether a party is "necessary" under Rule 19(a), a court must ask "whether a party is necessary to a proceeding because of its relationship to the matter under consideration[.]" *Teamsters Loc. Union No. 171 v. Keal Driveaway Co.*, 173 F.3d 915, 917 (4th Cir. 1999). A party is necessary if a court cannot grant complete relief in the absence of the party. Fed. R. Civ. P. 19(a)(1)(A). Alternatively, a party is necessary if that party claims an interest in the proceeding and that party's absence may "impair or impede the [party's] ability to protect" itself or leave an existing party with substantial risk of incurring incongruent obligations. Fed. R. Civ. P. 19(a)(1)(B). A court should order a necessary party into the action. *Owens-Illinois, Inc. v. Meade*, 186 F.3d 435, 440 (4th Cir. 1999).

Rule 19 does not prescribe a mere "procedural formula." *McKiver*, 980 F.3d at 951 (citations and internal quotation marks omitted). Instead, courts must make these decisions "pragmatically, in the context of the substance of each case, and courts must take into account the possible prejudice to all parties, including those not before it." *Id.*

Defendants contend that CHH is a necessary party. They argue that the Court cannot provide complete relief in the absence of CHH. They further contend that CHH's absence would

limit CHH's ability to protect itself and would likely subject CHH and Defendants to inconsistent obligations. Dr. Trull contests each of these points. The Court takes each argument in turn.

1. *Rule 19(a)(1)(A)*

As discussed above, a party is necessary and should be joined if the Court cannot provide complete relief without that party. Fed. R. Civ. P. 19(a)(1)(A). In the Rule 19 context, the term complete relief "refers to relief as between the persons already parties, not as between a party and the absent person whose joinder is sought[.]" *United States v. Arlington Cnty., Va.*, 669 F.2d 925, 929 (4th Cir. 1982).

Defendants argue that complete relief cannot be fashioned in the absence of CHH. Defendants argue that CHH is liable for the outstanding judgment. Defendants note that the Court cannot fashion relief requiring CHH to pay if CHH is not a party. In Response, Dr. Trull argues that Defendants' contention that CHH must pay the outstanding judgment is unrelated to her claim against Defendants under *Shamblin*.

Defendants anchor their argument to *Prestenback v. Employers' Ins. Companies*, 47 F.R.D. 163 (E.D. La. 1969). In *Prestenback*, the plaintiff sued his employer's insurers and other corporate defendants but did not join the alleged tortfeasors or the potentially vicariously liable employer. *Prestenback*, 47 F.R.D. at 164–66. The *Prestenback* Court anticipated potential jury findings where the nonjoined parties could be liable for a portion of the judgment. *Id.* at 166–67. The *Prestenback* Court held the underlying tortfeasors to be necessary and indispensable and dismissed the case because joining the tortfeasors would have destroyed subject-matter jurisdiction. *Id.* at 166–68. The same concerns do not arise in this case, however, because Dr. Trull has sued the alleged tortfeasors: the Defendants.

Defendants' contention that this Court cannot fashion complete relief before the parties before it is also incorrect. Dr. Trull seeks to hold Defendants accountable for their alleged bad faith under *Shamblin*. CHH played no role in Defendants' alleged bad faith and is wholly unnecessary to such relief. The Court can provide complete relief in the form of holding Defendants liable for their actions.

Finally, Defendants' efforts to recast this case as one involving a breach of contract dispute between Dr. Trull and CHH are unavailing. Defendants are correct in stating this Court cannot require CHH to pay the outstanding judgment if CHH is not a party. However, this case is not a breach of contract dispute between Dr. Trull and CHH. Therefore, the Court need not attempt to fashion such relief.

The parties necessary for the Court to fashion complete relief under *Shamblin* are already joined in this case. Therefore, Defendants' motion fails under Rule 19(a)(1)(A).

2.  *Rule 19(a)(1)(B)*

Rule 19(a)(1)(B) states a nonjoined party "must be joined as a party if . . . . that [nonjoined party] claims an interest relating to the subject of the action" and meets one of two other requirements. The text of the rule suggests that the nonjoined party must be the one to assert the interest. However, the Supreme Court has held that a "court with proper jurisdiction may also consider *sua sponte* the absence of a required person and dismiss for failure to join." *Republic of Philippines v. Pimentel*, 553 U.S. 851, 861 (2008). Meanwhile, the Fourth Circuit has held insofar as "Rule 19(a) requires *any* affirmative action from the nonjoined party at issue, the declaration submitted [by an executive officer of the nonjoined party] was sufficient for [the nonjoined party] to claim an interest." *Gunvor SA v. Kayablian*, 948 F.3d 214, 220 (4th Cir. 2020).

District courts within the Fourth Circuit generally align with the text of the rule and require some sort of claim from the nonjoined party. *See Kepler Processing Co., LLC v. New Mkt. Land Co.*, No. CIV A 5:08CV00040, 2008 WL 4509377, at *6 (S.D.W. Va. Oct. 2, 2008) ("Moreover, [the nonjoined party] has not claimed an interest in the instant litigation. Thus, it fails to satisfy Rule 19(a)'s initial requirement that the absent party claim a legally protected interest relating to the subject matter of the action.") (citations and internal quotation marks omitted); *Marina One, Inc. v. Jones*, 29 F. Supp. 3d 669, 678 (E.D. Va. 2014) ("The Court has found little precedent addressing what it means to "claim" a relevant interest, but the precedent that exists interprets that requirement narrowly, usually requiring some sort of affirmative indication by the absent party in the court hearing the Rule 19 matter.") (citations omitted).

CHH does not claim an interest in this case. In fact, elsewhere in this proceeding, CHH explicitly states that it does not wish to be joined to this case. *Cabell Huntington Hospital, Inc.'s Resp. to Defendants' Motion to Compel*, ECF No. 126 at 5. In contrast to cases where a nonjoined party passively failed to claim an interest, CHH has actively contemplated the issue and signaled that it wishes not to be joined. The Court will not elevate Defendants' characterization of CHH's interests over CHH's stated interests. Defendants' motion is unsuccessful under Rule 19(a)(1)(B).

Defendants have failed to show that CHH is a necessary party to this proceeding. Therefore, the Court **DENIES** Defendants' Motion to Join Cabell Huntington Hospital, Inc. ECF No. 90.

### IV.   Conclusion

Based on the above analysis, the Court **DENIES** Defendants' Motion for Summary Judgment. ECF No. 57. The Court also **DENIES** Defendants' Motion to Join Cabell Huntington Hospital, Inc. ECF No. 90.

The Court **DIRECTS** the Clerk to send a copy of this Memorandum Opinion and Order to counsel of record and any unrepresented parties.

        ENTER:     June 16, 2025

_____
ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE