**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT HUNTINGTON**

**DEVAN TRULL, D.O.,**

      **Plaintiff,**

**v.**                                              **CASE NO. 3:24-cv-00202**

**WEST VIRGINIA MUTUAL INSURANCE COMPANY, and
MAG MUTUAL INSURANCE COMPANY,**

      **Defendants.**

**PLAINTIFF'S RESPONSE TO DEFENDANTS CONSOLIDATED
STATUS REPORT REGARDING PENDING MOTIONS
INVOLVING CABELL HUNTINGTON HOSPITAL**

COMES NOW, Plaintiff, Devan Trull, D.O., by and through counsel, and, in accordance with the Court's Order of June 17, 2025 [ECF No. 141], hereby states as follows:

1.     Defendant Mag Mutual had an opportunity to settle the underlying medical negligence case for $150,000 in exchange for a complete release of liability for Devan Trull, D.O.

2.     Defendant Mag Mutual refused to engage in any settlement discussions in the underlying case even though the defense attorney hired by Defendants to defend Dr. Trull indicated there was a 40% chance of a plaintiff verdict well above Dr. Trull's $1 million liability limits.

3.     In disregard of Dr. Trull's repeated requests that Mag Mutual settle the case, Mag Mutual took the case to trial resulting in an excess verdict and judgment above Dr. Trull's $1 million limits.

4.      After the excess judgment was entered against Dr. Trull, Defendants tendered the $1 million liability limits without securing a release for Dr. Trull, leaving Dr. Trull personally exposed for more than $400,000.

5.      After the instant *Shamblin*/bad faith lawsuit was filed, Defendants sought to force Dr. Trull's employer, Cabell Huntington Hospital ("CHH"), to pay the excess judgment.  It is undisputed that Defendants never informed CHH that a lawsuit was filed against Dr. Trull.

6.      By Memorandum Opinion and Order dated June 16, 2025, ([ECF No. 140]), United States District Judge Robert C. Chambers ruled that Defendants failed to show that CHH was a necessary party in the instant lawsuit and denied Defendants' Motion for Summary Judgment, in which Defendants argued that CHH was liable for the outstanding excess judgment and, as a result, Dr. Trull was not "actually exposed" to personal liability in excess of the WVMIC policy limits at the time the excess verdict was rendered.  As a result of this Court's rulings, the issues surrounding excess coverage from CHH, and/or its responsibility to pay the outstanding judgment, have been resolved.

7.      In Defendants' Consolidated Response to Plaintiff's and Cabell Huntington Hospital's Status Reports, ([ECF No. 152]), Defendants erroneously argue that the "discovery sought from CHH remains relevant because the Court has left open the possibility of amending its June 16, 2025 Order if compelling evidence results from the discovery Defendants now seek." [*Id.* at 1].  The Court's June 25, 2025 Order says no such thing; instead, the Court's Order makes it clear that, with or without the insurance documentation provided by Defendants in support of their Motion for Summary Judgment, the Court would have denied Defendants' Motion for Summary Judgment.  [ECF No. 140 at 9].

8.      Indeed, Defendants completely gloss over the fact that Judge Chambers has already ruled that Dr. Trull was, and continues to be, held personally liable for the excess judgment amount of over $400,000.  [ECF No. 140 at 9 ("The evidence before the Court overwhelmingly points to Dr. Trull being held personally liable for the outstanding judgment.  Defendants have failed to prove that CHH or another entity is liable for the excess payment.  Further, Ms. Hensley is seeking to collect against Dr. Trull, and a federal district court entered a default judgment against Dr. Trull.  Therefore, Dr. Trull appears to be personally liable for the excess judgment.")].

9.      There is no language in the Court's June 16, 2025 Order, nor in the Court's subsequent June 25, 2025 Order, that indicates that the Court will reconsider its finding that Dr. Trull's was "actually exposed to personal liability in excess of the policy limits at the time the excess verdict [was] rendered."  Syl. Pt. 9, *Strahin v. Sullivan*, 647 S.E.2d 765, 768 (W. Va. 2007).  In *Shamblin* and *Strahin*, the West Virginia Supreme Court of Appeals has identified that a *Shamblin* claim requires, in pertinent part, a showing that the plaintiff was held personally liable at the time the excess verdict was rendered.  *Id.*; *see also Shamblin v. Nationwide Mut. Ins. Co*., 396 S.E.2d 766 (W. Va. 1990).   The "overwhelming evidence" in this case, which includes the default judgment entered against Dr. Trull, proves that Dr. Trull was personally liable at the time the verdict was rendered.  [ECF No. 140 at 9].  Any further discovery into CHH and Defendants' insurance coverage for the Underlying Medical Malpractice Litigation against Dr. Trull is simply not applicable to Dr. Trull's litigation against these Defendants.

10.     Indeed, the issue of whether CHH or Defendants were required to pay the excess judgment amount at the time the verdict was rendered is not related to Dr. Trull's pending lawsuit against these Defendants.  As this Court held in its June 16, 2025 Order:

> Defendants' contention that this Court cannot fashion complete relief before the parties before it is also incorrect. Dr. Trull seeks to hold Defendants accountable

for their alleged bad faith under Shamblin. ***CHH played no role in Defendants' alleged bad faith and is wholly unnecessary to such relief***. The Court can provide complete relief in the form of holding Defendants liable for their actions.

Finally, Defendants' efforts to recast this case as one involving a breach of contract dispute between Dr. Trull and CHH are unavailing. Defendants are correct in stating this Court cannot require CHH to pay the outstanding judgment if CHH is not a party. However, ***this case is not a breach of contract dispute between Dr. Trull and CHH***. Therefore, the Court need not attempt to fashion such relief.

[ECF No. 140 at 12 (emphasis added)].

11.    In fact, in the Court's June 25, 2025 Order, the Court makes clear that the insurance documentation provided by Defendants in support of their Motion for Summary Judgment ***was not dispositive***.  [ECF No. 149 at 1-2].  Indeed, the Court clearly stated that, with or without the insurance documentation that Defendants argued showed that CHH was responsible for paying the excess judgment amount resulting from the Underlying Litigation, the Court ***would have denied*** the Defendant's Motion for Summary Judgment on Plaintiff's *Shamblin* claim.

The second rationale is that one of the documents that Defendants provided to the Court, and on which the Court relied in making its decision, may be inapplicable to this case. If this claim is accurate, then Defendants provided not one, but two insurance documents that were wholly insufficient for the Court to make the summary judgment determination Defendants requested. ***Even without this document, the Court would have denied the motion for summary judgment, as there was no evidence before the Court to grant the motion***.

[ECF No. 149 at 1-2 (emphasis added)].

12.    Moreover, the Court "forewarn[ed]" Defendants that "they are not entitled to make successive summary judgment motions," and stated that the Defendants would need to "explain ow their initial motion [for summary judgment] was a product of diligent litigation efforts" before any further insurance documentation between CHH and these Defendants would be considered by this Court.

13.     In light of the Court's June 16 and June 25 Orders, the discovery sought by Defendants is not relevant to any party's claim or defense to the instant litigation, despite Defendants' arguments to the contrary.  Fed. R. Civ. P. 26(b)(1).  To the extent that these Defendants believe that CHH is responsible for paying the excess judgment amount, which was rendered as a direct and proximate result of Defendants' bad faith insurance practices, Defendants' remedy is against CHH, not Plaintiff.

WHEREFORE, Plaintiff requests that the *Motion to Quash Subpoena for Rule 30(b) Deposition* filed by subpoenaed non-party, Cabell Huntington Hospital (ECF No. 113) be granted and the *Motion to Compel Cabell Huntington Hospital Inc.'s Production of Documents Pursuant to Subpoena* (ECF No. 117) be denied.

Respectfully submitted,

**DEVAN TRULL, D.O.,**

By counsel,

*/s/ Ben Salango*
Ben Salango (WVSB #7790)
Sarah A. Hunter (WVSB #13031)
**SALANGO LAW, P.L.L.C.**
206 Capitol Street
Charleston, West Virginia 25331
Phone: (304) 342-0512
Fax: (304) 342-0513
ben@salangolaw.com
sarah@salangolaw.com

**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT HUNTINGTON**

**DEVAN TRULL, D.O.,**

      **Plaintiff,**

**v.**                                      **CASE NO. 3:24-cv-00202**

**WEST VIRGINIA MUTUAL INSURANCE COMPANY, and
MAG MUTUAL INSURANCE COMPANY,**

      **Defendants.**

<u>**CERTIFICATE OF SERVICE**</u>

      I, Ben Salango, counsel for Plaintiff, certifies that the foregoing "**PLAINTIFF'S STATUS REPORT REGARDING PENDING MOTIONS INVOLVING CABELL HUNTINGTON HOSPITAL**" has been served upon counsel of record via electronic filing this 2nd day of July 2025, addressed to the following:

      Robert L. Massie (WV Bar # 5743)
      Shaina D. Massie (WV Bar # 13018)
      Alexander C. Frampton (WV Bar # 13398)
      NELSON MULLINS RILEY &
      SCARBOROUGH LLP
      949 Third Ave., Suite 200
      Huntington, WV 25701
      Email: bob.massie@nelsonmullins.com
      Email: shaina.massie@nelsonmullins.com
      Email: alex.frampton@nelsonmullins.com
            *Counsel for Defendants*

                                    */s/ Ben Salango*
                                    Ben Salango (WVSB #7790)

**SALANGO LAW, P.L.L.C.**
206 Capitol St., Second Floor
Charleston, West Virginia 25301