IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

**HUNTINGTON DIVISION**

DEVAN TRULL, D.O.,

                Plaintiff,

v.                                CIVIL ACTION NO. 3:24-0202

WEST VIRGINIA MUTUAL INSURANCE COMPANY and
MAG MUTUAL INSURANCE COMPANY,

                Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Plaintiff Devan Trull's Objection to Magistrate Judge Tinsley's

May 16, 2025 Order Denying Plaintiff's Motion to Compel Production of Unredacted Email. ECF

No. 129. For the reasons described below, the Court **SUSTAINS** the objection.

## I.    Background[1]

Plaintiff Devan Trull, D.O., asks the Court to compel production of an unredacted email in

the possession of Defendants West Virginia Mutual Insurance Company (WVMIC) and MAG

Mutual Insurance Company (MagMutual). This discovery dispute arises out of Dr. Trull's pending

*Shamblin* claim against Defendants. The *Shamblin* claim derives from the handling of a medical

professional liability lawsuit brought against Dr. Trull (the underlying litigation).

The underlying litigation began on April 13, 2020, when a former patient, Carlie Hensley,

sued Dr. Trull, who was covered by an insurance policy issued by WVMIC. The jury in the

underlying litigation returned a verdict against Dr. Trull in the amount of $1,922,395.67. A

---

[1]    This Background borrows from this Court's opinion in *Trull v. W. Virginia Mut. Ins. Co.*, No. CV 3:24-0202, 2025 WL 1690148 (S.D. W. Va. June 16, 2025).

settlement between Ms. Hensley and a different physician led this Court to reduce the jury's verdict by $500,000. On May 17, 2024, the Court entered the Amended Judgment accounting for this reduction and concluding the underlying litigation.

Defendants, pursuant to the WVMIC Policy, issued a $1,000,000 check to the claimant, leaving over $400,000 of the judgment outstanding. On April 18, 2024, Dr. Trull brought the present suit. Dr. Trull contends that Defendants must pay the remaining portion of the judgment. Defendants maintain that they have performed all that was required of them.

As part of the discovery process in this case, Dr. Trull motioned to remove the "Confidential" designation and compel the production of an unredacted email. The email, docketed in its redacted form, is between Mark R. Simonton, who represented Dr. Trull in the underlying litigation, and Nora Lantz, a MagMutual claims representative. *Exhibit 1*, ECF No. 122. The subject line of the email reads: "RE: Verdict - Hensley v. Trull (91757). *Id.* The attachments line of the email suggests Mr. Simonton attached a copy of the Supreme Court of Appeals of West Virginia's opinion in *Shamblin* to the email. *Id.*

Mr. Simonton sent the email April 3, 2024, over a month before the entry of the Amended Judgment and over two weeks before Dr. Trull filed her *Shamblin* claim against Defendants. He sent the email while a motion he filed on Dr. Trull's behalf was still pending before the Court. *See Pl.'s Mtn. to Amend the Court's J. Order and Reduce Verdict*, *Hensley v. Trull*, No. 3:20-cv-257 (S.D. W. Va. Mar. 25, 2024), ECF No. 151. He continued representing her on at least one motion after he sent this email. *Pl.'s Resp. to Mtn. for Prejudgment Interest*, *Hensley v. Trull*, No. 3:20-cv-257 (S.D. W. Va. Apr. 16, 2024), ECF No. 154.

After Defendants provided an unredacted version of the email to the Court for *in camera* review and the parties fully briefed the issue, Magistrate Judge Tinsley entered an Order denying

Dr. Trull's motion. *Order Den. Pl.'s Mot. to Compel*, ECF No. 124. On May 30, 2025, Dr. Trull timely objected to Magistrate Judge Tinsley's Order. *Pl.'s Obj. to Order Den. Pl.'s Mot. to Compel*, ECF No. 129, to which Defendants filed a response, *Defs.' Resp. in Opp'n.*, ECF No. ECF No. 134. The Court has reviewed the unredacted email and the briefs on this issue and now considers the objection below.

## II.    Legal Standard

Federal Rule of Civil Procedure 72(a) allows a party to object to a magistrate judge's ruling on non-dispositive matters, including discovery. Rule 72(a) then permits a district court judge to "consider timely objections and modify or set aside any part of the [magistrate judge's] order that is clearly erroneous or is contrary to law."

The Fourth Circuit has instructed that, under the "clearly erroneous" standard, "findings of fact will be affirmed unless [the court's] review of the entire record leaves [the court] with the definite and firm conviction that a mistake has been committed." *Harman v. Levin*, 772 F.2d 1150, 1153 (4th Cir. 1985); *see also Spurlock v. Wexford Health Sources, Inc.*, No. CV 3:23-0476, 2025 WL 451688, at *1 (S.D. W. Va. Feb. 10, 2025).

However, "[w]hen . . . review of a non-dispositive motion by a district judge turns on a pure question of law, that review is plenary under the 'contrary to law' branch of the Rule 72(a) standard." *PowerShare, Inc. v. Syntel, Inc.*, 597 F.3d 10, 15 (1st Cir. 2010) (citing cases and other authority). "This means that, for questions of law, there is no practical difference between review under Rule 72(a)'s 'contrary to law' standard and [a] de novo standard."[2] *Id.*

---

[2]    This standard of review is consistent with relevant case law and the Court's past practice. *Spurlock*, 2025 WL 451688, at *1; *Baxley v. Jividen*, No. CV 3:18-1526, 2022 WL 193728, at *2 (S.D. W. Va. Jan. 20, 2022).
    Defendants, however, disagree with this standard of review. Defendants contend that magistrate judge decisions related to discovery disputes should be accorded greater deference.

### III.    Analysis

Under West Virginia law, which applies in this diversity jurisdiction case, the following elements must be present to assert the traditional attorney-client privilege: "(1) both parties must contemplate that the attorney-client relationship does or will exist; (2) the advice must be sought by the client from the attorney in his capacity as a legal adviser; (3) the communication between the attorney and client must be intended to be confidential." Syl. Pt. 2, *State v. Burton*, 254 S.E.2d 129 (W. Va. 1979). Further, "[t]he burden of establishing the attorney-client privilege or the work product exception, in all their elements, always rests upon the person asserting it." Syl. pt. 4, *State ex rel. USF & G v. Canady*, 460 S.E.2d 677 (W. Va. 1995).

The traditional attorney-client privilege analysis is complicated when an insurer provides an insured with a legal defense, as was the case here. The Supreme Court of Appeals of West Virginia (SCAWV) has contemplated the attorney-client privilege in the context of bad faith settlement claims in three core cases: *State ex rel. Allstate Ins. Co. v. Gaughan*, 508 S.E.2d 75 (W. Va. 1998); *State ex rel. Brison v. Kaufman*, 584 S.E.2d 480 (W. Va. 2003); *State ex rel. Allstate Ins. Co. v. Madden*, 601 S.E.2d 25 (W. Va. 2004).

Several variations of bad faith settlement claims exist. In *Gaughan*, the SCAWV differentiated between first-party and third-party bad faith actions, explaining:

---

*Defs.' Resp. in Opp'n.* at 4, ECF No. 134. Defendants cite to *Blankenship v. Fox News Network, LLC*, No. 2:19-CV-00236, 2021 WL 3706683, at *4 (S.D. W. Va. Aug. 20, 2021) for this proposition. The Court has great respect for and has accorded great deference to Magistrate Judge Tinsley's decision. However, for the reasons described below, the Court finds the decision contrary to law, the standard explicitly stated in Federal Rule of Civil Procedure 72(a).

Defendants further contend that an abuse of discretion standard is appropriate. *Defs.' Resp. in Opp'n.* at 4. For this proposition, Defendants cite *Patrick v. PHH Mortg. Corp.*, 298 F.R.D. 333, 336 (N.D.W. Va. 2014). *Patrick* and the cases the *Patrick* Court relied on appear to be more focused on finding of facts, rather than questions of law. Even if *Patrick* included questions of law, the Court would disagree based on the above cited case law, the text of Federal Rule of Civil Procedure 72(a), and the fact that *Patrick* is not binding on this Court.

> [A] first-party bad faith action is one wherein the insured sues his/her own insurer for failing to use good faith in settling a claim brought against the insured or a claim filed by the insured. A third-party bad faith action is one that is brought against an insurer by a plaintiff who prevailed in a separate action against an insured tortfeasor. In the bad faith action against the insurance company the third-party alleges the insurer insurance company engaged in bad faith settlement in the first action against the insured tortfeasor.

*Gaughan*, 508 S.E.2d at 86–87. Further, there is an important distinction between certain first-party actions: whether the action is a "loss claim" type of bad faith case or an "excess judgment" bad faith case. *Madden*, 601 S.E.2d at 34 n.6. First-party bad faith loss claim cases arise when an insurer fails to use good faith in resolving a claim filed by the insured. *Brison*, 584 S.E.2d at 634 (Davis, J., concurring). First-party bad faith excess judgment cases "arise as a result of the insurer's failure to use good faith in settling a lawsuit by a third-party the insured harmed[.]" *Id.*

The present case is a first-party bad faith excess judgment action. The SCAWV has yet to directly address the attorney-client privilege in the context of a first-party bad faith excess judgment action. However, the following cases instruct this Court on how the SCAWV would apply the attorney-client privilege in such a context.

*Gaughan* involved a third-party bad faith claim. *Gaughan*, 508 S.E.2d at 87. In *Gaughan*, a third party sued an insured. *Id.* at 80. The insurer, on behalf of the insured, offered a settlement well below the policy limit, while the third party was willing to settle at the policy limit. *Id.* The jury returned a verdict for the third party well over the policy limit. *Id.* The third party then brought a bad faith claim against the insurer. *Id.* at 80–81. Importantly, the third party secured a release from the insured to access the insured's file. *Id.* at 85–86. The insurer then attempted to invoke the attorney-client privilege for some of the documents. *Id.* at 82.

Presented with these facts, the SCAWV held that the attorney-client privilege did not apply but that the insurer could invoke a "quasi attorney-client privilege." *Id.* at 89. Critical to the

-5-

SCAWV's reasoning was its conclusion that "the insurer actually hires the attorney to represent the insured." *Id.*; *see also Barefield v. DPIC Companies, Inc.*, 600 S.E.2d 256, 268 (W. Va. 2004) ("[In *Gaughan*,] we acknowledged that "[i]n reality, the insurer actually hires the attorney to represent the insured"). Without much additional reasoning, the SCAWV then held "[e]ven so, we believe that an insurer should be permitted a 'quasi attorney-client privilege' with respect to the claim file of an insured in a third-party bad faith action." *Gaughan*, 508 S.E.2d at 89.

An analysis of a subsequent third-party bad faith SCAWV decision, *State ex rel. Medical Assurance of West Virginia, Inc. v. Recht*, 583 S.E.2d 80 (W. Va. 2003), provides insight into the SCAWV's rationale in *Gaughan*. In *Recht*, the SCAWV was faced with facts similar to *Gaughan*, except the third party did not secure a release from the insured to access the insured's file. *Id.* at 91 n.9. A footnote distinguishing *Recht* from *Gaughan* provides insight into how the SCAWV came to its conclusion in *Gaughan*:

> In *Gaughan,* the insured executed a release which allowed the plaintiff to have access to the insured's claim file. Because the claim file was created for the insured, the insured could waive all privileges attached to the claim file—which was done by the release that was executed. Under this unique set of facts, it became necessary to provide the insurer with some protection against disclosure of privileged information in the claim file, because the insured had waived the attorney-client privilege by authorizing a third party to have access to the claim file. In providing the insurer some protection, we created a quasi privilege which could be penetrated upon a showing of compelling need. In the instant case, the insured has not authorized release of his claim file to Respondent. Consequently, there has been no waiver of the attorney-client privilege by the insured. Since there has been no waiver in the case, the attorney-client privilege is fully in effect.

*Id.* This footnote demonstrates that the attorney-client privilege belongs to the insured, not the insurer, though an insurer may invoke a quasi attorney-client privilege when the insured waives the attorney-client privilege.

*Gaughan* and *Recht*, though both third-party bad faith cases, elucidate to whom the attorney-client privilege belongs. The implication of these two cases is that the attorney-client privilege belongs only to the insured when an insurer provided them representation in the underlying litigation. The insured, and only the insured, may waive the attorney-client privilege, in which case the insurer may invoke a quasi attorney-client privilege if a third party is involved.

The *Gaughan* Court speculated that, in a first-party bad faith case, attorney-client privilege rules may not attach "because the insurer created the file primarily on behalf of the insured." *Gaughan*, 508 S.E.2d at 87 n.17. The *Gaughan* Court stopped short of adopting this position. *Id.* However, the *Gaughan* Court does appear to imply the attorney-client privilege rules likely would not apply in first-party bad faith excess judgment cases, as the interests between the insured and the insurer are presumptively mutual. *See id.* The *Gaughan* Court then seemed to intimate that in a first-party bad faith loss claim, where the interests of the insurer and insured are presumptively in conflict, attorney-client privilege rules would attach. *See id.*

The SCAWV addressed the latter issue—whether an insurer can invoke the attorney-client privilege in a first-party bad faith loss claim action—in *Brison* and *Madden*. In both cases the SCAWV held that the insurer could invoke the attorney-client privilege in first-party bad faith loss claim cases. Syl. Pt. 7, *Brison*, 584 S.E.2d at 482; *Madden*, 601 S.E.2d at 34.

In *Brison*, the estate of the insured decedent brought a wrongful death action, which eventually led to a bad faith loss claim action against an insurer. *Brison*, 584 S.E.2d at 483–84. Initially, the insured's estate asserted a claim against an insurer for underinsured motorist coverage. *Id.* at 484. Therefore, from the outset, the interests of the insured's estate and the insurer were in conflict. The insurer originally refused to payout before later acceding. *Id.* The insured's

estate then filed a first-person bad faith loss claim and sought in discovery documents produced by the attorneys representing the insurer in the underlying dispute. *Id.*

The *Brison* Court held a traditional analysis of the attorney-client privilege should apply. *Id.* at 487. Importantly, the *Brison* Court noted that "[d]uring the wrongful death action, [the insurer], rather than [the insured or his estate], was the client of" the attorneys invoking the attorney-client privilege. *Id.* The *Brison* Court also explained that since this case did not involve the waiver of the attorney-client privilege to a third party, quasi attorney-client privilege was inappropriate. *Id.* at 487–88. The *Brison* Court then concluded the analysis by holding that since the interests of the insured and the insurer were in conflict, "the bringing of a related first-party bad faith action by the insured [did] not automatically result in a waiver of the insurance company's attorney-client privilege concerning the . . . claim." *Id.* at 489.

Justice Davis wrote a concurrence in *Brison* to explain the limitations of the majority's holding. *Id.* at 492 (Davis, J., concurring). In the concurrence, Justice Davis explains the distinction between first-party bad faith loss claim cases and first-party bad faith excess judgment cases. *Id.* at 490–92. She argues the majority's decision should not apply to first-party bad faith excess judgment cases. *Id.* at 492.

In *Madden*, the SCAWV again faced the question of whether the attorney-client privilege applies in first-party bad faith loss claims. The *Madden* Court relied on *Brison* in holding that "to the extent the trial judge found that the bringing of a first-party bad faith action automatically results in a waiver of the attorney-client privilege, that ruling was error." *Madden*, 601 S.E.2d at 34. The *Madden* Court explicitly refrained from "address[ing] the availability of the attorney-client privilege in 'excess judgment' first-party bad faith cases." *Id.* at 34 n. 6.

From the text of *Gaughan*, *Brison*, and *Madden*, Magistrate Judge Tinsley fashioned the following rule:

> an insurer may rely upon the attorney-client privilege to shield evidence from disclosure in the context of a first-party bad-faith claim stemming from an excess judgment if it can establish the satisfaction of the privilege's requisite elements, and can establish that the interests of the insured and insurer were inconsistent at the time the evidence was generated.

*Order Den. Pl.'s Mot. to Compel* at 14, ECF No. 124. The Court agrees with the general contours of this rule. However, the Court disagrees with the subsequent legal analysis and the omission of any analysis of who the attorney's actual client was in the underlying litigation.

In reaching this rule, Magistrate Judge Tinsley abstained from incorporating Justice Davis' concurrence in *Brison*. The Court agrees that this concurrence is nonbinding and does not fault Magistrate Judge Tinsley for avoiding application of this concurrence. However, the Court does find the reliance on *Nationwide Mut. Fire Ins. Co. v. Bourlon*, 617 S.E.2d 40, 46 (N.C. App. 2005), *aff'd*, 625 S.E.2d 779 (N.C. 2006) to be misguided. *Bourlon*, like Justice Davis' concurrence, is nonbinding. Further, the Court is hesitant to rely on *Bourlon*, as *Bourlon* is a lower court decision affirmed in an unexplained, *per curiam* opinion by the Supreme Court of North Carolina. Finally, and most importantly, the Court refuses to adopt the reading of *Bourlon* because it shifts the above quoted rule into a rule that runs counter to the explanations of the attorney-client privilege articulated by the SCAWV in majority opinions.

After adopting the rationale of the *Bourlon* Court, the decision below subtly shifts its rule. The Order below seizes on the following language from *Bourlon*: "[s]pecifically, communications that relate to an issue of coverage are not discoverable, because the interests of the insurer and its insured with respect to the issue of coverage are always adverse." *Order Den. Pl.'s Mot. to Compel* at 15 (quoting *Bourlon*, 617 S.E.2d at 46). The original rule in the Order focused on whether the

interests of the insured and insurer were compatible at the time the evidence was generated. *Id.* at 14. However, after the incorporation of *Bourlon*'s analysis, the focus of the analysis shifts to whether the interests between the insured and insurer on any given *issue* are adverse. The Court finds this rule to be contrary to law.

Instead, the Court holds that, in the context of first-party bad faith excess judgment cases, an insurer may invoke the attorney-client privilege when the insurer can establish (1) the satisfaction of the privilege's requisite elements, (2) that the interests of the insured and insurer were incompatible at the time of the production of the evidence, and (3) that the insurer, not the insured, was the client of the attorney.

This rule is in line with the SCAWV's caselaw. For the first prong, the SCAWV has repeatedly noted the elements required to establish the attorney-client privilege. *See, e.g.*, Syl. Pt. 2, *State v. Burton*, 254 S.E.2d 129 (W. Va. 1979). Next, Magistrate Judge Tinsley articulated the need for the second prong:

> [A] common thread throughout *Gaughan*, *Brison*, and *Madden* is the Supreme Court of Appeals's focus on the extent to which the interests of the insured and insurer are in fact inconsistent at the time the document/work product was generated. *See Gaughan*, 508 S.E.2d at 86 n.17 (contrasting circumstances where "the interests of the insured and insurer are . . . mutual," from those where "interests of the insured and insurer may in fact be inconsistent"); *Brison*, 584 S.E.2d at 489 (finding that attorney-client privilege is not automatically waived in first-party bad-faith case "when the interests of an insured and his or her insurance company are in conflict"); *Madden*, 601 S.E.2d at 34 (quoting *Brison*, 584 S.E.2d at Syl. Pt. 7) (same).

*Order Den. Pl.'s Mot. to Compel* at 15 (quoting *Bourlon*, 617 S.E.2d at 46). For the final prong, the SCAWV's case law indicates that determining who is the client of the relevant attorney is critical in determining who controls the attorney-client privilege. *Compare Gaughan*, 508 S.E.2d at 89 (allowing an insurer to invoke quasi attorney-client privilege, but not the traditional attorney-

client privilege because that privilege belonged to the insured) *with Brison*, 584 S.E.2d at 487–89 (allowing the insurer to invoke the traditional attorney-client privilege because the attorney's client was the insurer, not the insured).

Applying this rule, the Court finds that Defendants cannot invoke the traditional attorney-client privilege against Dr. Trull. While the first prong of this test may be met, *see Order Den. Pl.'s Mot. to Compel* at 16–17, the latter two prongs are not. The Court finds that the interests of Dr. Trull and Defendants were aligned when the evidence in question was produced. The Court considered several factors when coming to this conclusion. First, Defendants hired Mr. Simonton to represent Dr. Trull in the underlying litigation, not to represent Defendants on any potential *Shamblin* claim. Mr. Simonton repeatedly stated he was not providing legal advice on the *Shamblin* claim. Instead, he mostly provided advice on whether Defendants should pay the outstanding judgment. The interests of Dr. Trull and Defendants appeared to still be aligned at the time of this email, as evidenced by Mr. Simonton's suggestion that Defendants resolve the case. Further, Dr. Trull did not file the *Shamblin* claim until over two weeks after Mr. Simonton wrote this email. Nor does it appear that Defendants had informed Dr. Trull of its denial. Therefore, the interests of Dr. Trull and Defendants were not yet presumptively in conflict. The evidence before the Court suggests that the interests of Dr. Trull and Defendants were still aligned on the underlying litigation when this email was sent.

Finally, the Court finds Dr. Trull, not Defendants, was the client of Mr. Simonton at the time of this email. This case is much more analogous to *Gaughan* and *Recht* than *Brison* and *Madden*. In *Brison* and *Madden*, the interests of the insured and the insurer were inapposite from the outset. However, in *Gaughan* and *Recht*, as was true in this case, the interests of the insured and insurer were aligned in the underlying litigation. The Amended Judgment in the underlying

-11-

litigation had yet to be entered, and Mr. Simonton was still actively representing Dr. Trull. About a week and a half before writing this email, Mr. Simonton filed a motion in the underlying litigation on Dr. Trull's behalf. Approximately two weeks after sending this email, Mr. Simonton filed a response on behalf of Dr. Trull. He was Dr. Trull's attorney before, on, and after April 3, 2024. Therefore, as was true in *Gaughan* and *Recht*, the insured is the only one who can claim the traditional attorney-client privilege. Unlike the insured in *Gaughan*, Dr. Trull did not waive her right to the attorney-client privilege in favor of a third party. Instead, she seeks to access a document covered by the attorney-client privilege that belongs to her. Only Dr. Trull, not Defendants, can appropriately invoke the traditional attorney-client privilege in this case.[3]

The Court finds that Defendants have failed to meet the rule announced above. Instead, the attorney-client privilege belongs to Dr. Trull. Only she can invoke the privilege. Allowing Defendants to invoke the privilege against Dr. Trull is inappropriate. Accordingly, the Court **ORDERS** Defendants to provide Dr. Trull with the requested unredacted document.

The Court refrains from answering whether this document must be marked "Confidential." Despite requesting otherwise at the beginning of the objection, Dr. Trull requests that this email be marked "Confidential" in the final pages of her objection. *Pl.'s Obj. to Order Den. Pl.'s Mot. to Compel* at 1, 17–18. Defendants would also prefer that this document be marked "Confidential." Accordingly, the Court will not decide this issue and will allow the document to be marked "Confidential."

---

[3]    An invocation of quasi attorney-client privilege by Defendants against Dr. Trull also appears inappropriate. Quasi attorney-client privilege seems to only be appropriate when a third party is involved. *See Brison*, 584 S.E.2d at 487–88. The SCAWV allowed the insurer to invoke the quasi attorney-client privilege against a third-party after the insured had yielded his right to invoke the traditional attorney-client privilege. However, a result that allows the insurer to invoke quasi attorney-client privilege against the insured who still holds their right to the traditional attorney-client privilege would be unfair.

### IV.    Conclusion

For the reasons described above, the Court **SUSTAINS** Dr. Trull's objection and

**ORDERS** Defendants to provide Dr. Trull the requested unredacted email. ECF No. 129.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any

unrepresented parties.

ENTER:        July 15, 2025

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE