IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

DEVAN TRULL,

        Plaintiff,

v.                                CIVIL ACTION NO.   3:24-cv-00202

WEST VIRGINIA MUTUAL INSURANCE
COMPANY, et al.,

        Defendants.

## ORDER

This matter is before the undersigned on the *Motion to Quash Subpoena for Rule 30(b) Deposition* filed by subpoenaed non-party, Cabell Huntington Hospital ("CHH"), on April 25, 2025. (ECF No. 113). Therein, CHH seeks an order quashing the subpoena served by Defendant West Virginia Mutual Insurance Company ("WVMIC") which directs CHH to produce a corporate designee for deposition under Rule 30(b) of the Federal Rules of Civil Procedure. Also pending are WVMIC's *Motion to Compel CHH's Production of Documents Pursuant to Subpoena* (ECF No. 117) and Defendants' *Motion for Leave to Supplement Status Report*, filed July 17, 2025. (ECF No. 166). For the reasons set forth herein, Defendants' *Motion for Leave to Supplement Status Report* (ECF No. 166) is **GRANTED**, CHH's *Motion to Quash Subpoena* (ECF No. 113) is **DENIED**, and WVMIC's *Motion to Compel* (ECF No. 117) is **GRANTED**.

I.      BACKGROUND

Plaintiff, Devan Trull, D.O., is a medical professional who was sued by a former patient, Ms. Hensley, for medical negligence in April 2020. (ECF No. 47). At the time of care, Plaintiff had medical professional liability coverage through Defendant Mag Mutual ("MM"). (*Id.* at 2). MM was acquired by Defendant West Virginia Mutual Insurance Company ("WVMIC") in November 2020, at which "took over the handling of the underlying medical professional liability claim" at that time. (*Id.*). According to Plaintiff, WVMIC is "merely the alter ego" of Defendant MM. (*Id.* at 8).

During litigation of that claim, Ms. Hensley made a demand to settle within the applicable policy limits. (*Id.* at 3). The terms of the proposed settlement would include a complete release of liability for Plaintiff. (*Id.*). Plaintiff's counsel forwarded the settlement offer to counsel for Defendant MM. (*Id.* at 4). The offer email, dated September 13, 2023, contained an explicit warning to Defendant MM from Ms. Hensley's counsel that failure to settle within policy limits would constitute prime facie evidence of Defendant MM's failure to act in Plaintiff's best interest and would be deemed to constitute bad faith. (*Id.* at 3-4). Plaintiff's personal counsel sent a separate letter dated October 9, 2023, advising Defendant MM that Plaintiff "[did] not want to risk her personal assets in the event of a verdict . . . for compensatory damages, which, if obtained in this case, likely would be far in excess of her policy limits." (*Id.* at 5 (quoting ECF No. 47-2)). Accordingly, Plaintiff's counsel demanded Defendant MM settle the case within Plaintiff's policy limits. (*Id.*). Despite these warnings and repeated demands from Plaintiff to settle the case, Defendant MM refused to settle and proceeded to try the case before a jury. (*Id.* at 4).

On March 8, 2024, a jury returned a verdict of $1,922,395.67 in favor of Ms. Hensley against Plaintiff—an amount that far exceeded Plaintiff's policy limit of

2

$1,000,000. (*Id.* at 6). As a result, Plaintiff is personally liable for the excess judgment. Based on the Defendants' failure to settle within policy limits despite ample opportunity to do so, Plaintiff filed suit against Defendants on April 18, 2024, alleging, inter alia, a claim under *Shamblin v. Nationwide Mut. Ins. Co.*, 183 W.Va. 585, 396 S.E.2d 766 (1990).

On January 13, 2025, CHH responded to a request from Defendants for information related to Plaintiff's Self Insurance coverage offered through Plaintiff's employment with CHH. (ECF No. 76-1). In that missive, counsel for CHH explained that there was no coverage under Plaintiff's plan "because CHH was never given notice or an opportunity to participate in the defense, settlement negotiations, and the like." (*Id.* at 2). According to CHH, this lack of notice "unquestionably prejudiced CHH," and the result of that prejudice is "no coverage for Dr. Trull with respect to the allegations asserted against her by [Ms. Hensley] as well as the resulting adverse verdict." (*Id.*).

On March 14, 2025, Defendants moved to add CHH as a necessary party to this litigation so the Court could determine whether certain self-insurance coverage maintained by CHH provides excess coverage for the verdict rendered against Plaintiff in the underlying medical malpractice action. (ECF No. 90). While that motion was pending, WVMIC served upon CHH a subpoena seeking to compel certain testimony from a corporate designee under Rule 30(b) of the Federal Rules of Civil Procedure on fourteen designated areas of inquiry. *See* (ECF Nos. 105, 113, 114). On April 25, 2025, CHH moved to quash that subpoena, arguing that it would place an undue burden on CHH, especially if CHH were to be added as an additional party to the suit after the deposition took place. (ECF No. 113 ¶¶ 5-6). On May 6, 2025, WVMIC moved to compel CHH's production of documents under the subpoena. (ECF No. 117).

3

On June 16, 2025, the Court denied Defendants' motion to add CHH as a party on June 16, 2025, concluding that Defendants had "failed to show that CHH is a necessary party to this proceeding" because "CHH played no role in Defendants' alleged bad faith and is wholly unnecessary to such relief." (ECF No. 140 at 12-13). On June 17, 2025, the Court directed the parties and CHH to each file a Status Report to the extent they wished to address the effect of the Court's Order denying joinder on the pending *Motion to Quash*, as well as WVMIC's pending *Motion to Compel* CHH's production of documents. (ECF No. 141). The parties and CHH filed their respective *Status Reports* on June 24, 2025. (ECF No. 144, 147, 148). Defendants filed a *Consolidated Response* to Plaintiff and CHH's *Status Reports* on July 1, 2025 (ECF No. 152), and Plaintiff filed a *Response* on July 2, 2025 (ECF No. 154).

On July 17, 2025, Defendants moved for leave to supplement their *Status Report* with additional discovery responses from Plaintiff. (ECF No. 166). The Court directed the remaining parties to file any responses in opposition to that motion no later than July 25, 2025. (ECF No. 168). Plaintiff filed her *Response* on July 25, 2025. (ECF No. 177). The matters are ready for adjudication.

## II.     LEGAL STANDARD

Rule 26(b)(1) of the Federal Rules of Civil Procedure generally provides for broad discovery in civil actions. Specifically, the Rule provides that, "[u]nless otherwise limited by court order . . . [p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the

proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26b)(1). Pursuant to this broad scope of discovery, the Rule further provides that information "need not be admissible in evidence to be discoverable." *Id*. Thus, it is well-established that "relevancy for discovery purposes is defined more broadly than relevancy for evidentiary purposes," and extends to any information which may "bear on" a party's claim or defense. *Becton, Dickinson & Co. v. BioMedomics, Inc.*, 5:20-cv-536, 2021 WL 3864476, at *3 (E.D.N.C. Aug. 30, 2021) (citations omitted). As a result, there is not a "high bar" required to establish that discovery sought by a party is relevant. *See Ceresini v. Gonzales*, 3:21-cv-40, 2022 WL 628520, at *3 (N.D. W. Va. Mar. 3, 2022).

Pursuant to this standard, boilerplate objections to discovery requests are highly disfavored—particularly in the Fourth Circuit. *See Hager v. Graham*, 267 F.R.D. 486, 492 (N.D. W. Va. 2010) ("[G]eneral objections to discovery, without more, do not satisfy the burden of the responding party . . . because they cannot be applied with sufficient specificity to enable courts to evaluate their merits."). "The mere recitation of the familiar litany that an interrogatory or document production request is overly broad, burdensome, oppressive and irrelevant will not suffice." *Paull Assocs. Realty, LLC v. Lexington Ins. Co.*, 5:13-cv-80, 2014 WL 12596397, at *2 (N.D.W. Va. Jan. 9, 2014). Thus, if a party believes that a discovery request exceeds this broad scope of allowable discovery, it may object, but "the party resisting discovery has the burden of clarifying, explaining and supporting its objections." *Herbalife Int'l, Inc. v. St. Paul Fire & Marine Ins. Co.*, 5:05-cv-41, 2006 WL 2715164, at *6 (N.D. W. Va. Sept. 22, 2006) (citing *Leksi v. Fed. Ins. Co.*, 129 F.R.D. 99, 104-05 (D.N.J. 1989)).

Rule 37 of the Federal Rules of Civil Procedure governs motions to compel discovery responses. The Rule provides, in relevant part:

> [a] party seeking discovery may move for an order compelling an answer, designation, production, or inspection. This motion may be made if: […] (iii) a party fails to answer an interrogatory submitted under Rule 33; or (iv) a party fails to produce documents or fails to respond that inspection will be permitted—or fails to permit inspection—as requested under Rule 34."

Fed. R. Civ. P. 37(a)(3)(B)(iii-iv). "[A]n evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond." Fed. R. Civ. P. 37(a)(4).

Similarly, Rule 45(d)(3) of the Federal Rules of Civil Procedure governs a person's effort to quash a civil subpoena. This Rule provides that, "[o]n timely motion, the court for the district where compliance is required must quash or modify a subpoena that," *inter alia*, "requires disclosure of privileged or other protected matter, if no exception or waiver applies; or subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(iii)-(iv). The subpoena *may* be modified or quashed, on motion, if compliance with the subpoena requires, *inter alia*, "disclosing a trade secret or other confidential research, development, or commercial information[.]" Fed. R. Civ. P. 45(d)(3)(B)(i). Notably, "[a]lthough Rule 45(c) sets forth additional grounds on which a subpoena against a third party may be quashed . . . those factors are co-extensive with the general rules governing all discovery that are set forth in Rule 26." *Cook v. Howard*, 484 Fed App'x 805, 812 (4th Cir. 2012). Just as the party resisting discovery bears the burden of persuasion in the context of a motion to compel, the burden of persuasion in a motion to quash a subpoena is borne by the movant. *Townsend v. Nestle Healthcare Nutrition, Corp.*, 3:15-cv-6824, 2016 WL 1629363, at *3 (S.D. W. Va. Apr. 22, 2016).

The Federal Rules of Civil Procedure confer "substantial discretion" to the Court "in managing discovery." *Doe v. Cabell Cty. Bd. of Educ.*, 3:21-cv-31, 2022 WL 288193, at *4 (S.D. W. Va. Jan. 31, 2022) (citing *Lone Star Steakhouse & Saloon, Inc. v. Alpha of*

*Va., Inc.*, 43 F.3d 922, 929 (4th Cir. 1995)). "Resolution of a motion to compel, therefore, is generally left within the broad discretion of the District Court." *Lone Star*, 43 F.3d at 929. Likewise, "[t]he determination as to whether a subpoena seeks irrelevant information or imposes an undue burden is committed to the discretion of the trial court." *Townsend*, 2016 WL 1629363, at *3.

### III. DISCUSSION

In their subpoena, WVMIC seeks to depose a designated representative of CHH concerning the following topics and matters:

1. The handling and investigation of the Notice of Claim pertaining to claim by Carlie Hensley attached hereto by CHH, its representatives, agents or attorneys;

2. Communications with Dr. Devan Trull related to the Notice of Claim by Carlie Hensley attached hereto by CHH, its representatives, agents or attorneys;

3. Communications with Dr. Devan Trull advising her or any representative of any potential coverage by CHH or any insurer related to the Notice of Claim by Carlie Hensley attached hereto by CHH, its representatives, agents or attorneys;

4. Communications with West Virginia Mutual Insurance Company or MAG Mutual Insurance Company related to Notice of Claim by Carlie Hensley attached hereto by CHH, its representatives, agents or attorneys;

5. Communications with Employed Physicians of Cabell Huntington Hospital related to Notice of Claim by Carlie Hensley attached hereto by CHH, its representatives, agents or attorneys;

6. Investigation of Carlie Hensley's claim against Dr. Devan Trull or CHH by CHH, its representatives, agents or attorneys;

7. Communications with Dr. Devan Trull or her counsel related to the claim of Carlie Hensley by CHH, its representatives, agents or attorneys;

8. Communications with Dr. Devan Trull related to the Employed Physicians of Cabell Huntington Hospital insurance policy issued by

> West Virginia Mutual Insurance Company by CHH, its representatives, agents or attorneys;
>
> 9. Communications with Dr. Devan Trull related to the Cabell Huntington Hospital, Inc. Self-Coverage Plan for Professional Liability, Comprehensive General Liability, and Employers' Liability by CHH, its representatives, agents or attorneys;
>
> 10. Communications with Dr. Devan Trull related to Cabell Huntington Hospital Employed Physicians Self-Insurance Program by CHH, its representatives, agents or attorneys;
>
> 11. CHH Self-Coverage Plan for Professional Liability, Comprehensive General Liability, and Employers' Liability as referenced in correspondence from Robert Sellards on January 13, 2025[,] and January 21, 2025;
>
> 12. Cabell Huntington Hospital Employed Physicians Self-Insurance Program as referenced in correspondence from Robert Sellards on January 13, 2025[,] and January 21, 2025;
>
> 13. CHH evaluations of claim by Carlie Hensley against Dr. Devan Trull under the SIR or Umbrella Policy No. HUL-09100292 or coverage for such claim; [and]
>
> 14. CHH evaluations of the claim by Carlie Hensley against Dr. Devan Trull under any policy.

(ECF No. 105-1). WVMIC claims that it seeks this information to determine the following:

> the scope of coverage under CHH's [Self-Insurance Retention]; whether Plaintiff was adequately informed about CHH's SIR so she could provide notice and other obligations under the Self Insurance Program; whether CHH received adequate notice of the underlying claim against Plaintiff; whether CHH investigated the claim against Plaintiff and, if so, the extent and results of that investigation; whether Plaintiff and CHH communicated regarding the claim; and CHH's evaluation and handling of the claim against Plaintiff under several applicable insurance policies.

(ECF No. 152 at 3). Each of these issues, according to WVMIC, is "relevant to Defendants' affirmative defenses," such as Plaintiff's failure to mitigate damages by notifying CHH of Ms. Hensley's claim, per the terms of her policy through CHH. Plaintiff and CHH,

8

meanwhile, argue that the information sought by WVMIC is irrelevant in light of the Court's ruling on summary judgment. (ECF Nos. 144, 147, 154).

In *Shamblin*, the Supreme Court of Appeals of West Virginia dictated that the proper test to be applied in determining whether an insurer is liable to its insured for personal liability in excess of policy limits is "whether the reasonably prudent insurer would have refused to settle within policy limits under the facts and circumstances of the case, bearing in mind always its duty of good faith and fair dealing with its insured." *Shamblin*, 183 W. Va. at 595, 396 S.E.2d at 776. When assessing whether the insurer's efforts were reasonable, the trial court should consider the following non-exhaustive factors:

> whether there was an appropriate investigation and evaluation of the claim based upon objective and cogent information; whether the insurer had a reasonable basis to conclude that there was a genuine and substantial issue as to liability of its insured; and whether there was potential for substantial recovery of an excess verdict against its insured.

*Id.* The *Shamblin* Court went on to state that "[a]ny salient fact or circumstance regarding the reasonableness of the insurer's actions, and its concern or lack of concern for the protection of its insured, may be considered in determining whether the insurer is liable to its insured for any judgment obtained against him in excess of policy limits." *Shamblin*, 183 W. Va. at 596, 396 S.E.2d at 777.

Here, the information that WVMIC seeks may be relevant to ascertain the reasonableness of their actions in the underlying malpractice suit. And despite CHH's contention that the information sought can be obtained by the parties to the suit, Plaintiff's discovery responses—attached to Defendants' *Motion for Leave to Supplement Status Report*—indicate that Plaintiff does not have any record of the CHH insurance policies under which she was insured at the time of the malpractice suit. *See* (ECF No.

9

166-1). Accordingly, the Court **FINDS** that the discovery sought in WVMIC's subpoena to CHH is neither unduly burdensome nor irrelevant.

### IV. CONCLUSION

For the foregoing reasons, Defendants' *Motion for Leave to Supplement Status Report* (ECF No. 166) is **GRANTED**, CHH's *Motion to Quash Subpoena* (ECF No. 113) is **DENIED**, and WVMIC's *Motion to Compel* (ECF No. 117) is **GRANTED**. Counsel for the parties and CHH, respectively, are hereby **ORDERED** to arrange for deposition of the appropriate corporate representative(s) of CHH, at a time convenient to the parties and CHH. Defendants are further **ORDERED** to file an Amended Notice of Deposition outlining the chosen date, time, and place for such deposition and to provide a copy of said Notice to all parties and to CHH.

**IT IS SO ORDERED**.

The Clerk of Court is **DIRECTED** to transmit a copy of this *Order* to counsel for CHH, counsel of record, and any unrepresented party.

ENTERED: August 13, 2025

Dwane L. Tinsley
United States Magistrate Judge