IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

DEVAN TRULL,

        Plaintiff,

v.                               CIVIL ACTION NO. 3:24-cv-00202

MAG MUTUAL INSURANCE
COMPANY,

        Defendant.

## ORDER

This matter is before the undersigned on Plaintiff Devan Trull's *Motion to Compel the Deposition of Peter Rogers* (ECF No. 170), filed on July 22, 2025, and the *Motion for a Protective Order* (ECF No. 185) filed by Defendant Mag Mutual Insurance Company[1] ("MagMutual") on August 5, 2025, as part of its *Response in Opposition to Plaintiff's Motion to Compel*. Plaintiff replied to MagMutual's Response on August 12, 2025. (ECF No. 190). The matters are now ripe for adjudication. For the reasons set forth herein, Plaintiff's *Motion to Compel the Deposition of Peter Rogers* (ECF No. 170) is **GRANTED**, and MagMutual's *Motion for a Protective Order* (ECF No. 185) is **DENIED**.

**I.    BACKGROUND**

Plaintiff, Devan Trull, D.O., is a medical professional who was sued by a former patient, Ms. Hensley, for medical negligence in April 2020. (ECF No. 47). At the time

---

[1] This Motion was brought by both West Virginia Mutual Insurance Company and Mag Mutual Insurance Company. *See* (ECF No. 185). However, on September 2, 2025, the parties filed a Stipulation and Dismissal of West Virginia Mutual Insurance Company as a Defendant. (ECF No. 216). Accordingly, Mag Mutual is the only remaining defendant as of the date of this Order.

Plaintiff provided care to Ms. Hensley, Plaintiff had medical professional liability coverage through MagMutual, which was later acquired by West Virginia Mutual Insurance Company ("WVMIC"). (*Id.* at 2). WVMIC "took over the handling of the underlying medical professional liability claim" at that time. (*Id.*). According to the parties *Stipulation*, WVMIC was merged into MagMutual and ceased to exist as an independent entity as of July 1, 2025. (ECF No. 216).

During litigation of the medical malpractice claim, Ms. Hensley made a demand to settle within the applicable policy limits. (ECF No. 47 at 3). The terms of the proposed settlement would include a complete release of liability for Plaintiff. (*Id.*). Despite repeated demands from Plaintiff to her insurer to settle the case, the case proceeded to trial in early 2024. (*Id.* at 4). On March 8, 2024, a jury returned a verdict of $1,922,395.67 in favor of Ms. Hensley against Plaintiff—an amount that far exceeded Plaintiff's insurance policy limit of $1,000,000. (*Id.* at 6). As a result, Plaintiff is personally liable for the excess judgment. Based on the Defendants' failure to settle within policy limits despite ample opportunity to do so, Plaintiff filed suit against Defendants on April 18, 2024, alleging, inter alia, a bad faith claim under *Shamblin v. Nationwide Mut. Ins. Co.*, 183 W.Va. 585, 396 S.E.2d 766 (1990).

On July 22, 2025, Plaintiff filed her *Motion to Compel*, seeking to depose Peter Rogers, a member of MagMutual's executive leadership who Plaintiff contends was significantly involved in MagMutual's decision to pay only the applicable policy limits towards Ms. Hensley's judgment against Plaintiff. (ECF No. 170, 171). Defendants responded in opposition on August 5, 2025, (ECF No. 185), and moved for a protective order to preclude the deposition Plaintiff seeks to compel. Plaintiff replied on August 12, 2025. (ECF No. 190). The matters are ready for adjudication.

## II. LEGAL STANDARD

Rule 26(b)(1) of the Federal Rules of Civil Procedure generally provides for broad discovery in civil actions. Specifically, the Rule provides that, "[u]nless otherwise limited by court order . . . [p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26b)(1). Pursuant to this broad scope of discovery, the Rule further provides that information "need not be admissible in evidence to be discoverable." *Id.* Thus, it is well-established that "relevancy for discovery purposes is defined more broadly than relevancy for evidentiary purposes," and extends to any information which may "bear on" a party's claim or defense. *Becton, Dickinson & Co. v. BioMedomics, Inc.*, 5:20-cv-536, 2021 WL 3864476, at *3 (E.D.N.C. Aug. 30, 2021) (citations omitted). As a result, there is not a "high bar" required to establish that discovery sought by a party is relevant. *See Ceresini v. Gonzales*, 3:21-cv-40, 2022 WL 628520, at *3 (N.D. W. Va. Mar. 3, 2022).

The Federal Rules of Civil Procedure confer "substantial discretion" to the Court "in managing discovery." *Doe v. Cabell Cty. Bd. of Educ.*, 3:21-cv-31, 2022 WL 288193, at *4 (S.D. W. Va. Jan. 31, 2022) (citing *Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc.*, 43 F.3d 922, 929 (4th Cir. 1995)). "Resolution of a motion to compel, therefore, is generally left within the broad discretion of the District Court." *Lone Star*, 43 F.3d at 929. Likewise, "[t]he determination as to whether a subpoena seeks irrelevant information or imposes an undue burden is committed to the discretion of the trial court."

*Townsend v. Nestle Healthcare Nutrition, Corp.*, 3:15-cv-6824, 2016 WL 1629363, at *3 (S.D. W. Va. Apr. 22, 2016). To ensure that discovery is sufficient, yet reasonable, district courts also have "substantial latitude to fashion protective orders." *Scott Hutchison Enters., Inc.*, 3:15-cv-13415, 2016 WL 5219633, at *2 (S.D. W. Va. Sept. 20, 2016) (citing *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984)).

### III. DISCUSSION

Plaintiff now seeks to depose Peter Rogers, a member of MagMutual's executive leadership who Plaintiff claims has personal knowledge of MagMutual's handling of medical negligence insurance claims, such as Plaintiffs, and was responsible for approving the issuance of the policy check to Ms. Hensley in Plaintiff's case. (ECF No. 170). Plaintiff contends that the deposition "will be short and conducted by [remote] video technology." (*Id.* at 1).

MagMutual opposes Plaintiff's proposed deposition, arguing that Mr. Rogers does not have any information relevant to Plaintiff's claim and that his deposition should be barred under the apex doctrine. (ECF No. 185 at 1). Specifically, MagMutual contends that "Mr. Rogers was not involved in any part of the handling [of] the Underlying Litigation prior to [Plaintiff's medical malpractice case] going to trial" and first became involved in the case during trial. (*Id.* at 2). According to MagMutual, "Mr. Rogers' only involvement after a verdict was reached was to approve the issuance of a policy limits check to Ms. Hensley once her lawyers refused to engage in post-verdict settlement discussions." (*Id.* at 3). For these reasons, MagMutual requests that the Court enter a protective order prohibiting Mr. Rogers' deposition. (*Id.*).

The apex doctrine—on which MagMutual relies in arguing that the Court should prohibit Mr. Rogers' deposition—has been neither expressly adopted nor rejected by our

4

Court of Appeals. *See Cunagin as Next friend of J.C. v. Cabell Huntington, Hosp., Inc.*, No. 3:19-CV-250, 2021 WL 1518877, at *4 (S.D.W. Va. Apr. 16, 2021). It "applies to a specific subset of deposition notices that demand the appearance of high-level executives or high-ranking government officials," *id.* at *3, and "provides a vehicle for a court to balance a party's right to liberal discovery with an apex deponent's right to be protected from abuse and harassment, especially when the information sought may be available from lower-level employees with more direct knowledge." *Turner v. Amazon.com Servs. LLC*, No. 1:24-CV-01965 (LMB/WBP), 2025 WL 1748683, at *2 (E.D. Va. June 24, 2025). "Therefore, when a party has sought to depose a high level official or corporate executive, district courts within the Fourth Circuit have applied the apex doctrine 'to limit discovery to avoid' abuse or harassment." *Id.* (quoting *JTH Tax, Inc. v. Aime*, No. 2:16CV279, 2016 WL 9223926, at *5 (E.D. Va. Dec. 13, 2016)); *Cunagin*, 2021 WL 1518877, at *3 (describing the apex doctrine as "both an expression of the proportionality requirement found at Federal Rule of Civil Procedure 26(b)(1) and a presumption of good cause for a protective order under Federal Rule of Civil Procedure 26(c)").

Pursuant to this doctrine, "before a plaintiff may depose a corporate defendant's high[-]ranking officer, the plaintiff must show (1) the executive has unique or special knowledge of the facts at issue and (2) other less burdensome avenues for obtaining the information sought have been exhausted." *Smithfield Bus. Park, LLC v. SLR Int'l Corp.*, No. 5:12-CV-282, 2014 WL 547078, at *2 (E.D.N.C. Feb. 10, 2014) (internal quotation marks omitted); *Trs. of Purdue Univ. v. Wolfspeed, Inc.*, No. 1:21CV840, 2023 WL 4564558, at *4 (M.D.N.C. July 17, 2023). The doctrine "is bottomed on the apex executive lacking *any* knowledge of the relevant facts." *Paice, LLC v. Hyundai Motor Co.*, No. 12-CV-499, 2014 WL 3613394, at *1 (D. Md. June 27, 2014) (emphasis in original). Thus,

5

"the apex doctrine, whatever its authority, does not prohibit the deposition of executives who have personal knowledge relevant to the parties' claims and defenses." *Duke Energy Carolinas, LLC v. NTE Carolinas II, LLC*, No. 3:19-CV-515, 2021 WL 5826786, at *3 (W.D.N.C. Dec. 8, 2021).

"Application of the apex doctrine is [ ] significant because it reallocates the burden that accompanies a motion for protective order." *In re C. R. Bard, Inc. Pelvic Repair Sys. Prod. Liab. Litig.*, No. MDL 2187, 2014 WL 12703776, at *4 (S.D.W. Va. June 30, 2014). "Put simply, the apex doctrine is the application of the rebuttable presumption that the deposition of a high-ranking corporate executive either violates Rule 26(b)(2)(C)'s proportionality standard or, on a party's motion for a protective order, constitutes 'good cause' for such an order as an 'annoyance' or 'undue burden' within the meaning of Rule 26(c)(1)." *Performance Sales & Mktg. LLC v. Lowe's Companies, Inc.*, No. 5:07-CV-00140-RLV, 2012 WL 4061680, at *3 (W.D.N.C. Sept. 14, 2012). "Should the deposing party fail to overcome this presumption, the court must then limit or even prohibit the deposition." *Id.*; *see Est. of Valentine by & through Grate v. South Carolina*, No. CV 3:18-00895-JFA, 2020 WL 12783948, at *2 (D.S.C. Aug. 13, 2020).

Here, Plaintiff seeks to depose Peter Rogers, who "at all relevant times served as MagMutual's Chief Claims Officer and is currently the Chief Litigation and Strategy Officer for MAGMUTUAL claims." (ECF No. 185 at 9). Clearly, Mr. Rogers is an apex deponent. Thus, the relevant questions are (1) whether Mr. Rogers has unique or special personal knowledge relevant to the parties' claims and defenses, and (2) whether other less burdensome avenues for obtaining the information sought have been exhausted. For the reasons outlined below, the Court **FINDS** that the answer to both of these questions is yes.

Despite MagMutual's contention that Mr. Rogers' role in the underlying medical malpractice case was limited, the fact remains that Mr. Rogers does have unique and special knowledge or information relevant to Plaintiff's *Shamblin* claim. As the Court in *Shamblin* states, "[a]ny salient fact or circumstance regarding the reasonableness of the insurer's actions, and its concern or lack of concern for the protection of its insured, may be considered in determining whether the insurer is liable to its insured for any judgment obtained against him in excess of policy limits." *Shamblin*, 183 W. Va. at 596, 396 S.E.2d at 777. Here, the issue is not simply whether MagMutual failed to settle *before* trial. The parties could have engaged in settlement negotiations during the course of the trial, and as MagMutual concedes, Mr. Rogers was receiving daily reports on the trial's progress. Additionally, Dante diTrapano, one of Ms. Hensley's attorneys in the medical malpractice claim, testified that even after the jury returned a verdict in his client's favor, he had been willing to settle the case outside of the jury's verdict to avoid the entry of a judgment against Plaintiff. (ECF No. 104-2 at 8-9). In fact, Mr. diTrapano indicated he was surprised that, when he received MagMutual's policy limit check, "there was a million[-]dollar check . . . with no paperwork, no release, no [']if you signed this, you know, you release claims['] . . . ." (*Id.* at 10).

Defense counsel conceded in a July 1, 2025, email that Mr. Rogers was "the sole decision maker when the [$1 million] check was tendered to [Ms. Hensley] without securing a release for [Plaintiff]." (ECF No. 170-2 at 1). Mr. Rogers' rationale for failing to engage in meaningful settlement negotiations during trial, or to even try and obtain a release of Plaintiff's personal liability when he cut MagMutual's check, is directly relevant to Plaintiff's case and, based on the record, is information known only to Mr. Rogers.

7

Additionally, Plaintiff has exhausted whatever less burdensome avenues for obtaining the information sought were available. As MagMutual notes, "Plaintiff has already deposed Tamara Welch, Hilary Young, Nora Lantz, and Alisha Dickie—all of the WVMIC/MagMutual employees who handled the Underlying Litigation." (ECF No. 185 at 9-10). None of these individuals was able to offer any insights into MagMutuals post-verdict decisions, instead repeatedly indicating that it was Mr. Rogers—not them—who had the authority to issue the insurance check and mandate that MagMutual employees cease communicating with Ms. Hensley's counsel. *See, e.g.,* (ECF No. 170-1 at 7 ["**Q**: And you guys decided not to negotiate at all. You just tendered the limits? **A**: That's what we were instructed to do. That's what Nora and I were instructed to do. **Q**: By Peter Rogers? **A**: Yes, sir."]). Accordingly, Plaintiff has exhausted efforts to obtain the information sought elsewhere.

Finally, to the extent that MagMutual attempts to argue that the burden of deposing Mr. Rogers would be disproportionate to Plaintiff's need for the information sought, the Court is unconvinced. Plaintiff has agreed to keep the deposition brief, at or under three hours, and to do it completely remotely. Therefore, any burden placed upon Mr. Rogers is minimal and does not warrant the issuance of the protective order MagMutual seeks.

## IV.    CONCLUSION

Accordingly, it is **ORDERED** that Plaintiff's *Motion to Compel the Deposition of Peter Rogers* (ECF No. 170) is **GRANTED**, and MagMutual's *Motion for a Protective Order* (ECF No. 185) is **DENIED**. Counsel for the parties are hereby **ORDERED** to coordinate for Mr. Rogers to be deposed at a time convenient to all parties and Mr.

Rogers. Plaintiff is further **ORDERED** to file a corresponding Notice of Deposition with the Court and to provide a copy of said Notice to all parties and to Mr. Rogers.

 **IT IS SO ORDERED**.

 The Clerk of Court is **DIRECTED** to send a copy of this Order to counsel of record and to any unrepresented party.

        ENTERED: September 4, 2025

        Dwane L. Tinsley
        United States Magistrate Judge