**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**HUNTINGTON DIVISION**

DEVAN TRULL,

Plaintiff,

v. CIVIL ACTION NO. 3:24-cv-00202

MAG MUTUAL INSURANCE COMPANY,

Defendant.

**ORDER**

This matter is before the Court on the *Motion for Protective Order* filed by Defendants, West Virginia Mutual Insurance Company ("WVMIC")[1] and MAG Mutual Insurance Company ("MagMutual") on July 22, 2025. (ECF No. 172). Therein, Defendants raise a discovery dispute between the parties regarding entry of a protective order limiting the areas of examination that Plaintiff, Devan Trull, D.O., may pursue in her deposition of MagMutual's corporate representative pursuant to Rule 30(b)(6) of the *Federal Rules of Civil Procedure*. *See id.* For the reasons set forth herein, **IT IS ORDERED** that Defendants' *Motion for Protective Order* (ECF No. 172) is hereby **GRANTED IN PART** and **DENIED IN PART**.

## I. BACKGROUND

The undersigned's summary of Plaintiff's allegations is set forth in the August 13, 2025, *Order*, *see* (ECF No. 191), and is hereby incorporated by reference. The subject of

[1] On September 2, 2025, the parties filed a Stipulation and Dismissal of West Virginia Mutual Insurance Company as a Defendant. (ECF No. 216). Accordingly, Mag Mutual is the only remaining defendant as of the date of this Order.

Defendants' *Motion for Protective Order* is Plaintiff's *Notice of Rule 30(b)(6) Deposition*, filed on June 3, 2025. (ECF No. 130).

Despite some concessions from both sides, the parties remain at an impasse regarding several of the noticed areas of examination propounded by Plaintiff. In its motion, MagMutual asks the Court to enter a protective order "limiting the proposed topics for MagMutual's corporate representative deposition." (ECF No. 172 at 2). Notably, MagMutual does not seek a protective order with respect to Noticed Topics 1, 2, 8, 10, and 11.[2] *See id.* Topics 4, 5, 6, 7, and 12, meanwhile, relate to other claims handled by MagMutual for the past ten years. According to MagMutual, "Plaintiff has agreed to limit these topics to cases or claims involving other excess verdicts or bad faith lawsuits/claims/findings by has not agreed to any further limitation of scope." (*Id.* at 5). MagMutual contends that "the scope of these requests is burdensome, irrelevant, and not proportionate to the needs of the case." (*Id.*). Accordingly, MagMutual has "agreed to produce a witness to testify regarding non-privileged information related to lawsuits or administrative findings against MagMutual in the last five years, where MagMutual has not contested coverage, which involve allegations that MagMutual failed to reasonably settle the underlying malpractice claim within insurance policy limits," in response to Topics 4-7. (*Id.* at 6). However, it seeks protection from the Court as to any matters outside of this scope for Topics 4-7 and for full protection from discovery on Topics 3 and 12.

---

2 Plaintiff notes in her *Response in Opposition* that the request for Topic 9 has been satisfied. (ECF No. 187 at 4). Accordingly, the Court will not address that Topic.

Plaintiff filed a response in opposition on August 5, 2025, maintaining her position that her noticed topics are necessary and appropriate. (ECF No. 187). Defendants filed a reply brief on August 12, 2025. (ECF No. 189). As such, the motion is ripe for adjudication.

## II. LEGAL STANDARD

Rule 26(b)(1) sets forth the scope of discovery under the Federal Rules of Civil Procedure, providing that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1). "Relevance is not, on its own, a high bar." *Va. Dep't of Corrs. v. Jordan*, 921 F.3d 180, 188 (4th Cir. 2019). As such, information "need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1). Information sought is relevant if it "bears on, [or] reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). While discovery under the Federal Rules is broad, "all permissible discovery must be measured against the yardstick of proportionality" under the Rule 26(b)(1) standard. *United States v. Neuberger*, 22-cv-2977, 2024 WL 3370582, at *1 (D. Md. Apr. 16, 2024). Determining whether discovery is "proportional to the needs of the case" pursuant to Rule 26(b)(1) requires consideration of six factors: "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

The Federal Rules of Civil Procedure specifically permit a party to notice a corporate defendant's deposition. Pursuant to Federal Rule 30(b)(6), "a party may name as the deponent a public or private corporation, a partnership, an association, a

governmental agency, or other entity[.]" Fed. R. Civ. P. 30(b)(6). In its notice or subpoena setting the deposition, the party seeking the corporate-entity deposition "must describe with reasonable particularity the matters for examination." *Id.* Furthermore, either "[b]efore or promptly after the notice or subpoena is served, the serving party and the organization must confer in good faith about the matters for examination." *Id.*

However, "[s]imply because information is discoverable under Rule 26 . . . does not mean that discovery must be had." *Scott Hutchison Enters., Inc.*, 3:15-cv-13415, 2016 WL 5219633, at *2 (S.D. W. Va. Sept. 20, 2016) (citing *Nicholas v. Wyndham Int'l, Inc.*, 373 F.3d 537, 543 (4th Cir. 2004)). Notwithstanding the broad scope of discovery, Federal Rule 26(c) provides that "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c). Further, the court must also limit the frequency or extent of discovery otherwise allowed if it determines that: the discovery sought is unreasonably cumulative or duplicative, can be obtained from some other source that is more convenient, less burdensome, or less expensive; or the party seeking discovery has had ample opportunity to obtain the information by discovery in the action. Fed. R. Civ. P. 26(b)(2)(C).

Importantly, the party moving for a protective order must set forth a specific reason for the protective order, and it bears the burden of establishing good cause. *See, e.g.*, *Citynet, LLC v. Frontier W. Va., Inc.*, 2:14-cv-15947, 2022 WL 2335332, at *4 (S.D.W. Va. June 28, 2022) ("The party moving for a protective order bears the burden of establishing good cause."); *United Property & Casualty Ins. v. Couture*, 2:19-cv-01856, 2021 WL 5141292, at *2 (D.S.C. Nov. 4, 2021); *Minter* v. *Wells Fargo Bank, N.A.*, 258 F.R.D. 118, 124-125 (D. Md. 2009). Good cause cannot be established merely by relying upon general statements; rather, the moving party "must provide particular and specific

facts to meet the high burden of proving that a protective order should issue." *Citynet*, 2022 WL 2335332, at *4.

Finally, to ensure that discovery is sufficient, yet reasonable, district courts have "substantial latitude to fashion protective orders." *Scott Hutchison Enters., Inc.*, 2016 WL 5219633, at *2 (citing *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984)). *See also Fonner v. Fairfax Cty.*, 415 F.3d 325, 331 (4th Cir. 2005) (explaining that the decision to enter a protective order is committed to the sound discretion of the trial court).

## III. DISCUSSION

### A. Topic No. 3

The parties' first issue in dispute concerns Topic No. 3 of the subject *Notice*. Topic No. 3 seeks MagMutual's 30(b)(6) testimony concerning the following:

> All facts, witnesses, and documents regarding any reviews, audits, or examinations conducted by Mag Mutual Insurance Company concerning its compliance with West Virginia state laws applicable to the handling of insurance claims, including, but not limited to, West Virginia Insurance Regulations, West Virginia state statutes related to claims handling, such as the Uniform Trade Practices Act, and/or any other applicable West Virginia state law, policy, and procedure since November 1, 2020.

(ECF No. 172 at 15).

According to MagMutual, "[d]uring the meet and confer process, Plaintiff agreed to limit Topic 3 to internal review and audit of West Virginia claims involving excess verdicts from November 1, 2020[,] through the present." (*Id.*). However, this limitation does not resolve MagMutual's objections to the request, namely that Plaintiff's request is overly broad, since "the existence of an excess verdict does not equate to an allegation of bad faith." (*Id.* at 12). MagMutual contends that "[t]he burden in identifying these excess verdicts nationwide over a ten[-]year period and preparing a witness to testify to same vastly outweighs any limited potential benefit to Plaintiff." (*Id.* at 13).

MagMutual further objects that "Topic 3 invades Defendants' attorney-client privilege and work product protection," in that it "seeks information related to MagMutual's internal reviews of its efforts to comply with West Virginia statutes, regulations, and other law as it relates to claims involving excess verdicts." (*Id.* at 16). According to MagMutual, those reviews "would have been conducted either by or at the direction of MagMutual's corporate counsel" and would involve communications between MagMutual and its attorneys. (*Id.*). "Further, such reviews also would occur in the context of anticipated litigation, which means that any documents generated during such reviews would be protected by the work-product exception established by Rule 26(b)(3)(A)." (*Id.*).

Finally, MagMutual argues that "Topic 3 also seeks information that is irrelevant or otherwise beyond the scope of discovery[,]" because "MagMutual's internal review of its handling of claims other than Plaintiff's bears on no claim presented by Plaintiff (either Shamblin or UTPA)." (*Id.*). Even were the information sought relevant, however, MagMutual, nonetheless, contends that "it is disproportionate to the needs of the case." (*Id.*). Thus, MagMutual requests that the Court "enter an order that discovery not be had on this topic." (*Id.*).

In response, Plaintiff argues that MagMutual's objections fail to meet the high burden necessary for this Court to issue the requested protective order, because MagMutual "fail[s] to demonstrate how the requested discovery is specifically objectionable by submitting affidavits or other evidence." (ECF No. 187 at 8). Further, Plaintiff characterizes MagMutual's attempt to limit Plaintiff's request as to "excess verdicts" as "an attempt to unnecessarily narrow Plaintiff's topics of inquiry from 'excess verdicts' to 'excess verdicts arising out of Defendants' failure to settle medical malpractice claims within policy limits when an insured has requested that the matter be settled.' "

(*Id.* at 9). Finally, Plaintiff contends that MagMutual may object at the deposition should Plaintiff seek to encroach upon information protected by attorney-client privilege, the work-product exception, or Rule 26(b)(3)(A)'s exception for documents and tangible things prepared in anticipation of litigation, or otherwise seek information outside the scope of discovery. (*Id.*).

Given that Plaintiff has agreed to limit Topic 3 to information related to MagMutual's internal review and audit of West Virginia claims involving excess verdicts from November 1, 2020, through the present, the undersigned **FINDS** that the discovery sought, as limited by Plaintiff's agreement, is proportional to the needs of the case. MagMutual is welcome to object at the deposition to any information related to this topic that implicates any privilege or exception not subject to disclosure. However, wholesale preclusion of this topic is not warranted. Accordingly, MagMutual's motion is **DENIED** as to Topic 3.

B. Topic No. 4

Next, MagMutual seeks an order limiting the scope of questions regarding Topic No. 4, which seeks MagMutual's 30(b)(6) testimony regarding the following:

> All facts, witnesses, and documents regarding any and all extra contractual bad faith suits against Mag Mutual Insurance Company for a period of the last ten (10) years.

(ECF No. 172 at 7).

According to MagMutual, Plaintiff has agreed to "limit this topic to bad faith lawsuits involving excess verdicts" and "to avoid any attorney-client privilege or work product privileged documents." (*Id.* at 7-8). Nonetheless, MagMutual argues that the information sought is not reasonably limited in scope, seeks information "well beyond the bounds of permissible discovery[,]" and is disproportionate to Plaintiff's needs. Thus,

MagMutual asks the Court to limit Topic 4 "to lawsuits filed against MagMutual in West Virginia in the last five years involving an underlying medical malpractice claim where MagMutual has not contested coverage and MagMutual allegedly failed to settle the underlying malpractice claim within insurance policy limits." (*Id.* at 9).

In response, Plaintiff argues that MagMutual's "consistent reliance on the discussion and rulings set forth in *Moses v. Enterprises, LLC v. Lexington Insurance Company*, 2021 WL 329210 (S.D.W. Va. Feb. 1, 2021) is misplaced[,]" as it did not deal with a claim under the Unfair Trade Practices Act ("UTPA") like the instant case. (ECF No. 187 at 11). Because Plaintiff seeks to establish that MagMutual "committed and/or performed acts that were done with such frequency so as to indicate a general business practice" for liability under the UTPA, she contends that the requested information is "within the broad scope of discovery in a bad faith insurance cause of action." (*Id.* at 11-12).

The Court agrees with Plaintiff that the limitation MagMutual seeks is too narrow. Bad faith claims under *Shamblin* are not limited to cases involving underlying medical malpractice claims. Whether MagMutual routinely refused to settle within policy limits in other types of cases is relevant to Plaintiff's claims, and responding to the request should not be overly burdensome on MagMutual, even without a more limited geographic or temporal scope. MagMutual's request to limit Topic No. 4 is, therefore, **DENIED**.

C. Topic No. 5

Next, MagMutual seeks a protective order limiting Topic No. 5, which seeks MagMutual's 30(b)(6) testimony regarding the following:

> All facts, witnesses, and documents regarding any and all findings by any judicial, administrative, or executive tribunal that Mag Mutual Insurance Company and/or its agents violated any insurance policy improperly denying benefits for a period of the last ten (10) years.

(ECF No. 172 at 9).

MagMutual objects to the scope of Topic No. 5 as being overly broad and disproportionate to the needs of the case. (*Id.*). Although MagMutual concedes that Plaintiff has limited the topic to "findings related to bad faith resulting from excess verdicts" and has agreed to avoid protected documents, MagMutual argues that further limitation is necessary. (*Id.* at 9-10). It, therefore, asks the Court to limit Topic 5 to "findings by a West Virginia judicial, administrative, or executive tribunal in the last five years involving underlying medical malpractice claims where MagMutual has not contested coverage and MagMutual allegedly failed to reasonably settle the underlying malpractice claim within insurance policy limits." (*Id.* at 10-11).

In response, Plaintiff argues that her request is properly tailored and that MagMutual fails to "demonstrate how providing a witness who is knowledgeable as to how an excess verdict may be rendered by a jury when no statutory or common law bad faith practices led to the same would be unduly burdensome, overly onerous, disproportionate or otherwise outside the scope of fact discovery related to Plaintiff's remaining statutory and common law bad faith claims." (ECF No. 187 at 13). According to Plaintiff, "t]here is no need to limit this inquiry to any specific geographic location, nor is a period of 10 years too broad or onerous." (*Id.*).

Here, too, Court agrees with Plaintiff and finds that the topic, as narrowed by Plaintiff's agreement, is not unduly burdensome or disproportionate. Accordingly, MagMutual's motion is **DENIED** as to Topic 5.

D. Topic No. 6

Next, MagMutual seeks a protective order limiting Topic No. 6, which seeks MagMutual's 30(b)(6) testimony regarding the following:

> All facts, witnesses, and documents regarding any finding by a judicial tribunal that Mag Mutual Insurance Company (1) violated the Uniform Trade Practices Act in West Virginia, or any similar state statute in another jurisdiction; (2) violated the implied covenant of good faith and fair dealing; (3) was found to have acted in bad faith; and/or (4) was otherwise found liable for extra contractual damages for a period of the last ten (10) years.

(ECF No. 172 at 11).

MagMutual objects to this Topic on the grounds that it is duplicative and "seeks irrelevant information that is disproportionate to the needs of the case and is overly broad and burdensome." (*Id.*). As to subtopic (1), MagMutual argues that the request "improperly imposes on Defendants a burden to identify each state's trade practice act and conduct a legal analysis to determine whether it is 'similar' to the UTPA in West Virginia." (*Id.*). According to MagMutual, this request not only placed an inappropriate burden on MagMutual, it also "highlights the exact issue . . . with respect to the fact that states may have different standards and statutes governing the conduct of insurance companies." (*Id.*). MagMutual further argues that subtopic (2) should be stricken, as it "asks for information about alleged violations of the implied covenant of good faith and fair dealing—a claim the Court has dismissed from this action." (*Id.*). For these reasons, MagMutual asks the Court to limit this request to "findings made by judicial tribunal in West Virginia in the last five years involving underlying medical malpractice claims where MagMutual has not contested coverage and MagMutual allegedly failed to reasonably settle the underlying malpractice claim within insurance policy limits and was found to have violated the West Virginia UTPA for these reasons." (*Id.* at 12).

In response, Plaintiff "agrees to remove the portion of the topic that requests that the deponent be knowledgeable as to findings by a judicial tribunal that MagMutual breached the implied covenant of good faith and fair dealing inherent within a contract." (ECF No. 187 at 15). However, Plaintiff contends she is "entitled to request that a deponent be knowledgeable as to judicial findings in any state that MagMutual acted in bad faith," and "certainly do[es] not expect [MagMutual] to make [its] own legal determinations regarding other state's statutory and common law bad faith causes of action," as "the judicial finding has already made that determination." (*Id.*). Finally, Plaintiff argues that "[t]here is no need to limit this inquiry to any specific geographic location, nor is a period of 10 years too broad or onerous." (*Id.*).

Upon review, the undersigned agrees with MagMutual to the extent that Topic No. 6 lacks reasonable limitations in scope but finds MagMutual's proposed limitation to be overly restrictive. To the extent that the Court has dismissed Plaintiff's claim related to the implied covenant of good faith and fair dealing and breach of contract claim, those aspects of Plaintiff's request are irrelevant and disproportionate to Plaintiff's needs. Accordingly, MagMutual's motion is **GRANTED IN PART** and **DENIED IN PART** as to Topic 6. In order to assure that the discovery sought is proportional to the needs of the case, it is **ORDERED** that Topic No. 6 shall be limited as follows:

> All facts, witnesses, and documents regarding any finding by a judicial tribunal within the last ten (10) years that Mag Mutual Insurance Company (1) violated the Uniform Trade Practices Act in West Virginia; or (2) was found to have acted in bad faith related to excess verdicts.

E. Topic No. 7

Next, MagMutual seeks a protective order limiting Topic No. 7, which seeks MagMutual's 30(b)(6) testimony regarding the following:

> All facts, witnesses, and documents regarding any finding by an administrative body that Mag Mutual Insurance Company (1) violated the Uniform Trade Practices Act in West Virginia, or any similar state statute in another jurisdiction; (2) violated the implied covenant of good faith and fair dealing; (3) was found to have acted in bad faith; and/or (4) was otherwise found liable for extra contractual damages for a period of the last ten (10) years.

(ECF No. 172 at 12).

MagMutual objects to this topic on the same grounds as Topic 6. As with the previous topic, the undersigned agrees with MagMutual to the extent that Topic No. 7 lacks reasonable limitations in scope but finds MagMutual's proposed limitation to be overly restrictive. This topic directly bears on MagMutual's history of UTPA violations and bad faith insurance defense—issues central in this litigation. However, to the extent that the Court has dismissed Plaintiff's claim related to the implied covenant of good faith and fair dealing and breach of contract claim, information related to those claims, those aspects of Plaintiff's request are irrelevant and unduly burdensome for MagMutual. In its Response, Plaintiff "agrees to remove the portion of the topic that requests that the deponent be knowledgeable as to findings by a judicial tribunal that MagMutual breached the implied covenant of good faith and fair dealing inherent within a contract." (ECF No. 187 at 15). Accordingly, MagMutual's motion is **GRANTED IN PART** and **DENIED IN PART** as to Topic 7. In order to assure that the discovery sought is proportional to the needs of the case, it is **ORDERED** that Topic No. 7 shall be limited as follows:

> All facts, witnesses, and documents regarding any finding by an administrative body within the last ten (10) years that Mag Mutual Insurance Company (1) violated the Uniform Trade Practices Act in West Virginia; or (2) was found to have acted in bad faith related to excess verdicts.

F. Topic No. 12

Finally, MagMutual seeks a protective order striking Topic No. 12, which seeks MagMutual's 30(b)(6) testimony regarding the following:

> All facts, witnesses and documents regarding jury verdicts in excess of the liability limits of Mag Mutual Insurance Company insureds for a period of the last ten (10) years.

(ECF No. 172 at 12).

MagMutual objects to this Topic on several grounds and claims that "any one objection is sufficient to grant Defendants' Motion and order discovery not be had on this topic." (*Id.*).

First, MagMutual argues that the request surpasses the scope of discovery, as it "seeks not only bad faith lawsuits and 'findings' but information on all claims where an excess verdict occurred," which, acording to MagMutual, "is a critical distinction and demonstrates why this topic should be quashed in its entirety." (*Id.*). As MagMutual explains:

> Where there is a bad faith lawsuit, there has been an allegation that the insurance company did something wrong. There is no similar allegation in a scenario where there is simply an excess verdict. Indeed, the existence of an excess verdict does not equate to an allegation of bad faith as there are many scenarios where an excess verdict is not the result of the insurance company's decision not to settle a case.

(*Id.* at 12-13). MagMutual further argues that the information sought by Plaintiff "is simply not important to resolving any of Plaintiff's claims" and that "[t]he burden in identifying these excess verdicts nationwide over a ten[-]year period and preparing a witness to testify to same vastly outweighs any limited potential benefit to Plaintiff." (*Id.* at 13).

Second, MagMutual incorporates its objections to the previous Topics, claiming that Topic 12 "suffers from the same defects (relevance, breadth, geographic and temporal limitation, and burden) as the . . . topics relating to bad faith lawsuits and findings." (*Id.*). MagMutual does not go into further detail regarding this grounds for objection.

Third, MagMutual takes issue with Plaintiff's refusal to modify Topic 12 "to avoid issues with attorney-client or work product privileges." (*Id.*). According to MagMutual, "[t]he topic, as written, essentially seeks discovery of the MagMutual claim files for claims unrelated to the claim presented against Plaintiff[,]" and "[t]hese claim files would unquestionably contain attorney[-]client privileged materials and attorney work product specific to those claims," as well as documents made in preparation of litigation. (*Id.* at 13-14).

Finally, MagMutual argues that, because "this request could include not only historical excess verdicts but excess verdicts that are still in active litigation—either post-trial or on appeal[,] [d]isclosure of this information would be highly prejudicial to the ongoing defense of these claims." (*Id.* at 15). It asserts that "Plaintiff in this case should not, through discovery of information and documents that have no bearing on her claims, be able to prejudice the defense of other MagMutual insureds who have no interest in the outcome of this litigation." (*Id.*). For these reasons, MagMutual contends "a protective order should be entered preventing inquiry into Topic 12." (*Id.*).

In response, Plaintiff argues that each of MagMutual's objections is meritless and legally unsupported. (ECF No. 187 at 17). Plaintiff contends that Topic 12 "is properly tailored to the requisite subject matter of Plaintiff's remaining UTPA and *Shamblin* claims" and that "[t]here is no need to limit this inquiry to any specific geographic location" or shorten the period of 10 years. (*Id.* at 18). Plaintiff further asserts that

MagMutual may object at the deposition should Plaintiff seek information protected by attorney-client privilege, the work-product exception, or Rule 26(b)(3)(A)'s exception for documents and tangible things prepared in anticipation of litigation, or otherwise seek information outside the scope of discovery. (*Id.*). Finally, Plaintiff argues that MagMutual's concerns about prejudicial effects on other suits is unfounded, stating as follows:

> . . . objections relating to prejudicial effect are related to evidentiary concerns, not fact discovery. Defendants will certainly request that the 30(b)(6) deposition be conducted under the current protective order, which would prevent the public dissemination of any information that is elicited during the deposition without a court order directing the same. As a result, any concern regarding "prejudicial" effect upon Defendant in other, ongoing litigation is baseless.

(*Id.*).

Upon review, the undersigned finds that the discovery sought in Topic 12 is directly relevant to Plaintiff's claims and is proportional to the needs of the case. As noted earlier, MagMutual is welcome to object at the deposition to any information related to this topic that implicates any privilege or exception not subject to disclosure. Further, to the extent that MagMutual is concerned about prejudicial effects on other cases, it may request that the deposition be conducted under the current protective order, as Plaintiff mentions. However, wholesale preclusion of this topic is not warranted. Accordingly, MagMutual's motion is **DENIED** as to Topic 12.

## IV. CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that Defendant's *Motion for Protective Order* (ECF No. 172) is hereby **GRANTED IN PART** and **DENIED IN PART**, as set forth above. The parties are **ORDERED** to confer by no later than seven

(7) days from the date of this *Order*, which is September 12, 2025, and establish a mutually agreeable date and time to conduct MagMutual's 30(b)(6) deposition.

The parties are hereby **NOTIFIED** that failure to comply with the undersigned's instant *Order* may result in the imposition of sanctions in accordance with Rule 37 of the Federal Rules of Civil Procedure.

**IT IS SO ORDERED**.

The Clerk of Court is **DIRECTED** to transmit a copy of this Order to counsel of record and to any unrepresented party.

ENTERED: September 5, 2025

Dwane L. Tinsley
United States Magistrate Judge