IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

DEVAN TRULL, D.O.,

        Plaintiff,

v.                              CIVIL ACTION NO. 3:24-0202

MAG MUTUAL INSURANCE COMPANY,

        Defendant.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court are Plaintiff Dr. Devan Trull's Partial Motion for Summary Judgment, ECF No. 103, and Defendant MAG Mutual Insurance Company's (MagMutual) Motion for Summary Judgment, ECF No. 223. For the reasons provided below, the Court **DENIES** Plaintiff's partial motion and **DENIES, in part,** and **GRANTS, in part**, Defendant's motion.

**I.    BACKGROUND**

On April 18, 2024, Devan Trull, D.O., brought the present suit against West Virginia Mutual Insurance Company (WVMIC)[1] and Defendant MagMutual. After dismissal of some of the claims, those remaining include a *Shamblin* claim and an Unfair Trade Practices Act (UTPA) claim. *See Mem. Op. and Order Granting WVMIC's Partial Mot. to Dismiss, Granting in part and Den. in part Def.'s Mot. to Dismiss,* ECF No. 123. Plaintiff seeks an "award of damages including, but not limited to, past and future economic and non-economic damages, aggravation, annoyance,

---

[1] WVMIC merged into MagMutual in July of 2025. MagMutual assumed all liability of WVMIC in connection with this action, and WVMIC was dismissed as of September 4, 2025. *Stipulation and Dismissal of WVMIC as a Def.*, ECF No. 216.

and inconvenience, punitive damages, attorney fees, expenses, taxable court costs, and interest." *Am. Compl.* 10, ECF No. 47.

The dispute derives from the handling of a medical professional liability lawsuit (the underlying litigation). The underlying litigation began when a former patient, Carlie Hensley, sued Dr. Trull, who was employed by Cabell Huntington Hospital, Inc., (CHH). Dr. Trull's primary insurer, WVMIC, provided her with legal defense in the underlying litigation and paid up to the one-million-dollar liability limit of the relevant judgment entered against her. Beyond WVMIC's policy, Defendant contends there were potentially two additional layers of insurance coverage. The first layer of excess insurance was arguably CHH's self-insurance program (Self Insured Retention or SIR). Then, if both the WVMIC policy and the CHH SIR were exhausted, the Hospital Umbrella Liability Policy, issued by Professional Security Insurance Company,[2] would apply. CHH was not involved in the underlying litigation, and both Defendant and Dr. Trull were not aware of the CHH SIR plan.[3]

During the underlying litigation, Ms. Hensley offered to settle in the amount of $450,000. *See* Email from David H. Carriger to Mark Simonton & L. Dante diTrapano (Sept. 13, 2023), *Pl.'s Am. Compl. Ex. A*, ECF No. 47-1. Settlement offers of lesser amounts were also proposed, but

---

[2] Professional Security Insurance Company is a MagMutual company.
[3] *See Trull v. W. Virginia Mut. Ins. Co.*, Civ. A. No. 3:24-0202, 2025 WL 1690148, at *4 (S.D. W. Va. June 16, 2025) (denying Def.'s motion for summary judgment and motion to join CHH). After the underlying lawsuit verdict was rendered, MagMutual argued that CHH was responsible for the excess verdict because Dr. Trull had coverage under the CHH SIR. *Id.* at *4. CHH denied such alleged coverage based on the violation of a contractual provision requiring that the insured notify and involve CHH in the claims handling process and any related litigation. *Id.* at *5. Defendant continues to request that the Court reconsider that ruling and associated implications with new evidence in a recently filed motion. *Def.'s Mot. for Leave to File Successive Mot. for Summ. J.*, ECF No. 268.

Defendant refused to consider settlement and defended the case through trial in March of 2024. *See* Dante diTrapano Dep. 13:1–14:12 (Aug. 29, 2024), *Pl.'s Ex. B*, ECF No. 104-2.

The jury returned a verdict against Dr. Trull in the amount of $1,922,395.67 which was above the WVMIC policy limit. A settlement between the patient and a different physician led this Court to reduce the jury's verdict by $500,000. Defendant, pursuant to the WVMIC Policy, issued a $1,000,000 check to the Ms. Hensley, leaving over $400,000 of the judgment outstanding. Ms. Hensley sought to collect the outstanding portion of the judgment from Dr. Trull, through an action brought in the U.S. District Court for the Western District of Tennessee.[4] On or about October 16, 2025, the remaining amount of the judgment in the underlying suit was paid in full by MagMutual.

Plaintiff has moved for partial summary judgment on the *Shamblin* claim and Defendant has moved for summary judgment on both the *Shamblin* and UTPA claims. Defendant also challenges Plaintiff's entitlement to punitive damages and attorneys' fees.

## II.   STANDARD OF REVIEW

Federal Rule of Civil Procedure 56 states a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A fact is "material" if the fact "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is "genuine" if a "reasonable jury could return a verdict for the nonmoving party." *Id.*

In a summary judgment analysis, the Court will not resolve disputed facts, weigh the evidence, or make determinations of credibility. *See Russell v. Microdyne Corp.*, 65 F.3d 1229, 1239 (4th Cir. 1995); *Sosebee v. Murphy*, 797 F.2d 179, 182 (4th Cir. 1986). Instead, the Court

---

[4] *See Order Den. in part and Granting in part Pl.'s Mot. for Default J., Pl.'s Ex. F*, ECF No. 103-2. Dr. Trull had since moved to Tennessee.

will interpret the facts in the light most favorable to the nonmoving party. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). Even so, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

### III.    ANALYSIS

Both parties have moved for summary judgment on Plaintiff's *Shamblin* claim. The Court first addresses Plaintiff's partial motion and then turns to Defendant's all-encompassing motion.

In Syllabus Point 2 of *Shamblin v. Nationwide Mutual Insurance Co.*, the Supreme Court of Appeals of West Virginia provides that:

> Wherever there is a failure on the part of an insurer to settle within policy limits where there exists the opportunity to so settle and where such settlement within policy limits would release the insured from any and all personal liability, the insurer has prima facie failed to act in its insured's best interest and such failure to so settle prima facie constitutes bad faith towards its insured.

396 S.E.2d 766 (W. Va. 1990). This doctrine "was created to protect policyholders who purchase insurance to safeguard their hard-won personal estates and then find these estates needlessly at risk because of the intransigence of an insurance carrier." *Charles v. State Farm Mut. Auto. Ins. Co.*, 452 S.E.2d 384, 389 (W. Va. 1994). However, for an insured to recover under *Shamblin*, "the insured must be actually exposed to personal liability in excess of the policy limits at the time the excess verdict is rendered." Syl. Pt. 9, *Strahin v. Sullivan*, 647 S.E.2d 765, 773 (W. Va. 2007).

Once prima facie bad faith is established, the *Shamblin* syllabus points that follow further indicate:

> 3. It will be the insurer's burden to prove by clear and convincing evidence that it attempted in good faith to negotiate a settlement, that any failure to enter into a settlement where the opportunity to do so existed was based on reasonable and substantial grounds, and that it accorded the interests and rights of the insured at least as great a respect as its own.

> 4. In assessing whether an insurer is liable to its insured for personal liability in excess of policy limits, the proper test to be applied is whether the reasonably prudent insurer would have refused to settle within policy limits under the facts and circumstances, bearing in mind always its duty of good faith and fair dealing with the insured. Further, in determining whether the efforts of the insurer to reach settlement and to secure a release for its insured as to personal liability are reasonable, the trial court should consider whether there was appropriate investigation and evaluation of the claim based upon objective and cogent evidence; whether the insurer had a reasonable basis to conclude that there was a genuine and substantial issue as to liability of its insured; and whether there was potential for substantial recovery of an excess verdict against its insured. Not one of these factors may be considered to the exclusion of the others.

396 S.E.2d 766. The Court particularly noted that "[i]n assessing whether an insurer is liable to its insured for personal liability in excess of policy limits, the proper test to be applied is whether the reasonably prudent insurer would have refused to settle within policy limits under the facts and circumstances of the case, bearing in mind always its duty of good faith and fair dealing with its insured." *Id.* at 776.

### A. Plaintiff's Partial Motion for Summary Judgment

Plaintiff moves for summary judgment on her *Shamblin* claim asserting that she has provided undisputed evidence satisfying the prima facie elements under *Shamblin* and that Defendant fails to provide evidence contesting its prima facie bad faith.

#### 1. Prima Facie Elements

It is undisputed that Defendant failed to settle the underlying suit within the policy limit of one million dollars when presented with the formal opportunity to settle for $450,000.00. *See* Email from David H. Carriger to Mark Simonton & L. Dante diTrapano (Sept. 13, 2023); Letter from Bryan Essary to Nora Lantz (Oct. 9, 2023), *Pl.'s Ex. B,* ECF No. 47-2. Further, ▮

▮

▮

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████. Such settlement would have resulted in a total release of Dr. Trull's liability, and no verdict of malpractice rendered against Dr. Trull. *See* diTrapano Dep. 13:1-4, 14:1-12; Email from David H. Carriger to Mark Simonton & L. Dante diTrapano (Sept. 13, 2023). Instead, Ms. Hensley's counsel was informed that Defendant assumed a "no pay position." *See* diTrapano Dep. 11:2-22.

Defendant has previously claimed that Dr. Trull did not face personal liability, but for purposes of the motions and responses associated with this Order, Defendant does not contest that Dr. Trull, at the time of the judgment, was personally liable for the excess verdict. *See Def.'s Reply in Supp. of Mot. for Summ. J.* 2, ECF No. 237 ("[T]he argument in MagMutual's instant Motion for Summary Judgment addresses a different question: *why* Plaintiff has been held personally liable for an excess verdict."). Indeed, Dr. Trull was subject to ongoing collection proceedings for the previously unpaid judgment amount of the underlying suit that was in excess of the WVMIC policy limit. Instead, Defendant claims, in opposition to Dr. Trull's Partial Motion for Summary Judgment, and in Defendant's Motion for Summary Judgment, that Dr. Trull is not entitled to *Shamblin* protection because she caused her own exposure to liability.

The Court disagrees. Defendant relies on *Charles v. State Farm*, 452 S.E.2d 384 (W. Va. 1994), where the Supreme Court of Appeals of West Virginia addressed the possibility of forfeiture of *Shamblin* protection under the following framework:

1. Before an insurance policy will be voided because of the insured's failure to cooperate, such failure must be substantial and of such nature as to prejudice the insurer's rights.
2. In addition to prejudice, the insurer must show that its insured willfully and intentionally violated the cooperation clause of the insurance policy before it can deny coverage.

> 3. The insurer must exercise reasonable diligence in obtaining the insured's cooperation, including attendance at trial, before the policy will be voided.

*Charles*, 452 S.E.2d at 389 (Citing Syl. Pt. 1–3, *Bowyer by Bowyer v. Thomas*, 423 S.E.2d 906 (1992)).

The *Charles* case involved a car accident where the estate of a decedent filed suit against the other individual in the car. *Charles*, 452 S.E.2d at 386–87. The survivor of the accident allegedly failed to cooperate in his own defense with a State Farm-provided attorney. *Id.* at 387. There, the defendant did not participate in the underlying suit at all, refusing to submit an agreed-upon independent medical examination or designate expert witnesses as required by the court order, and the defendant's personal lawyer failed to appear at proceedings, resulting in the dismissal of asserted dispositive motions. *Id.* The Supreme Court of Appeals of West Virginia reversed the prior determination that the defendant's conduct had no impact on State Farm's liability under *Shamblin* and remanded to the circuit court. *Id.* at 391.

The Court does not find the defendant's conduct in *Charles* to be comparable to Dr. Trull's. Dr. Trull was undisputedly cooperative in her defense during the underlying suit. Additionally, Defendant does not argue that Dr. Trull failed to satisfy a duty owed to WVMIC in order to qualify for coverage in the underlying litigation.

Here, Dr. Trull has provided sufficient undisputed evidence in support of the prima facie elements of a *Shamblin* claim.

### 2. The Insurer's Burden

Under *Shamblin*, once the prima facie bad faith is shown, the defendant must then fulfill its burden. Syl. Pt. 3, *Shamblin,* 396 S.E.2d 766. Defendant has provided some evidence of the reasonableness of the decision not to settle the underlying claim. Defendant contends that its refusal to settle was based upon its reasonable conclusion that Dr. Trull had not violated the

standard of care. In support, Defendant has provided reports of investigations and positive evaluations, guidance from counsel, and statements from professionals supporting the medical decisions of Dr. Trull. *Def.'s Mem. of L. in Opp. to Pl.'s Partial Mot. for Summ. J.* 11–13, ECF No. 179-1 (redacted at ECF No. 178).

Defendant does not particularly address whether "it attempted in good faith to negotiate a settlement" or if "it accorded the interests and rights of the insured at least as great a respect as its own." Syl. Pt. 3, *Shamblin*, 396 S.E.2d 766. However, Defendant indicates that the insurance company's corporate structure involves a "steadfast defense of good medicine, in turn, benefit[ing] all members by discouraging non-meritorious claims" which may contextualize the decision not to settle, despite Defendant's concession that Dr. Trull "demanded the case be settled." *Def.'s Mem. of L. in Opp. to Pl.'s Partial Mot. for Summ. J.* 13–15.

The Court finds Defendant has provided evidence of reasonableness in contesting the prima facie case, creating a genuine dispute of material fact. The Court **DENIES** Plaintiff's partial motion as Defendant has provided some evidence disputing the *Shamblin* claim.

### B. Defendant's Motion for Summary Judgment

Defendant moves for summary judgment on both of Plaintiff's remaining claims asserting four specific shortcomings.

#### 1. *Shamblin's* Requirement of Personal Exposure to Liability

First, as addressed previously, the Court rejects Defendant's argument that Dr. Trull is not entitled to *Shamblin* protection because she caused her own exposure to liability or failed to mitigate. *See Supra* Section III.A.1. The possibility of additional insurance coverage was not considered during the underlying litigation, and it played no role in Defendant's refusal to negotiate any settlement or refuse payment of the excess damages. *Pl.'s Resp. in Opp.* 10–11, ECF

No. 235. Defendant only attempted to add CHH during the course of this proceeding once it discovered there was potential coverage.

Dr. Trull and WVMIC had no knowledge of any other coverage during the underlying litigation and until well after this action commenced. *Id.* Defendant fails to provide any authority to support its argument of Dr. Trull's failure to mitigate. Additionally, Defendant does not argue that Dr. Trull's failure to obtain alleged CHH coverage presented a failure to satisfy a contractual duty under the primary coverage policy. Given WVMIC was the primary medical malpractice insurer with another MagMutual plan covering excess amounts over the WVMIC and CHH coverage policies, the defendant was in the best position to know about the CHH policy but still did not. Regardless, whether any other coverage would have shielded Dr. Trull from liability is too speculative, as Dr. Trull had no protection from personal liability at the time the excess verdict was returned.

**2. General Business Practice of UTPA Violations**

Defendant argues Plaintiff's UTPA claim is either improperly pled or without standing. *Def.'s Mem. of L. in Supp. of Mot. for Summ. J.* 9–10, ECF No. 225-10 (redacted at ECF No. 224). While Plaintiff's amended complaint contained minimal pleadings surrounding a UTPA violation, Defendant did not motion to dismiss the amended complaint on these grounds. The Court proceeds to determine if Plaintiff has proffered sufficient evidence to survive a motion for summary judgment on her UTPA claim.

Defendant asserts that the sections of the UTPA, or West Virginia Code § 33-11-4(9), referencing a "claim" do not protect an insured against a liability insurer. *Def.'s Mem. of L. in Supp. of Mot. for Summ. J.* 10–11. The Court agrees, based on the Supreme Court of Appeals of West Virginia's rulings in *Stucky* and *Salango*. *State ex rel State Auto Prop. Ins. Cos. v. Stucky*,

806 S.E.2d 160, 166 (W. Va. 2017) ("With regard to a liability insurance policy, the term 'claim' is used 'in its common (and common sense) usage: an effort by a third party to recover money from the insured." (citations omitted)); *State ex rel. W. Va. Mut. Ins. Co. v. Salango*, 866 S.E.2d 74, 82 (W. Va. 2021). However, the Court finds policyholders may assert protections against insurers under West Virginia Code § 33-11-4(9)(a) which provides: "Unfair claim settlement practices. — No person shall commit or perform with such frequency as to indicate a general business practice any of the following: (a) Misrepresenting pertinent facts or insurance policy provisions relating to coverages at issue."

The remaining question is whether Plaintiff provided evidence capable of showing that Defendant was in violation of the UTPA "with such frequency as to indicate a general business practice." *See* W. Va. § 33-11-4(9). In other words, "[m]ore than a single isolated violation . . . must be shown in order to meet the statutory requirement of an indication of "a general business practice." Syl. Pt. 3, *Jenkins v. J.C. Penney Cas. Ins. Co.*, 280 S.E.2d 252 (W. Va. 1981) (*overruled on other grounds*).

Dr. Trull claims she was reassured that she would not face personal monetary liability after specifically asking for guidance on such a risk. Pl.'s Dep. 135:11-17 (Aug. 11, 2025), *Pl.'s Ex. A*, ECF No. 235-1 ("I never thought that my personal assets were ever, ever even on the line in this trial . . . I was honestly assured they were not on multiple occasions . . . I specifically remember getting . . . a letter in the mail . . . I believe it was from the insurance company about punitives not being covered and I immediately panicked because that worried me and I called Mark [Simonton] and talked to him about it. He assured me not to worry about that. We went forward leading up to trial and as we know now the Shamblin letter was discussed and Bryan Essary came into the picture and I did look at that as an extra insurance, if you will, going in the trial that my personal assets

were not at risk."). Dr. Trull asserts Defendant misrepresented this fact about the benefits and coverage under the insurance policy. *Pl.'s Resp. in Opp.* 14.

Defendant argues it is not responsible for the alleged misrepresentation, that Dr. Trull would not face liability for an excess verdict, communicated by Dr. Trull's insurer-retained attorney in the underlying suit. *Def.'s Reply in Supp. of Mot. for Summ. J.* 9–10. The Court finds a reasonable inference could be drawn to charge Defendant with allowing this misrepresentation. Dr. Trull's attorneys notified her that she would not face personal liability for an excess verdict while they informed Defendant that it would face *Shamblin* liability if it failed to settle. *Pl.'s Resp. in Opp.* 14; Pl.'s Dep. 68:2-24. However, this conversation between Mr. Simonton and Dr. Trull, even if repeated more than once, only provides evidence of one alleged misrepresentation of her risk of personal liability.

There must be more than one violation of West Virginia Code § 33-11-4(9)(a). Dr. Trull also argues that Defendant advertises that it will prioritize the policyholder for "the best possible outcome" while also failing to settle the underlying litigation despite Dr. Trull's undisputed requests to do so. *Pl.'s Resp. in Opp.* 15–16; Pl.'s Dep. 135:11-17 ("every time I talk to Mr. Simonton or anybody regarding this case it was please, let's settle this. I want this settled. I spoke to Nora and wanted this settled. I spoke to Mark on multiple occasions and wanted this settled, so I couldn't understand why, I guess, it was dragging out so long.").

The Supreme Court of Appeals of West Virginia has indicated that in evaluating whether insurer's conduct in settlement is a general business practice, the violations should:

> [A]rise from separate, discrete acts or omissions in the claim settlement, and that they arise from a habit, custom, usage, or business policy of the insurer, so that, viewing the conduct as a whole, the finder of fact is able to conclude that the practice or practices are sufficiently pervasive or sufficiently sanctioned by the insurance company.

Syl. Pt. 4, *Stonewall Jackson Memorial Hosp. Co. v. American United Life Ins. Co.*, 525 S.E.2d 649 (citing Syl. Pt. 4, *Dodrill v. Nationwide Mut. Ins. Co.*, 491 S.E.2d 1 (W. Va. 1996)). The violations may occur in the handling of one claim or multiple claims, as comparisons of an insurer's conduct outside the present suit may indicate general business practice. *Dodrill*, 491 S.E.2d at 10.

Dr. Trull has provided evidence that Defendant permitted a continued misrepresentation about her coverage by failing to correct her insurer-retained attorney's assurance that she would not be personally liable for an excess verdict. She also provided evidence that Defendant advertises prioritizing clients but failed to settle when requested by Dr. Trull and when it would have cost less than defending the suit and resulted in no malpractice verdict against Dr. Trull. *See* Dante diTrapano Dep. 13:1–14:12. Therefore, Dr. Trull sufficiently supported an indication of a "general business practice," as required to maintain this cause of action.

### 3. Attorneys' Fees

Defendant argues Plaintiff is not entitled to attorneys' fees. *Def.'s Reply in Supp. of Mot. for Summ. J.* 13. Parties in a civil dispute pay their own attorneys' fees unless a statute or contract "provid[es] for recovery" or case law "carves out an exception." *Am. Reliable Ins. Co. v. Stillwell*, 336 F.3d 311, 320 (4th Cir. 2003). Plaintiff claims entitlement as the Supreme Court of Appeals of West Virginia did not alter the attorneys' fees award in the *Shamblin* case; however, a footnote following the attorneys' fee amount indicated that the fee award was not at issue or analyzed because the appellant did not contest the award. *Pl.'s Resp. in Opp.* 17–18; *Shamblin*, 396 S.E.2d at 769 n. 2. The Court finds attorneys' fees are not appropriate in *Shamblin* claims, like UTPA claims, absent specific findings.

A *Shamblin* claim alleges a failure to settle within policy limits after being provided with

the opportunity to do so, and a UTPA claim alleges multiple instances of unfair claim settlement practices. As the Fourth Circuit stated, "fee shifting is allowed only for an insured 'vindicating its claim' 'to collect benefits under [its] insurance contract,' not for 'a bad faith action.'" *Moses Enters., LLC v. Lexington Ins. Co.*, 66 F.4th 523, 529 (4th Cir. 2023) (citations omitted). The one-million-dollar policy limit was paid by MagMutual at the end of the underlying suit. Dr. Trull's *Shamblin* and UTPA claims do not attempt to collect benefits under the initial insurance contract but, rather, allege MagMutual's failure to properly handle the underlying litigation. Therefore, attorneys' fees in this subsequent bad faith action are not available unless evidence of oppressive conduct on the part of the insurer is found. *See Lemasters v. Nationwide Mut. Ins. Co.*, 751 S.E.2d 735, 744 (W. Va. 2013) ("There is authority in equity to award to the prevailing litigant his or her reasonable attorney's fees as 'costs,' without express statutory authorization, when the losing party has acted in bad faith, vexatiously, wantonly or for oppressive reasons." Syl. Pt. 3, *Sally–Mike Properties v. Yokum*, 365 S.E.2d 246 (W. Va. 1986)). The Court does not find the circumstances in this case justify the rare awarding of attorneys' fees in a subsequent bad faith insurance suit.

### 4. Punitive Damages

Defendant argues Plaintiff is not entitled to punitive damages. *Def.'s Reply in Supp. of Summ. J.* 13–14. In subsequent insurance bad faith disputes like *Shamblin* claims, the Supreme Court of Appeals of West Virginia determined that "punitive damages may be awarded in favor of an insured against its insurer for failure to settle a claim within policy limits, but the policyholder must establish a high threshold of actual malice in the settlement process." *Shamblin*, 396 S.E.2d at 772–73. "Actual malice means that the insurer actually knew that the claim was proper, but the insurer nonetheless acted willfully, maliciously and intentionally in failing to settle the claim on behalf of its insured." *Id.* Here, Defendant claims no evidence exists to suggest it actually knew

the claim was proper or likely to result in an excess verdict and nonetheless acted willfully, maliciously, intentionally. *Def.'s Mem. of L. in Supp. of Mot. for Summ. J.* 17. The Court agrees despite Plaintiff's assertion that actual malice can be shown through Defendant's "no-pay position" throughout the underlying suit and beyond. *Pl.'s Resp. in Opp.* 19–20.

Defendant's position is supported through evidence of Defendant's case file containing positive recommendations and arguably favorable outcome predictions in the underlying suit. *Def.'s Mem. of L. in Supp. of Mot. for Summ. J.* 18. Dr. Trull argues that malice may be shown because of Defendant's continued failure to satisfy the judgment when it was informed of the validity of the *Shamblin* claim since, at least, early April of 2024, leaving Plaintiff no choice but to file suit. *Pl.'s Resp. in Opp.* 19–20. Defendant has provided evidence to support the reasonableness of its failure to settle the underlying suit, and the conduct of Defendant during the underlying suit. *Def.'s Mem. of L. in Supp. of Mot. for Summ. J.* 3–4. Plaintiff has not provided evidence that Defendant actually knew the claim was proper and nonetheless acted willfully, maliciously and intentionally in failing to settle, as required under *Shamblin*.

Punitive damages remain available for the UTPA claim. *See Dodrill*, 491 S.E.2d at 14–15. The jury will need to determine if Defendant willfully, maliciously, and intentionally violated the UTPA. *McCormick v. Allstate Ins. Co.*, 505 S.E.2d 454, 458–59, n. 4 (W. Va. 1998). The refusal to pay the excess verdict as it relates to the alleged violations of the UTPA, misrepresentations of prioritization of the policyholder and liability for an excess verdict, may entitle Plaintiff to punitive damages if "actual malice" is shown. *Id.* The refusal to settle the underlying suit is not relevant to punitive damages, as Plaintiff is not entitled to punitive damages for the *Shamblin* claim.

## IV. CONCLUSION

For the reasons stated above, the Court **DENIES** Plaintiff's Partial Motion for Summary Judgment, ECF No. 103, and **DENIES, in part,** and **GRANTS, in part,** Defendant's Motion for Summary Judgment, ECF No. 223.

The Court **DIRECTS** the Clerk to send a copy of this Memorandum Opinion and Order to counsel of record and any unrepresented parties. An unredacted version of this Memorandum Opinion and Order can be found at ECF No. 300.

ENTER: November 13, 2025

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE